**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Old National Bank,

        Plaintiff,

v.

Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,

        Defendants.

Court File No. 0:25-CV-04636 (PJS/LIB)

**DECLARATION OF SARAH ADAMS IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

---

Sarah Adams declares as follows:

1.    I am a Vice President/Branch Manager for Defendant Bell Bank, and I am named as a Defendant in this case. I make this declaration based on personal knowledge, and if called and sworn as a witness, I could and would testify competently to the facts stated herein. I submit this declaration in opposition to Plaintiff Old National Bank's ("ONB's") Motion for Temporary Restraining Order.

**Relevant Employment History**

2.    I started at Bremer Bank ("Bremer") in May 2016 as a Personal Banker. I loved my time working for Bremer as the company was very focused on customers and employees; I felt trusted and supported to do my job. Bremer was a company where leadership was transparent, and I was comfortable approaching my manager about any concern. As I continued to work for Bremer, the people and the community became family.

3.    In total, I worked full-time for Bremer for approximately nine years, and my final job title was Community Banking Team Lead.

4. Once ONB took over, my outward title remained the same, but internally I was acknowledged as a Community Banking Market Manager at ONB's Baxter location. I did not have an employment agreement, or any other agreement, with either Bremer or ONB.

5. As a Community Banking Market Manager for Bremer/ONB, I served as a team leader, coach and sales leader for my location in Baxter. In addition, I managed the banking center managers in Brainerd, Aitkin, and Rice, Minnesota. I oversaw operations and efficiencies within the banking centers. I was responsible for sales coaching and service oversight of my teams. I took care of hiring, training and ongoing performance management. I would also open and service accounts, help with teller duties, and with loan applications. I had personal sales goals and was responsible for the profitability of all banking centers that I managed.

6. While I did not publish my cell phone number in my email signature or business card, while performing my job duties, some customers obtained my cell phone number. I also had friends that were my customers that had my cell phone number.

7. ONB did not prohibit me from storing contact information on my cell phone for anyone I interacted with during my employment—customers, prospects, or otherwise.

**Conversion Failures Prompted Me to Resign**

8. I never anticipated leaving Bremer/ONB until October 2025 after the conversion of systems. While ONB acquired Bremer in May 2025, the switch to ONB systems for legacy Bremer customers did not occur until October 2025. This is when my feelings towards ONB dramatically shifted.

2

9.      Specifically, on or about October 17, 2025, I felt that ONB leadership did not trust me to perform my job duties, and I expressed my concern to my manager, Scott Dykhoff, via a text and a phone call.  When ONB's platforms failed our customers, it became clear that ONB did not share the same focus toward customers and employees that I was used to as the "Bremer Way."

10.     The lack of trust immediately drew a divide, and in October 2025, I started pursuing other employment options including that with Bell Bank, as well as others.

11.     As part of exploring the opportunity to join Bell Bank, I shared my ONB compensation information with Ms. Ellingson so that she could provide it to Bell Bank. I also provided Ms. Bernu's compensation information after obtaining permission.

12.     On November 20, 2025, I accepted a position with Bell Bank as VP/Branch Manager.

13.     I notified ONB of my departure on December 8, 2025, and left the same day.

14.     Prior to my departure, on the morning of December 6, 2025, Kasey Bernu and I gathered our personal belongings from the Baxter location of ONB. I collected my personal belongings in my work bag and a target plastic bag. This included: an air purifier purchased by my husband, a devotional and devotional cards, two Bremer Awards, manager gift from my team, Leadership Cornerstones plaque, two signs, 5-year service award from Bremer, avocado coffee mug, hourglass, pot with flower pens my son made, Grand Marais plaque, family pictures, and a completion certificate for Bremer Leadership Academy. I did not take any ONB documents.

15.     **True and correct images of my belongings are attached as Exhibit A**.

16.    I am not aware of any ONB policy requiring security to walk employees out of the building after they resign.

17.    I am not aware of any ONB policies requiring me to delete business-related contacts from my cell phone when my ONB employment ended.

18.    I can confirm that I had contact information, some of which existed before I arrived at Bremer, and some that was gathered as a result of friendships that eventually turned into business relationships.

19.    The other items I have on my phone were older photos that I had previously taken for job-related reasons, including: a picture of our alarm panel due to a fault that occurred; a QR code that I took a picture of the first time I tried to sign onto my ONB laptop from home on October 22, 2025; a picture of my ONB User applications with my user id and initial passwords (I was instructed by our ONB ambassadors on October 19, 2025 to take this picture); pictures of the exterior of ONB Banking Centers; schedules for Baxter; pictures of boxes with serial numbers to provide to IT with what had been delivered to branches; a Power of Attorney document that was sent to me by a customer; and, pictures from various meetings and trainings I attended.

