UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

|  |  |  |
|---|---|---|
| Old National Bank, | ) | File No. 25-cv-4636 |
|  | ) | (PJS/LIB) |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Duluth, Minnesota |
|  | ) | January 14, 2026 |
| Sarah Adams, Kasey Bernu, | ) | 1:10 p.m. |
| Yvette Campbell, Kimberly | ) |  |
| Ellingson, Rachal Johnson, | ) |  |
| Michael McConkey, Sharon Vold, | ) | **DIGITAL RECORDING** |
| Daniel Yantes, and Bell Bank, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

------------------------------------------------------------

BEFORE THE HONORABLE LEO I. BRISBOIS
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
**(MOTION HEARING)**

Proceedings recorded by digital recording; transcript produced with computer.

PAULA K. RICHTER, RMR-CRR-CRC
(612) 664-5162

**APPEARANCES**:

For the Plaintiff: Lewis Brisbois Bisgaard & Smith
 BETHANY JEWISON, ESQ.
 90 South Seventh Street
 Suite 2800
 Minneapolis, Minnesota 55402

 Greiman Rome & Griesmeyer
 CHRISTOPHER S. GRIESMEYER, ESQ.
 205 West Randolph Street
 Suite 2300
 Chicago, Illinois 60606

For the Employee Spencer Fane
Defendants: ARIEL K. LIERZ, ESQ.
 100 South Fifth Street
 Suite 2500
 Minneapolis, Minnesota 55402

For Defendant Bell Bradford Andresen Norrie &
Bank: Camarotto
 JONATHAN P. NORRIE, ESQ.
 3600 American Boulevard West
 Suite 670
 Bloomington, Minnesota 55431

Transcriber: PAULA K. RICHTER, RMR-CRR-CRC
 300 South Fourth Street
 Minneapolis, Minnesota 55415

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT:  This is the matter of Old National Bank versus Sarah Adams, et al.  The court file is 25-CV-4636.

Counsel, will you note your appearances, representations for the record, starting with the plaintiffs.

MR. GRIESMEYER:  Hello, Your Honor.  Christopher Griesmeyer.

MS. JEWISON:  Your Honor, Bethany Jewison.

MR. NORRIE:  Jonathan Norrie.

MS. LIERZ:  Your Honor, Ariel Lierz on behalf of the employee defendants.

THE COURT:  All right.  So previously the plaintiffs filed a motion for a temporary restraining order and preliminary injunction.  Judge Schiltz heard that in December, construed the TRO as a preliminary injunction, ruled on that and issued his order denying the same on December 23rd.

Contemporaneous with that and related to the preliminary injunction, Docket Number 36 was filed, which was plaintiff's motion for expedited discovery tied to or related to the preliminary injunction motion.  Judge Schiltz

did not rule on Docket Number 36, and so it's a nondispositive motion remaining out there.  And under our local rules and procedures, it automatically is referred to me, and so we're here to wrap that up.

I did notice that just yesterday or the day yesterday, defendants filed a motion to dismiss and that there's a hearing date for May 4th, 2026.  And that motion is in lieu of answer to the complaint, right?

MR. NORRIE:  Yes, Your Honor.

THE COURT:  That's a joint motion because as is -- this response is a joint response?

MR. NORRIE:  Yes, Your Honor.

THE COURT:  Okay.  Well, Mr. Griesmeyer or Ms. Jewison, who is going to take the lead on this?

MR. GRIESMEYER:  I will, Your Honor, if that's quite all right.

THE COURT:  All right.  Use the podium.

So the motion itself, you know, on its face has a discovery schedule, a briefing schedule, all of which would have been from last week until the first part of February, and it's all related to what we need in order to support our motion for preliminary injunction.  At least that is not really an issue anymore, right?

MR. GRIESMEYER:  That's right.  The best laid plans of mice and men, so we filed a motion for a TRO.  Our

original plan was to seek a TRO and then conduct expedited discovery in aid of an evidentiary hearing on, you know, a preliminary injunction motion.

THE COURT: Yeah.

MR. GRIESMEYER: And as you've already noted, Judge Schiltz converted the TRO motion into a motion for a preliminary injunction --

THE COURT: So any discovery now would be routine discovery in support of your claim.

MR. GRIESMEYER: In theory, it would be.