20.    None of the photographs that I have described above have been sent to, or otherwise provided to, Bell Bank.

21.    Following my departure from ONB on December 8, 2025, some current ONB employees reached out to me and I to them, including Peyton McConkey, Scott Dykhoff, Jodi Pechacek, Katie Bellos, Laura Schlagel, Mark Oleen, Robin Bednarek, Allison Bellos, Ashley Wheeler, Cheryl Reynolds, Robin Nelson, Daisy Aili, Jessica Robieson, Katy

4

Busho, Lauren Bellos (now former employee) and Cindy Verschaetse (retired employee) via telephone, text messages, LinkedIn, and Facebook Messenger.

22. Some ONB employees asked why I left, if I was okay, and/or whether I would consider coming back to ONB. Others thanked me for my leadership.

23. For the ONB employees that I contacted, I had established relationships with them, and I wanted them to know that I had left. I also met with ONB employee Katie Bellos in person.

24. Other than these interactions, I do not recall communicating with any other ONB employees following my departure.

25. I also never took any employee-related data or information from ONB, such as performance levels, compensation structures, career goals, or management evaluations, and I have not shared employee related information with Bell Bank besides my salary and Ms. Bernu's (with her permission).

26. As for customers, before I left ONB, I spent significant time taking steps to ensure that ONB would be prepared upon my departure. I was already out-of-office starting on December 4, 2025. At that time, I set my out-of-office.

27. I also sent pending items to the ONB team at the Baxter location to ensure that they could handle ongoing customer matters while I was out-of-office and upon my departure.

28. After I resigned, I did contact one former customer with whom I have a long-standing relationship with and who is a friend. I told her I had left ONB and assured her that if she had any pending items at the time of my departure that those would continue to

5

be handled by ONB. I did ask the customer for her email address as I did not have it. The customer has not moved any business to Bell Bank.

29.     Additionally, one former customer, who is also a friend, reached out to me via text message asking who to contact at ONB. I responded to the customer that "If you need help with banking items, you can call Allison Bellos."

30.     I never took any compilation of information while at Bremer/ONB that contained branch and banker specific customer lists, call sheets, and pipeline or sales reports identifying existing and prospective customers and cross-sell opportunities as alleged by ONB, and I have not shared any of this with Bell Bank.

31.     I have never had any non-compete or non-solicitation agreement, or even any written employment agreement with Bremer or ONB.

32.     Because of my connections within the community, nearly all of the individuals that I contacted (the customers and ONB employees), or who contacted me, are personal friends.

**The Baxter Branch Did Not Need to Close Because Kasey and I Resigned**

33.     I had access to ONB's Baxter location via a badge. The badge was left at my desk when I resigned. I also had codes for the vaults that were dual control, alarm codes, and a master key. I had usernames and passwords for the systems I accessed. I did also have a laptop that had been in the office since the Wednesday before my resignation.

34.     The allegation that the Baxter Branch had to close when Kasey and I resigned on the morning of December 8, 2025, is false. I had been told previously by ONB in a

6

meeting centered on staffing that when inclement weather occurred, as long as there were at least two employees in the bank, our branch would be able to function and remain open.

35.     I believe ONB Baxter had at least two employees that stayed on December 8, 2025. I believe that five employees were scheduled to work on December 8, 2025. I understand that the Baxter location did operate the drive-thru but closed the lobby on that day. I cannot say for certain who was in the branch on the day we departed, but I believe it was Allison Bellos and Ashley Wheeler.

36.     Finally, it is my understanding that ONB may be telling customers and other community members that I, along with the other Employee Defendants were fired by ONB. In particular, on December 19, 2025, I received a text message from a friend, Jim Benson, who is a business owner in the community. Mr. Benson offered his support for my decision to leave ONB and noted that ONB may be telling individuals that I was fired. A true and correct copy of a screenshot of the December 19, 2025 text message appears below:



37.    I have not used or disclosed any confidential information that I may have obtained or developed during my course of employment with ONB.

38.    If I was unable to work it would cause financial hardship as I am responsible for all food, groceries, and my gas expenses in my household. Also, my husband, and children depend on my benefits, including health, dental, and vision insurance, as I am the only one that carries benefits. Without access to these benefits through Bell Bank, my family would be subject to outrageous out-of-pocket expenses associated with benefits on the open market, causing a devasting impact on our finances.

8

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed on December 21, 2025.

s/ *sarah adams*

Sarah Adams

# EXHIBIT A

Attached to the Declaration of **Sarah Adams**
in opposition to Old National Bank's

Motion for Temporary Restraining Order


*Old National Bank v. Adams et al.*

Case No. 0:25-CV-04636 (PJS/LIB)



Exhibit A to Adams Decl. in Opp. to ONB's Motion for TRO                    2



Exhibit A to Adams Decl. in Opp. to ONB's Motion for TRO                    3



Exhibit A to Adams Decl. in Opp. to ONB's Motion for TRO                    4













Exhibit A to Adams Decl. in Opp. to ONB's Motion for TRO                    10