THE COURT: Yeah. I mean, because the 12(b)(6) motion is on the basis of the four corners of the complaint.

MR. GRIESMEYER: It is. It is. However, you know, in the TRO hearing, in denying our motion for a TRO/preliminary injunction, Judge Schiltz made a number of comments. You know, one of the things he commented on when he concluded the hearing by noting that there was a basis here for expedited discovery, he thought.

THE COURT: I mean, in that context, though, I think -- I mean, we've reviewed some of that. It seems, to my point of view and my way of thinking, that that was more of -- an aggressive pretrial schedule was more in the order than what expedited discovery means in the context which you originally brought it.

MR. GRIESMEYER: I wholeheartedly agree, yes.

THE COURT:  So what we're really talking about is whether I order a Rule 26(f) conference and then issue a pretrial schedule.

MR. GRIESMEYER:  I suppose, and that is one option that I was going to suggest.  Since all counsel are here, I mean, we could conduct a 26(f) conference today.  We could go in the jury room and have our conference and -- you know, and then parties can start issuing discovery this afternoon, in theory.

Now --

THE COURT:  Well, not until I issue the schedule itself because I might take issue with some of the things you propose.

MR. GRIESMEYER:  I suppose.  I suppose that's true.  Yeah, you know, just strictly reading 26(f) --

THE COURT:  Right.

MR. GRIESMEYER:  You know, one of the things that the Court noted in denying our motion for preliminary injunction was really after the arguments.  As an aside, Judge Schiltz kind of took issue with the complaint, noted that -- with the understanding that we only had a couple days to draft --

THE COURT:  Certainly.

MR. GRIESMEYER:  -- the complaint, he referred to it as a kitchen sink complaint.  And he thought that after

the parties engaged in some discovery -- and he repeatedly said "after discovery." After discovery, I imagine you'll be amending your complaint. After discovery, when you learn, you know, which of these eight defendants actually was involved and actually responsible for inducing the other coworkers? Which of the eight defendants planned the coordinated exit? Which of the eight defendants decided we should all continue to work at Old National Bank for three weeks after we've already all accepted our offers of employment for Bell Bank? What documents did they actually take? Who said what to whom and when? If we had all that information, we would be able to focus our complaint.

And low and behold, yesterday, as you noted, they filed their Rule 12(b) motion to dismiss, and that motion to dismiss is largely based on accusations that our complaint is conclusory, the allegations are conclusory, we lack specificity, all of the things that Judge Schiltz already noted would be grounds for us to amend our complaint.

So since they have filed this 12(b)(6) motion, I suppose we have two options, right? We could either amend our complaint --

THE COURT: Yeah, that's available to you as a matter of right.

MR. GRIESMEYER: It is, correct. But, you know, if we amend our complaint without the benefit of discovery,

I don't know how much more detailed, you know, the complaint would be.

THE COURT:  Well, some of Judge Schiltz's concerns were that it may not comply with Rule 8 as being a tight, concise -- I mean, he talked about duplicity and things like that as well, so there's other reasons why it had some infirmity, at least in his initial review.

MR. GRIESMEYER:  True, although they haven't moved -- you know, defendants haven't moved to dismiss or haven't moved -- sought relief under Rule 8.  They've only moved, you know, to dismiss under Rule 12(b)(6).

The other option, I would think, would be rather than, you know, amend the complaint now, the parties should engage in some discovery, let us conduct some initial discovery so we can obtain this information and then refocus our complaint, file an amended complaint that, you know, comports to the evidence, and we will then at that point be able to perhaps even knock out some defendants entirely, certainly knock out some defendants from some claims.  So that's what we would prefer to do, or, you know, I suppose in the alternative, we can have our Rule 26(f) conference today, you know, and the parties can start down the road of conducting discovery.

THE COURT:  The local rules and the general practice of this district, which are, of course, subject to

change at my discretion, generally the 26(f) meeting isn't ordered until after there's an answer, which we don't have yet.  But, again, that's subject to my discretion.

MR. GRIESMEYER:  Right.

THE COURT:  You have the right to amend as a matter of -- under Rule 15 without leave of court because of the current procedural posture.  I mean, you know, this -- isn't there another -- a third option?  You could certainly meet and confer as to whether amendment under this road would obviate the need for the present motion to dismiss, which they could then raise again on the basis of the amended complaint.  But you have -- certainly to meet your Rule 11 obligations, you've got some investigative -- you've got facts, you've got information.

MR. GRIESMEYER:  We did.  We did.

THE COURT:  And so, I mean, wouldn't it be -- well, a third option would be to narrow the complaint to the things you know about and then if discovery comes, then bring a motion to amend at that point based on new information?

MR. GRIESMEYER:  Certainly we could do that.  However, you know, you premised that suggestion on the idea that, you know, we would amend the complaint now based on what we know.  Unfortunately, what we know now isn't really all that much more than what we knew back when we filed the

complaint.

What we know is that based on the affidavits that they submitted in opposition to our motion for TRO, we know that these eight defendants have client names and contact information on their phones.  We don't know when that information was downloaded onto their phones, how it was downloaded, if it was something that grew organically because they were using their phones to contact clients, or if instead, they did a mass download right before they left.

We see from their affidavits that they acknowledge they've printed certain things and spreadsheets and they left packets of information --

THE COURT:  I mean, the fact that there's -- you're talking about a level of detail rather than a fact to support a plausibility claim under Iqbal/Twombly.  You know, if you know that there's been property that you believe and can allege belongs to your client that was downloaded and removed, you know, the specifics of what that property is and when -- you know, to the scope of that property and when it was downloaded, that wouldn't be necessary to meet the Iqbal/Twombly standard.  That could come in routine discovery, wouldn't it?

MR. GRIESMEYER:  Right, but that's what they argue in their 12(b)(6) --

THE COURT:  Well, that doesn't mean their

arguments are going to carry the day.  I mean, I'm not ruling on anything --

MR. GRIESMEYER:  Yeah.

THE COURT:  -- but I'm sure Judge Schiltz will look at things similar to the way I do.

MR. GRIESMEYER:  I just feel that the -- in the interest of expediency, given the fact that, you know, Judge Schiltz admonished us to amend the complaint after we've engaged in some discovery and have some answers here to this information, it seems to me that the most cost-effective, time-sensitive way to handle this would be for us to engage in that discovery, conduct some discovery, and then amend the complaint.

THE COURT:  Yeah.  A couple other things.  The proposed order that went with the original motion for expedited discovery, one was the discovery schedule.  You know, that's already water under the bridge.  But the other was to establish an ESI protocol and then to -- for the Court to order the preservation of evidence, both documentary and, more particularly, electronic evidence.

The duty to preserve was triggered the minute you served the complaint, right?

MR. GRIESMEYER:  It was.

THE COURT:  And you don't need an order from the Court.  And if the defendants, any of them, you know,

there -- there will be consequences if they don't observe that duty to preserve. So that's kind of taken care of by the nature of the jurisprudence and the Rules of Civil Procedure, right?

MR. GRIESMEYER: Yes, except, you know, we don't know what steps they've taken to preserve evidence.

THE COURT: Well, that's at their peril at least if they haven't taken any steps. And then since you needed or requested an order to that effect, that has happened as a matter of law. They are on notice to preserve that information, and if they don't, they could potentially face sanctions, correct?

MR. GRIESMEYER: Correct.

THE COURT: So discovery -- or an order from the Court is not necessary to trigger that. That has happened. And, in fact, the joint response of defendants acknowledge that, and so the lawyers are now on the hook for that as well.

MR. GRIESMEYER: Understood.

THE COURT: Okay.

MR. GRIESMEYER: I just hope that they would be able to tell us, yes, don't worry, you know, we've created a forensic bitstream image of each phone, we've preserved it, we have the images --

THE COURT: I mean --

MR. GRIESMEYER:  You know, we don't have any information.

THE COURT:  And, again, how they choose to do that is, obviously, or not, is the motion was an order from this Court to trigger the duty.  That duty has, in fact, been triggered.  And then that ESI protocol for discovery and all of that, that can be accomplished when this Court orders a 26(f) report.  That's, in fact, one of the subjects that has to be -- in our local rules that has to be covered, so we don't need a separate order.  That generally is and certainly if anybody bothers to look at my 15-year track record, knows it's a very strong expectation that that will be done in the collective way.

MR. GRIESMEYER:  Sure.

THE COURT:  So what I'm left with then is the motion -- the sort of modified motion is do I order some discovery to begin as it might relate to supporting an amended complaint?

MR. GRIESMEYER:  That's essentially it.

THE COURT:  Anything else?

MR. GRIESMEYER:  No, Your Honor.

THE COURT:  Thank you.

MR. GRIESMEYER:  Thank you.

THE COURT:  You represent different defendants, but we're obviously proceeding collectively in both your

motions and before Judge Schiltz and in this response, so one attorney.  Who's going to argue?  I'm not going to hear two arguments.

MR. NORRIE:  Very well, Your Honor.  I'm happy to do that.

THE COURT:  So I'm going to work backwards.  Do you in any way disagree with what I said about your clients and you having their obligation to preserve evidence triggered?

MR. NORRIE:  No, Your Honor.

THE COURT:  You understand that I can and I have sanctioned people for not meeting their obligation?

MR. NORRIE:  Yes, Your Honor.

THE COURT:  Okay.  So I have a lot of discretion in managing litigation, right?

MR. NORRIE:  Yes, Your Honor.

THE COURT:  And I'm informed by the rules and by the case law, but every time I can do something for a unique reason.  Let's say I deny any relief whatsoever and just say, We're not doing anything until Judge Schiltz rules.  That's an order I will issue, you know, here in the short -- near future, if I issue it along those lines.  They have the right to object to that order.  You know, considering the audience for that objection, in light of the comments made by that audience, here's something we can -- you would -- I

guess, doesn't that inform how that objection might be received?

MR. NORRIE:  Respectfully, no, Your Honor.

THE COURT:  So you don't think Judge Schiltz's concerns at the original hearing will carry over to the next hearing?

MR. NORRIE:  Your Honor, if I may.

THE COURT:  Yeah.  I mean, that clearly -- you know, Judge Schiltz had reasons for saying and asking the questions he did.

MR. NORRIE:  Yes, Your Honor.  So at the hearing, the focus of Judge Schiltz's comments about the complaint were a concern about the fact that it was a kitchen sink pleading that was largely devoid of the type of factual assertion that would sustain the complaint if the parties had been there on a Rule 12(b)(6) motion, right?  So the judge was giving the plaintiff, in essence, the benefit of, nudge, nudge, I think you need to fix this.  And now his comments about after discovery, which I acknowledge they appear in the record, and I don't really know how to square those two things because, of course, Judge Schiltz notes that the 12(b)(6) --

THE COURT:  Normally there's no discovery, yeah.

MR. NORRIE:  -- arises before --

THE COURT:  That's why I was asking you the way I

asked you because it -- you know, he's obviously reading this case as there's an efficient way to approach this.

MR. NORRIE: Well, and, Your Honor, to that end, following the hearing, we asked the plaintiffs, Please amend your complaint, and they said no. And so now what we have is we know that a plaintiff needs to have a sufficient factual basis to allege a cause of action and put it in a complaint, and the lack of that is problematic. And what I heard from my friend this morning was, we don't know much, so allow us to maintain a broad complaint with many claims against many defendants, allow us to maintain that, and then we'll look for evidence to support that. And that's putting the cart before the horse.

The answer to the problem is, you ought to have claims and parties commensurate and consistent with your current level of understanding. That is what the rules require. If they suspect something else is going on out there, well, then they're entitled to try and find that through discovery against properly named defendants and properly alleged complaints. They want to start broad in the hopes of finding enough to keep it there, and that's not the way it's supposed to work. You're supposed to start narrowly with what you know and work outwards if the facts come in to support that.

And so respectfully, Your Honor, I believe that

the plaintiff's request here today in shifting this to, hey, let us have a lot at the beginning in the hopes that what we've alleged will pan out, is not the way that the rules intend for discovery to proceed and that what Your Honor observed very early in this hearing was, well, isn't the solution that you ought to amend your complaint, not to broaden it, but to narrow it, as Judge Schiltz had in mind, I believe, and that is the only way to understand his kitchen sink concern, and then we'll see what discovery shows.

So, for example, at the preliminary injunction hearing, opposing counsel made many comments about how thankful they were that they gathered information from the affidavits that were received. Okay. Well, then he ought to proceed by amending the complaint consistent with what he claims they learned instead of not amending the complaint.

So I think the proper course of action here, Your Honor, is that the plaintiffs ought to amend their complaint, or not and then Judge Schiltz perhaps will do it for them, right? But they don't get to proceed with a lot of discovery when we know that there are infirmities on the complaint and that those should be addressed first. And that would be consistent with the Court's historical practice, as you observed earlier, and the fact that there's no PI anymore. This is a regular case, just like many

others that this Court has considered.

THE COURT: Yeah. I just -- okay.

MR. NORRIE: I don't want to interrupt your --

THE COURT: Well, I'm just --

MR. NORRIE: -- train of thought.

THE COURT: Yeah, well, sometimes that train runs slow.

MR. NORRIE: I know the feeling.

Your Honor, by way of an example, so I'm counsel for Bell Bank, but my understanding is with respect to the individual defendants, right? Part of the allegations in this case alleged this broad conspiracy to violate duties of loyalty amongst the defendants. And in the affidavits that were submitted, the defendants clearly outlined what they did and what they didn't do in connection with becoming employed by Bell Bank.

And so my question would be: How, in the face of that and lacking any other evidence which they surely would have established as an alleged fact in the complaint, how can the plaintiffs now maintain the same causes of action against the same numbers of individual defendants in the same way if they have now new evidence and presumably no evidence to back up what they've already alleged, because otherwise they would have put it in the complaint.

And so we are left with this situation where we know that there's this infirmity, and I believe our focus ought to be, let's root out whatever infirmities there are because, again, as the Court has observed, wherever we end, whatever that end point is with the core complaint that might be left, if anything is left, the plaintiff can always work forward from there. And that's the proper way.

I'm happy to answer any other questions, Your Honor, but I can also take my seat if the Court would like.

THE COURT: Well, it seems -- I mean, I understand you have the ability to raise these procedural motions at this time and these arguments and defenses but, you know, just to -- having cursorily reviewed the motion paper, the motion isn't one of that there's no cause of actions here that it could ever exist as a matter of law. Any relief you get is going to be without prejudice and it's going to be subject to Iqbal/Twombly pleading standards and not like judgment on the pleadings kind of responses.

So isn't -- you know, if we don't -- and, again, doesn't your client and -- your clients have some interest in Rule 1 efficiencies in cost expedience? You know, at some point you're going to go through, you know, four months of motion practice to get to the same spot in July. That's time and money. I've hinted at, you know, some middle ground that -- I mean, lawyers are all about compromise,

aren't they?  Shouldn't they be, in the efficient and expeditious cost-effective defense of their clients?

MR. NORRIE:  And, Your Honor, I would respectfully observe that.  I don't believe requiring all of the named defendants, as it currently stands, to undergo all of this what I expect the nature of this requested discovery would be, would be efficient and cost-effective.

THE COURT:  Well, isn't that where a meet-and-confer about how some of that might be narrowed is where the compromise might take place, right?

MR. NORRIE:  But, Your Honor, the heart --

THE COURT:  Well -- all right.

MR. NORRIE:  Would you like a response from me, Your Honor?

THE COURT:  No.  It was rhetorical.  It was meant to make a point, which I didn't make very well, obviously.

MR. NORRIE:  Thank you.

THE COURT:  Obviously I will make a decision, and once you leave it to me, you lose control, so a meet-and-confer is your opportunity to exercise some of that control.

The parties are free to meet and confer while I have the matter under advisement and are encouraged to do so.

MR. NORRIE:  I understand, Your Honor.  Thank you.

THE COURT: Any brief reply? I don't think I really need one, but you're welcome to.

MR. GRIESMEYER: No, Your Honor. Thank you.

THE COURT: All right. In all candor, I probably won't be able to really dive into my final decision on this until next week. I'm leaving here for my circuit. I'm a circuit judge in the old sense of the word. I serve three courthouses, so I'm on my way to Fergus Falls this afternoon and the rest of the week. Monday is a holiday, so you probably can expect an order sometime in the next two weeks.

Okay. Thank you. We're adjourned.

(Court adjourned at 1:41 p.m.)

*       *       *

I, Paula K. Richter, certify that the foregoing is a correct transcript to the best of my ability from the official digital recording in the above-entitled matter.

Certified by: *s/ Paula K. Richter* _____
Paula K. Richter, RMR-CRR-CRC