## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| OLD NATIONAL BANK,<br><br>        Plaintiff,<br><br>v.<br><br>SARAH ADAMS, KASEY BERNU, YVETTE CAMPBELL, KIMBERLY ELLNGSON, RACHAL JOHNSON, MICHAEL MCCONKEY, SHARON VOLD, DANIEL YANTES, and BELL BANK,<br><br>        Defendants. | Civil File No.: 25-CV-04636 (PJS/LIB)<br><br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF JOINT RULE 12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Defendants Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, and Daniel Yantes (collectively, "Employee Defendants") and Bell Bank submit this memorandum in support of their joint motion to dismiss Plaintiff Old National Bank's ("ONB's") First Amended Complaint.

## INTRODUCTION

Eight individual members of the Brainerd-Baxter community masterfully plotted to bring down a multi-billion dollar, nationally chartered bank. It is as illogical as it sounds. Yet, once again, ONB attempts to paint Defendants as cunning villains who wrongfully conspired to bring ONB to its knees. It takes little effort to see beyond the smoke and mirrors.

1

ONB had the benefit of two additional months to further investigate its claims, as well as sworn declarations explaining the circumstances that led the Employee Defendants to leave, but ONB still rests on speculative and conclusory allegations to support its "kitchen sink" theories. Despite the Court's recommendation to eliminate duplicative claims, ONB's First Amended Complaint does little more than repackage its original claims under new headings, and wholly fails to fix its pleading woes:

- ONB's claim of misappropriation of trade secrets (Count I) is a compilation of three of its original claims, yet ONB still fails to adequately identify its trade secrets or to describe acts that would constitute misappropriation;

- ONB persists in its speculative claim for breach of the fiduciary duty of loyalty (Count II) without pleading facts to support its impermissible group pleading;

- ONB's original claims for aiding and abetting breach of fiduciary duty and civil conspiracy are combined and retitled "Aiding and Abetting/Civil Conspiracy" (Count III) despite that they still lack a prerequisite underlying tort;

- ONB combines its claims alleging tortious interference with existing business relationships and tortious interference with prospective business expectancy into one claim for "Tortious Interference with Existing Business Relationships and Expectancies" (Count IV) but still cannot plead facts sufficient to support these causes of action;[1] and

- ONB maintains its claim for unjust enrichment (Count V), despite preclusion by other claims that provide an adequate legal remedy if successful.

This perfunctory reduction in "counts" reflects ONB's resistance to analyzing its own claims with a critical eye; instead, ONB clings to the age-old idiom "throw mud at the wall and see what sticks." Without facts sufficient to support its causes of action, ONB's

---

[1] It appears the only claim ONB eliminated is its original claim for "Tortious Interference with Employment Relationships."

repackaged claims still fail as a matter of law. Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6).

## FACTUAL BACKGROUND[2]

Bell Bank is a North Dakota state-chartered bank with an established presence throughout North Dakota and Minnesota. (ECF 64 ¶ 18.) ONB is a nationally chartered bank headquartered in Indiana and Illinois. (*Id. ¶* 17.) On May 1, 2025, ONB acquired Bremer Bank's operations and employees, including the Employee Defendants, in Minnesota. (*Id.* ¶¶ 17, 19-26.) The Employee Defendants live and work in the Brainerd Lakes community. (*Id.* ¶¶ 19-26.)

ONB implements layers of safeguards to ensure its confidential information is not disclosed to unauthorized individuals. (*Id.* ¶ 43.) Only those with a "legitimate business need" can access customer information through secure, password-protected and encrypted platforms. (*Id.* ¶ 44.) Internal policies prohibit storing information on unauthorized

---

[2] The Court must accept a plaintiff's pleaded facts as true when reviewing a motion to dismiss, so Defendants recite the facts as alleged by ONB without conceding their truth. *See Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 795 (8th Cir. 2021); Fed. R. Civ. P. 12(b)(6).

ONB also asserts facts based on the sworn declarations filed by the Employee Defendants in opposition to ONB's motion seeking injunctive relief, so the Court may consider the declarations in deciding this motion. (ECF 64 ¶¶ 84, 90 (describing the Employee Defendants' statements as "admissions").) *See Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 734 (D. Minn. 2016) (opining that courts may consider documents necessarily embraced by the pleadings, which include the contents of documents alleged in a complaint).

devices such as flash drives, and files are purged when they are no longer needed.  (*Id.* ¶¶ 47-48.)

Aside from its written policies, ONB has unwritten procedures through which it ensures data is secure.  Computer, network, and email is closely monitored so that any employee who attempts to access unauthorized information is "flagged" by electronic safeguards.  (*Id.* ¶ 50(b).)  While not a part of ONB's employee handbook, departing employees are expected to surrender their laptops, keycards, and any paper copies of files. (*Id.* ¶ 50(d).)

The Employee Defendants "held key positions of trust and responsibility" at ONB's Brainerd and Baxter branches.  (*Id.* ¶ 53.)  Because they had a legitimate business need, they regularly accessed data that ONB considered "highly-sensitive nonpublic customer information" such as names, phone numbers, relationship histories, and loan information. (*Id.*)  In their roles, the Employee Defendants used ONB's systems to manage client relationships, collaborate across departments, and deliver financial services.  (*Id.* ¶ 54.)

In November 2025, the Employee Defendants explored the possibility of moving to Bell Bank.  (*Id.* ¶¶ 56-58.)  On Friday, November 14, 2025, all but Bernu and Vold attended a meeting to discuss the opportunity.  (*Id.* ¶ 58.)  Adams and Johnson then met Bernu for a drink at Boulder's Tap and told their friend that they planned to leave ONB; Bernu decided to join them. (*Id.* ¶ 59(a); ECF 24 ¶¶ 10-11).  The Employee Defendants each gave Ellingson their own compensation information to share with Bell Bank.  (*Id.* ¶¶ 59(b)-(e).) The next week, Bell Bank extended offers of employment.  (*Id.* ¶ 61.)

From the time that they began conversations with Bell Bank, the Employee Defendants continued serving clients in their "key positions" and accessed information to support these "legitimate business need[s]" as they always had, so they were not flagged by any of ONB's robust security measures. (*Id.* ¶¶ 44, 50(b).) For example:

- Campbell was responsible for originating, growing, and managing complex business relationships. (*Id.* ¶ 53(d).) Through her last day, Campbell worked on complex real estate matters including declarations of covenants, conditions, restrictions, and easements, property appraisals, and mortgage documents. (*Id.* ¶¶ 74 (a)-(e).)

- McConkey managed a portfolio of business customers and contributed to ONB's broader commercial banking operation. (*Id.* ¶ 53(e).) He continued managing his portfolio and supporting ONB's operations even after accepting the offer from Bell Bank. (*Id.* ¶ 76(a)-(b).)

- Bernu supported relationship managers and banking operations. (*Id.* ¶ 53(h).) Until her last day, Bernu continued to provide loan files, closing documents, and account statements for customers. (*Id.* ¶¶ 77(a)-(b).)

- Ellingson served as Credit Systems Director for ONB's credit practices and strategic credit decisions. (*Id.* ¶ 53(a).) Through her final week, Ellingson continued working on a credit strategy to upgrade ONB's loan operating system known as "CLT." (*Id.* ¶ 78.; ECF 26 ¶ 7 (describing "CLT" project).)

- Vold was responsible for servicing commercial loan and deposit accounts. (ECF 64 ¶ 53(c).) She continued servicing these accounts through her last days. (*Id.* ¶¶ 79(a)-(e).)

- Yantes worked closely with businesses in the Brainerd market. (*Id.* ¶ 53(f).) He continued to monitor his business customers' loans through the end of his tenure at ONB. (*Id.* ¶ 80.)

Between Thursday, November 20 and Friday, November 21, the Employee Defendants accepted their individual offers from Bell Bank. (*Id.*) They worked diligently for the next two weeks, and on the following business day (Monday, December 8), they resigned. (*Id.* ¶¶ 62-63.) The Employee Defendants prepared resignation letters and left their badges and corporate credit cards as required by ONB's policies. (*Id.* ¶ 63.) Although tellers remained working at the Brainerd branch, ONB closed the branch for the day. (*Id.* ¶ 66.) ONB also closed the lobby of the Baxter branch, while the drive-through remained operational. (*Id.* ¶ 67.) ONB has not hired new employees to replace the Employee Defendants, so the Brainerd and Baxter branches are understaffed. (*Id.* ¶ 103(e).)

Bell Bank promptly onboarded its new employees after they left ONB. (*Id.* ¶ 99.) The Employee Defendants contacted some friends and former customers to share the news that they left ONB. (*Id.* ¶¶ 88-90.) Campbell called C.L., a customer she knows from church, to provide contacts at ONB's Aitkin, Minnesota branch. (*Id.* ¶ 88; ECF 25 ¶ 46.) Adams, Johnson, Bernu, and McConkey contacted a few customers and friends to share their news and to offer reassurance that others at ONB would continue serving them. (ECF 64 ¶¶ 90(a)-(b), (e)-(f); ECF 23 ¶ 28 (Adams); ECF 24 ¶ 20 (Bernu); ECF 27 ¶ 54

(Johnson); ECF 28 ¶ 46 (McConkey).)  Ellingson told a friend, J.F.K., about her departure, and T.M. called her to announce that he wanted to move his business banking to Bell Bank. (ECF 64 ¶ 90(d); ECF 26 ¶¶ 55-56.)  And Yantes called C.W.R. and B.P.R., two old friendships that predated ONB and even Bremer Bank.  (ECF 64 ¶ 90(g); ECF 30 ¶¶ 40-41.)

One week after the Employee Defendants departed for Bell Bank, ONB commenced this lawsuit.  (*See* ECF 1.)  Through its First Amended Complaint, ONB asserts five claims: misappropriation of trade secrets against all Defendants (*id.* ¶¶ 108-124)[3]; breach of fiduciary duty against the Employee Defendants (*id.* ¶¶ 125-133)[4]; aiding and abetting/civil conspiracy against all Defendants (*id.* ¶¶ 134-151)[5]; tortious interference with existing business relationships and expectancies against all Defendants (*id.* ¶¶ 152-161)[6]; and unjust enrichment against Bell Bank.  (*Id.* ¶¶ 162-168.)

ONB seeks, in addition to damages, that Defendants be enjoined from using, disclosing, or retaining ONB's "customer lists, customer data, or business strategies" as

---

[3] ONB originally separated its state and federal claims for misappropriation of trade secrets, distinguishing between the Minnesota Uniform Trade Secrets Act and the federal Defend Trade Secrets Act with separate counts. (ECF 1 ¶¶ 118-151.)

[4] ONB originally brought separate claims against the Employee Defendants for breach of the common law duty of confidentiality and breach of fiduciary duty. (ECF 1 ¶¶ 152-169.)

[5] ONB originally brought its claims against Defendants for aiding and abetting and civil conspiracy as two counts. (ECF 1 ¶¶ 170-188.)

[6] ONB originally brought separate claims against Defendants for tortious interference with existing business relationships and tortious interference with prospective business expectancy. (ECF 1 ¶¶ 189-202.)

ONB considers these categories of information to be trade secrets or confidential information.  (*Id.* at Prayer for Relief ¶ A(i).)  ONB also asks that Defendants be prohibited from encouraging any customers to leave ONB by using "ONB trade secrets, confidential information, or insights derived from their former roles at ONB."  (*Id.* ¶ A.)  But ONB concedes that the Employee Defendants may use information learned through their own relationships.  (ECF 50, 18:12-23 ("If you have other relationships with the people, go ahead.").)

## ARGUMENT

### I.    LEGAL STANDARD

In a diversity action, "federal pleading standards [are applied] to state [] substantive law to determine whether the complaint makes out a claim under state law."  *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 420 (8th Cir. 2020).  ONB asserts a federal claim – arising out of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* – in addition to claims under Minnesota statutory and common law.   It is therefore appropriate to apply federal pleading standards to all of ONB's claims.  "Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006).  To withstand dismissal, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6).  While courts assume well-pleaded facts to be true and construe all reasonable

inferences in the plaintiff's favor, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The plausibility standard requires more than a mere possibility that a defendant acted unlawfully; a complaint might state a claim that is conceivable, but not plausible, if it disregards an "obvious alternative explanation" for the misconduct alleged. *Iqbal*, 556 U.S. at 682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). To achieve plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ambassador Press, Inc.*, 949 F.3d at 420. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* at 420-21 (citation modified).

## II.    ONB'S TRADE SECRET MISAPPROPRIATION CLAIM FAILS TO ADEQUATELY DESCRIBE TRADE SECRETS OR TO PLEAD FACTS SHOWING USE OR DISCLOSURE

Count I of ONB's First Amended Complaint alleges that Defendants misappropriated trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*. (DTSA) and the Minnesota Uniform Trade Secrets Act (MUTSA), Minn. Stat. §§ 325C.01, *et seq*. (ECF 64 ¶¶ 108-124.) If the broad categories of documents described in the First Amended Complaint are not trade secrets, ONB contends in the alternative that the Employee Defendants breached their common-law duties of confidentiality. (*Id. ¶* 124.) The First Amended Complaint fails under all of these theories, because the law does not presume that customer names and phone numbers are trade secrets, ONB's belief that the Employee Defendants took any other information is based

entirely on speculation, and relief under the common-law duty of confidentiality is precluded by the MUTSA.

The DTSA and MUTSA have the "same purpose and functionally the same definitions for key terms," so courts analyze claims under these statutes together. *See Cambria Co. LLC v. Schumann*, No. 19-CV-3145 (NEB/TNL), 2020 WL 373599, at *3 (D. Minn. Jan. 23, 2020); *see also MPAY Inc. v. Erie Custom Computert. MPAY Inc.*, 970 F.3d at 1017 n.1 (same). ONB consolidated its claims, because as the Court recognized, they are redundant. (ECF 50, 31:10-14 ("It just piles on, in my view, duplicative claim after duplicative claim after duplicative claim.").)

To avoid dismissal of its misappropriation claim, ONB must plausibly plead (1) the existence of trade secrets, (2) that the Employee Defendants acquired the trade secrets through their confidential relationship with ONB, and (3) that the Employee Defendants or Bell Bank used and disclosed the trade secrets. *Jostens, Inc. v. Nat'l Comput. Sys., Inc.*, 318 N.W.2d 691, 701 (Minn. 1982). The First Amended Complaint fails to satisfy any of these elements, so it should be dismissed.

## A.    ONB Failed to Plead Trade Secrets

A trade secret is information that (1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy. *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). These elements "should not be artificially separated for purposes of analysis since, in a significant sense, they are interdependent." *Jostens, Inc.*, 318 N.W.2d at 701. Instead, the hallmark of an adequately pleaded trade secret is the

specificity with which it is described.  To succeed on this claim, ONB "must define its alleged trade secrets with sufficient specificity."  *Prime Therapeutics LLC*, 354 F. Supp. 3d at 967 (citation modified).  A "reasonable degree of specificity is important . . . even at the pleading stage."  *CH Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *9 (D. Minn. Mar. 20, 2019).

Rather than identify the trade secrets in question with specificity, ONB describes broad swathes of "highly confidential and proprietary" information that it generally believes is protectable, including:

    a. The names and identifying information of ONB customers, including each customer's status as:

        i.  a financial services customer generally (i.e., a person or entity who needs, wants to receive, or has previously received banking, loans, treasury management services, or similar financial services), and

        ii.  a current or former customer of ONB specifically (ECF 64 ¶ 37);

    b. The contact information of ONB customers, including their mailing addresses, email addresses, and telephone numbers (*id.*);

    c. Personal identification information about customers, such as their birthdays, social security numbers, and names of family members (*id.*);

    d. Customer business and financial information, including:

        i.  information about their accounts, such as: account numbers, account structures, account balances, lending histories, signatories, and beneficiaries (*id.*);

        ii.  information about their lending needs, loan terms and rates, loan maturity dates, financial plans, and income (*id.*);

        iii.  credit profiles, pricing and profitability data, internal relationship notes, and strategic banking recommendations.  (*Id.*)

ONB apparently believes that any information saved in its computer system is a trade secret, but "[m]erely stating that the information is confidential is insufficient." *Hot*

*Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038 (D. Minn. 2010) (dismissing misappropriation claim that relied on conclusory statements that information was trade secret). ONB's broad categories are akin to general labels such as "business methodologies, formulas, devices, and compilations of information, including suppliers and customers," which this Court previously found "so broad as to be meaningless." *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (granting motion to dismiss theft of trade secret claim); *see also AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987) ("Other courts have warned Plaintiffs of the risks they run by failing to identify specific trade secrets and instead producing long lists of general areas of information which contain unidentified trade secrets.").

ONB's first category encompasses general information about financial services customers, but this information is known or readily ascertainable. (ECF 64 ¶ 37(a).) Undoubtedly, *every* individual and business in the Brainerd-Baxter market "needs, wants to receive, or has previously received … financial services." (*Id.*) And everyone to whom ONB's customers write a check knows of the customer's banking relationship. "Simply to assert a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status." *Jostens, Inc.*, 318 N.W.2d at 699. ONB fails entirely to explain why a "customer's status" is trade secret. *See Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 868 (D. Minn. 2015) ("Information which is generally known to the public or within an industry, or is readily ascertainable, is not a trade secret.").

12

The First Amended Complaint similarly fails to explain why the next two categories—contact information and personal details such as family members and birthdays—are *ONB's* protectable information. (ECF 64 ¶ 37(b)-(c).) As to ONB's last category, while some "business and financial information" *may* contain trade secrets, customer lists, institutional knowledge, and operation strategies "generally do not constitute trade secrets" under Minnesota law, and do not automatically qualify as trade secrets under federal law. (*Id.* ¶ 37(d).) *WEG Elec. Corp v. Pethers*, No. CV 16-471(DSD/LIB), 2016 WL 1441793, at *2 (D. Minn. Apr. 12, 2016); *see Katch, LLC*, 143 F. Supp. at 868 ("Customer lists, pricing information, long-term sales strategies, and customer buying habits do not necessarily constitute trade secrets."); *see also United Prods. Corp. of Am. v. Cederstrom*, No. A05-1688, 2006 WL 1529478, at *5 (Minn. Ct. App. June 6, 2006) (rejecting categories of "customer lists, credit histories, and buying habits" as trade secrets).

Even the banking data ONB alleges took "several years and hundreds of thousands of dollars to obtain and compile" is not a de facto trade secret, as this information may quickly become obsolete, losing its economic value. (ECF 64 ¶ 39.) *See Katch, LLC*, 143 F. Supp. 3d at 868-69 (opining that quickly changing financial information "is of questionable independent economic value"); *see also WEG Elec. Corp*, 2016 WL 1441793, at *3 ("Customer lists, pricing lists, and operation strategies may lose their economic value over the course of a few months."). The First Amended Complaint does not adequately describe the data ONB purports to protect, so Defendants and the Court cannot know whether it is current, rapidly changing, or outdated. "A lack of specific evidence or

explanation as to why certain documents are trade secrets weighs against a finding that the information constitute[s] a trade secret." *WEG Electric Corp*, 2016 WL 1441793, at *2.

Finally, ONB fails to describe reasonable efforts under the circumstances to maintain the secrecy of its purported trade secrets. The First Amended Complaint cites ONB's written policies without pleading that any of these documents prohibited employees from saving customer names and phone numbers, let alone requiring them to delete or forget this information when they resigned. (ECF 64 ¶¶ 46-48.) Only ONB's "Team Member Handbook" allegedly identifies "Customer Lists" without an explanation of what information is contained in these lists. *(Id.* ¶ 46.) Customer information does not become a trade secret simply because it is stored in a password-protected computer. *See NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039, 1043-1044 (D. Minn. 2001) (holding no likelihood for success on the merits when the plaintiff alleged lists were stored on "password-protected computer system," but "failed to produce any such list or even a portion of the list to the Court."). And the First Amended Complaint never actually alleges that a customer list was taken by any of the Employee Defendants or used by Bell Bank. ONB has failed to sufficiently describe its trade secrets.

**B.    ONB Failed to Plead that the Employee Defendants Learned Customer Names and Phone Numbers Through Their Confidential Relationship With ONB**

The First Amended Complaint alleges that ONB "*maintains* longstanding, valuable relationships" with customers, and that it relies on employees "to serve as stewards of [ONB's] goodwill." (ECF 64 ¶¶ 33, 35) (emphasis added). ONB does not claim to have *originated* the relationships between the Employee Defendants and customers, but a trade

14

secret misappropriation claim requires that employees learned of confidential information *through* their employment. *See Jostens, Inc.*, 318 N.W.2d at 702 (distinguishing general knowledge acquired through experience from that which is acquired "under circumstances giving rise to a duty to maintain its secrecy or limit its use.").

Employees do not surrender their own relationships to their employers. *See Sanitary Farm Dairies, Inc. v. Wolf,* 112 N.W.2d 42, 48 (1961) (declining to find that customers' identity and location were trade secrets of an employer when their patronage was secured in part by the efforts of an employee). Even if ONB intended to keep customer names and phone numbers under lock and key, it failed to plead that the Employee Defendants knew this, or that their personal contacts could never be used if they left for a new employer. ONB's Complaint fails to plead fair notice. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 902 (Minn. 1983) ("If ECC wanted to prevent its employees from doing the same thing, it had an obligation to inform its employees that certain information was secret."). Nor does ONB's handbook save this claim, as it does not explain how employees would know that a customer list includes their own saved contacts. *See Nw. Airlines v. Am. Airlines*, 853 F. Supp. 1110, 1115 (D. Minn. 1994) (requiring confidentiality measures to give employees reason to know the type of information that must be maintained as secret).

## C.    ONB Failed to Plead the Use or Disclosure of Any Trade Secrets

ONB's summation of trade secrets underscores the need for sufficient specificity, because while ONB may have trade secrets, the First Amended Complaint does not sufficiently describe *which* trade secrets ONB alleges the Employee Defendants or Bell

Bank took, used, or disclosed; this deficiency is fatal.  *See Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Failure to identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim."); *see also WEG Electric Corp*, 2016 WL 1441793, at *2 (finding MUTSA claim not likely to succeed on the merits where the plaintiff did not submit "any specific evidence or an example document that may contain a trade secret.").

The only information ONB alleges the Employee Defendants actually took are customer names and phone numbers.  (*See* ECF 64 ¶¶ 74-80.)  But ONB did not identify any customers that were not otherwise known to the Employee Defendants, despite conceding during its preliminary injunction hearing that the Employee Defendants may contact *and even solicit* customers with whom they have personal relationships.  (ECF 50, 18:12-23 ("If you have other relationships with the people, go ahead.").)  ONB also agreed that the Employee Defendants could contact customers with whom they built relationships at previous employers.  (*Id.* at 17:11-22.)  Now, in a sudden about-face, ONB classifies the Employee Defendants' declarations describing their permissible conduct as "admissions" evidencing "retention and misuse" of customer information.  (*Id.* ¶ 84.)  *See Dunnigan,* 184 F. Supp. 3d at 734 (permitting consideration of documents invoked by a complaint).  Not so.

Notwithstanding ONB's recognition that individual customer names and phone numbers are not per se trade secrets, every one of the Employee Defendants *denied* taking or using any confidential information.  (*See* ECF 23 ¶¶ 14, 20, 25, 30, 37 (Adams); ECF 24 ¶¶ 14, 23-24 (Bernu); ECF 25 ¶¶ 37, 42, 59 (Campbell); ECF 26 ¶¶ 39, 43, 53, 62

(Ellingson); ECF 27 ¶¶ 32, 53, 57, 61 (Johnson); ECF 28 ¶¶ 35, 39, 44, 58 (McConkey); ECF 29 ¶¶ 23, 37, 41 (Vold); ECF 30 ¶¶ 31, 33, 36, 46, 51 (Yantes).)

ONB otherwise *speculates* that four of the Employee Defendants took printed documents when they resigned, but the only basis for this allegation is ONB's inability to find the documents. (*See* ECF 64 ¶¶ 74-77, 79 (alleging that Campbell, McConkey, Bernu, and Vold printed documents, but ONB has been unable to locate the printed copies).) ONB does not plead a single fact to "raise a right to relief above the speculative level" as to these four Employee Defendants. *Twombly*, 550 U.S. at 555.

Worse, ONB *speculates* that Ellington and Yantes each accessed spreadsheets before resigning, so they must have taken information for use at Bell Bank. (ECF 64 ¶¶ 78, 80.) This is a conclusory allegation "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680-81 (identifying conclusory allegations in the complaint that would not be accepted under a Rule 12 analysis).

The Court should also "consider whether there are lawful obvious alternative explanations for the alleged conduct, because where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945–46 (8th Cir. 2015) (citation modified). Here, ONB's own First Amended Complaint supplies obvious alternative explanations for the alleged conduct. *See Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924, 928 (8th Cir. 2024) (affirming dismissal when allegations in the complaint supported an alternative conclusion). The Employee Defendants

continued serving clients in their "key positions" at ONB. (ECF 64 ¶ 53.)[7] And ONB's own policies required that documents be "purged" when they were no longer needed. (*Id.* ¶¶ 47-48.)

ONB describes *possible* misconduct, but this is not enough to demonstrate plausibility. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Edwards v. City of Florissant, Missouri*, 58 F.4th 372, 377 (8th Cir. 2023) (recognizing an "obvious lawful alternative explanation" precludes plausibility of a claim). The obvious alternative explanation—that the Employee Defendants were *doing their jobs*—defeats the plausibility of ONB's claim.

"Mere fears that a company's former employee might have taken (completely undefined) trade secrets with him on his way out the door, and that that employee's new employer might use these trade secrets to their advantage, at some unknown future date, do not give rise to a plausible claim of trade secret misappropriation." *CH Bus Sales, Inc.*, 2019 WL 1282110, at \*10. ONB's claims "on information and belief" that the Employee Defendants took documents and information to Bell Bank are "threadbare recital[s]" insufficient to "satisfy the standard set forth by the Supreme Court in *Twombly* and *Iqbal*."

---

[7] ONB cannot, in good faith, plead its reinterpretation of the Employee Defendants' declarations as facts. The declarations describe the Employee Defendants' efforts to ensure another ONB employee could pick up where they left off. (*See, e.g.,* ECF 24 ¶ 13 (Bernu left detailed notes and folders containing "pending" and "completed" items); ECF 25 ¶ 43 (Campbell left a detailed spreadsheet, printed emails, and compiled information into folders); ECF 29 ¶ 25 (Vold left detailed instructions for borrower-based certificates, working capital spreads, and lease lines); ECF 30 ¶ 38 (Yantes left a detailed list of pending items, including relevant ONB and customer contacts).)

*Schlief v. Nu-Source, Inc.*, No. CIV. 10-4477 DWF/SER, 2011 WL 1560672, at *7 (D. Minn. Apr. 25, 2011) (dismissing trade secret counterclaim that merely asserted access to trade secrets and confidential information, including customer and price lists).

ONB's claims cannot survive on the illogical leap that the Employee Defendants joined a new employer, so they must have stolen trade secrets and therefore, they and Bell Bank have committed unidentified acts of misappropriation. Instead, ONB must describe the purported trade secret at issue and identify who used it, when it was used, or how it was used. *See Kostuch v. Gen. Mills Inc.*, No. A19-1549, 2020 WL 3637922, at *4 (Minn. Ct. App. July 6, 2020) (affirming dismissal of claim where plaintiff's complaint had "no facts alleg[ing] who used [plaintiff's] trade secrets, or how, or when they were used."). Having failed to meet the basic pleading standard, ONB's misappropriation claim fails as a matter of law.

### D. ONB's Alternative Claim of Breach of the Duty of Confidentiality is Precluded by MUTSA

ONB haphazardly alleges that if its trade secret claims fail, it has a claim for breach of the common law duty of confidentiality. (ECF 64 ¶ 124.) But the MUTSA explicitly preempts all claims, other than contractual or criminal ones, that are based on alleged misappropriation of a trade secret. Minn. Stat. § 325C.07(b). A plaintiff may only maintain separate causes of action "to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets." *Protege Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 940 (D. Minn. 2019).

ONB's decision not to allege "something more" confirms any claim arising out of the duty of confidentiality is the same as that which ONB presents in support of its misappropriation claim. *See Schlief*, 2011 WL 1560672, at *6 (granting Rule 12(b)(6) dismissal where "breach of the duty of confidentiality [was] nothing more than a claim for misappropriation of trade secrets"). ONB's "common-law claim[s are] therefore displaced by the MUTSA" and must be dismissed. *Id*.

## III. ONB'S CLAIM FOR BREACH OF THE EMPLOYEE DEFENDANTS' FIDUCIARY DUTIES FAILS AS AN IMPERMISSIBLE GROUP PLEADING WITHOUT FACTUAL SUPPORT

Count II of ONB's First Amended Complaint asserts that the Employee Defendants breached their common law duty of loyalty. (ECF 64 ¶¶ 125-133.) The duty of loyalty prohibits an employee from "soliciting the employer's customers for herself, or from otherwise competing with her employer, while she is employed." *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). "Employees who wish to change jobs or start their own businesses, however, should not be unduly hindered from doing so. An employee has the right, therefore, while still employed, to prepare to enter into competition with her employer." *Id.*

ONB claims the Employee Defendants breached their duties by "solicit[ing] one another and coordinat[ing] with one another" to leave without advance notice. (*Id.* at ¶ 129.) This claim fails because it rests entirely on impermissible group pleading, and because ONB did not plead conduct which, if proven, amounts to any breaches of the duty of loyalty under Minnesota law. And to the extent ONB alleges that confidential information was used or disclosed in breach of the duty of loyalty, it is precluded by

MUTSA.  *See* Minn. Stat. § 325C.07(b) (preempting all claims, other than contractual or criminal ones, that are based on alleged misappropriation of trade secrets).

### A.    ONB's Group Pleading Is Impermissible

ONB repeatedly relies on group pleading, referring to "the Former Employees" or "the Defendants" collectively to speculate that they solicited one another and coordinated with Bell Bank to leave ONB.  (ECF 64 ¶ 129.)  This is not enough.  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."  *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

The First Amended Complaint classifies the Employee Defendants' preparation as disloyal, but preparing to leave is permissible.  *Rehab. Specialists, Inc.,* 404 N.W.2d at 304 ("An employee has the right ... while still employed, to prepare to enter into competition with her employer.").  Sharing their own compensation information, attending interviews, and negotiating compensation with a new employer were all within the Employee Defendants' rights.  (ECF 64 ¶¶ 56-61.)  Bell Bank "simply made [a] better offer and [the Employee Defendants] terminated at-will employment."  *Cenveo Corp. v. S. Graphic Sys., Inc.*, 784 F. Supp. 2d 1130, 1140 (D. Minn. 2011).

ONB's only effort to plead "who did what to whom" alleges that Adams and Johnson recruited Bernu.  (ECF 64 ¶¶ 64(a)-(e).)  *Tatone*, 857 F. Supp. 2d at 831.  But rather than plead facts to support its conclusion, ONB skews statements Bernu made in a declaration.  (*Id.* 64 ¶ 59(a).)  If ONB has no supporting facts without rewriting Bernu's own words to

fit its narrative, its claim against Adams and Johnson fail; Bernu confirmed that she told her friends she wanted to leave with them.  (ECF 24 ¶¶ 10-11.)  And if ONB's claim is that Bernu *was solicited*, it cannot maintain a claim against her *for soliciting* on the same facts. (*See* ECF 50, 32:6-8 ("[W]hen you accuse employees of breaching duties and things like that, I need to know which employee breached in what way.").)

ONB's broad assertion that each of the Employee Defendants "encouraged, solicited, and induced" the others with no factual support is impermissible group pleading. (ECF 64 ¶ 64.) This effort fails because "[e]ach Defendant's alleged conduct must be assessed independently to ensure that [the plaintiff has] pleaded sufficient facts regarding that [defendant]." *McDonough*, 799 F.3d at 946.  ONB's "[c]onclusory statements that lump defendants together, without factual support for each, are insufficient." *In re Granulated Sugar Antitrust Litig.*, No. MDL 24-3110 (JWB/DTS), 2025 WL 3012238, at *7 (D. Minn. Oct. 15, 2025) (citing *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1020 (D. Minn. 1997) (dismissing case where allegations grouped defendants together), *aff'd*, 195 F.3d 430 (8th Cir. 1999)).

ONB's group pleading may not survive dismissal, nor should Defendants and the Court be required to "pick through the mess and determine if [ONB] may have pleaded a viable claim or two." *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (disapproving kitchen sink complaints that "cough[] up an unsightly hairball of factual and legal allegations" rather than plead claims concisely and clearly).

### B.    ONB Alleges No Conduct Breaching the Duty of Loyalty

Breach of an employee's duty of loyalty is recognized only in limited circumstances, namely: "(1) when an employee solicits the business of the employer before ending the employment relationship; (2) where the employee misappropriates or discloses information that the employer treated as a secret; and (3) where the employee engages in egregious misconduct, e.g., embezzlement or referring customers to a competitor." *Haddley v. Isanti Cnty.*, No. 15-CV-2106 (DWF/LIB), 2015 WL 13697929, at *16 (D. Minn. Nov. 18, 2015). ONB does not claim any customers were solicited while the Employee Defendants were employed, and their duty of loyalty ended when their employment ended. *See Rehab. Specialists, Inc.*, 404 N.W.2d at 305-06. Nor has ONB alleged any egregious misconduct such as embezzlement. Instead, ONB broadly concludes that "[w]hile still employed by ONB, the Former Employees solicited one another and coordinated with one another (and with Bell Bank) to orchestrate a mass resignation" while they were employed. (ECF 64 ¶ 129.)

ONB's conclusion does not make a cause of action because it does not "plead sufficient facts to raise a right to relief above a speculative level on [ONB's] claim for breach of a duty of loyalty." *Schlief*, 2011 WL 1560672, at *6 (dismissing Minnesota duty of loyalty claim under Rule 12(b)(6)). Resigning as a group is not a de facto breach of loyalty, which requires "something more," such as supplying insider information to a competitor while still employed. *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1032 (8th Cir. 2020) (contrasting permissible group resignation to form competing business with impermissible group defection that involved sharing insider information and

collecting wages simultaneously from employer's competitor). While it does not appear any Minnesota courts have analyzed the distinction between permissible and actionable group resignations, another federal court put it succinctly:

> [A]n employee may discuss job offers with his circle of friends and the group may debate whether to leave together. Such discussions are a normal part of workplace intercourse. A breach of loyalty may occur, however, when an about-to-leave employee targets employees outside his normal circle and uses his position to induce them to defect.

*Quality Sys., Inc. v. Warman*, 132 F. Supp. 2d 349, 354 (D. Md. 2001).[8]

ONB alleges no facts suggesting that any of the Employee Defendants supplied insider information, promised coworkers any benefits to leave, or targeted employees outside of their normal circles. Absent "something more," ONB's Complaint has not plausibly alleged breaches of the duty of loyalty. On this independent basis, Count II must be dismissed.

### C.    The MUTSA Displaces ONB's Duty of Loyalty Claim

ONB vaguely infers that the Employee Defendants used confidential information to breach their duties of loyalty. (*See* ECF 64 ¶¶ 127-128.) To the extent ONB intends to pursue this allegation, it cannot, as the claim is preempted by the MUTSA. *See SL*

---

[8] For additional cases recognizing this same concept under other states' similar common law, *see, e.g.*, *Allied Supply Co. v. Brown*, 585 So. 2d 33, 35 (Ala. 1991) (holding *en masse* resignations to compete do not breach at-will employees' fiduciary duties); *Palliative Plus LLC v. A Assure Hospice, Inc.*, No. 03-23-00770-CV, 2025 WL 284920, at *9 (Tex. App. Jan. 24, 2025) (dismissing loyalty claim asserted against seven departing colleagues where evidence showed they "mutually agree[d] among themselves" to leave together); *Lagniappe Logistics, Inc. v. Buras*, 2017-0701 (La. App. 1 Cir. 1/4/18), *writ denied sub nom. Lagniappe Logistics, Inc. of Mississippi v. Buras*, 2018-0219 (La. 3/23/18), 239 So. 3d 298 (rejecting "the proposition that mass resignation by at-will employees is a breach of the duty of loyalty and constitutes an unfair trade practice").

*Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173, 1179 (D. Minn. 2003) (citing Minn. Stat. § 325C.07(a)); *see also Schlief*, 2011 WL 1560672, at *16 (dismissing common law "breach of confidentiality" claim as preempted by MUTSA).

## IV.    ONB'S CLAIM FOR AIDING AND ABETTING/CIVIL CONSPIRACY FAILS WITHOUT AN UNDERLYING TORT OR SUPPORTING FACTS

In Count III, ONB alleges that the Employee Defendants breached their fiduciary duties of loyalty and gave "substantial assistance and encouragement" to one another by sharing their plans and coordinating their resignation.  (ECF 64 ¶¶ 134-138.)  ONB contends that all the Employee Defendants are therefore liable for aiding and abetting the others' breaches.  (*Id.* ¶ 139.)  Similar accusations are lodged against Bell Bank for purportedly enabling and supporting the Employee Defendants' breaches of their duty of loyalty. (*Id.* ¶¶ 140-141).

According to ONB, Bell Bank and the Employee Defendants "knowingly conspired and acted in concert to accomplish" an unlawful "mass resignation" of key employees, misappropriation of trade secrets and confidential business information, and interference with ONB's customer and employee relationships.  (*Id.* ¶ 143.)  In the alternative, ONB alleges that even if Defendants conspired to accomplish *lawful* competition, they did so by unlawful means.  (*Id.* ¶ 144.)

These claims fail without a viable underlying tort claim.  They also fail because ONB does not plead Defendants' knowledge of any wrongful conduct or unlawful means, and because the claims are preempted by the MUTSA.[9]

### A.    Without an Underlying Tort or Facts Demonstrating Knowledge, ONB Cannot Maintain a Claim for Aiding and Abetting

To establish liability for aiding and abetting the tortious conduct of another, "1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff; 2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and 3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach." *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999) (citing Restatement (Second) of Torts § 876 (1979)).  A purported aider and abettor's knowledge of wrongful conduct is a "crucial element in aiding or abetting" cases. *Fed. Deposit Ins. Corp. v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 431 (8th Cir. 1989).

ONB's failure to adequately plead underlying torts is fatal to the aiding and abetting claim against all Defendants.  Where an underlying tort does not meet pleading requirements, the claim for aiding and abetting cannot stand.  *See E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012) (dismissing aiding and abetting claim

---

[9] ONB attempts to exclude its claim for misappropriation of trade secrets from Count III, knowing the MUTSA would otherwise preclude it.  (ECF 64 ¶ 134 ("ONB realleges and incorporates by reference the allegations set forth in Paragraphs 1-107 and 125-133 of this First Amended Complaint as if fully set forth herein.").)  But ONB's efforts do not save the claim from preemption, because Count III still alleges underlying conduct centered on the misappropriation of trade secrets and breach of the duty of confidentiality, in addition to breach of the fiduciary duty of loyalty.  (*Id.* ¶¶ 143-144.)

where underlying tortious conduct did not satisfy pleading requirements); *Varga v. U.S. Bank Nat. Ass'n*, 952 F. Supp. 2d 850 (D. Minn. 2013), *aff'd,* 764 F.3d 833 (8th Cir. 2014) ("[i]t is axiomatic that liability for aiding and abetting a breach of fiduciary duty cannot exist without an underlying breach of that duty."); *Witzman*, 601 N.W.2d at 187 (same). Because ONB's tort claims must be dismissed for failure to state a claim, its claim for aiding and abetting must also be dismissed.

Even if the tortious conduct underlying ONB's claims was successfully plead, the claim still fails because the First Amended Complaint does not properly plead knowledge. "To state a claim for aiding and abetting such a breach [of fiduciary duty] under Minnesota law, [claimant] must also plead facts showing that [defendant] (1) had knowledge of the breach and (2) substantially assisted it." *Varga*, 952 F. Supp. 2d at 857. ONB fails to allege that any Employee Defendant knew any other Employee Defendant was committing a tort by deciding to simultaneously resign from ONB, or that Bell Bank knew of any breaches of the Employee Defendants' fiduciary duties. "While knowledge may be shown by circumstantial evidence, 'courts stress that the requirement is *actual* knowledge and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed.'" *Id.* (emphasis in original) "It is not enough to plead awareness of the conduct in question . . . . [r]ather, [the plaintiff] must plead facts plausibly suggesting [the defendant] was aware of the *wrongfulness* of the challenged conduct." *Id.* (emphasis in original); *see also Camp v. Dema*, 948 F.2d 455 (8th Cir. 1991) ("For aiding and abetting liability, the knowledge element is critical."). Count III should be dismissed.

*See Varga*, 952 F. Supp. 2d at 857 (dismissing claim where plaintiff "pleads nothing more than facts suggesting [defendant] should have known duties were being breached").

**B.    ONB's Civil Conspiracy Claim Likewise Fails Without an Underlying Tort**

ONB's claim for civil conspiracy fails for the same reasons. "To prevail on a civil conspiracy claim, a plaintiff must establish that defendants 'agreed to accomplish an unlawful purpose, and took concerted actions to achieve that purpose.'" *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1078 (D. Minn. 2013) (quoting *Marty H. Segelbaum, Inc. v. MW Cap., LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009)). Like aiding and abetting, civil conspiracy is not an independent cause of action, but a legal theory that relies on the existence of a tort. *Universal Film Exchanges, Inc. v. Swanson*, 165 F. Supp. 95, 97-98 (D. Minn. 1958); *see also D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997) (requiring dismissal of conspiracy claim without an underlying tort). "The act of combination, standing alone, is not actionable as a conspiracy." *Buetow v. A.L.S. Enters., Inc.*, 564 F. Supp. 2d 1038, 1042 (D. Minn. 2008).

To assert civil conspiracy, "a plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to injure the plaintiff." *Tatone*, 857 F. Supp. 2d at 839 (citation modified). A plaintiff "cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy." *Marty H. Segelbaum, Inc. v. MW Cap., LLC*, 673 F. Supp. 2d 875, 881 (D. Minn. 2009) (quoting *Twombly,* 550 U.S. at 555). But ONB does

just this, declaring that Defendants "conspired" to accomplish a lawful purpose by unlawful means.  (ECF 64 ¶ 144.)

ONB's factual allegations fail to show how the Employee Defendants' decision to resign for a better employer involved "anything more than what they had a legal right to do."  *Marty H. Segelbaum, Inc.*, 673 F. Supp. 2d at 881 (citing *Wurdemann v. Hjelm,* 102 N.W.2d 811, 820 (1960)).  And ONB's allegations against Bell Bank likewise fail, because "persuading a competitor's at-will employees to change their employment is neither tortious nor otherwise unlawful."  *ImageTrend, Inc. v. Locality Media, Inc.*, No. 22-CV-0254 (WMW/DTS), 2022 WL 17128009, at *7 (D. Minn. Nov. 22, 2022).

ONB asserts its claim for civil conspiracy in an effort to hold Bell Bank liable for the purported malfeasance of the Employee Defendants.  *See Am. Computer Tr. Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1489 (D. Minn. 1991), *aff'd and remanded sub nom. Am. Computer Tr. Leasing v. Boerboom Int'l, Inc.*, 967 F.2d 1208 (8th Cir. 1992) ("A civil conspiracy claim thus is merely a means for asserting vicarious or joint and several liability.").  But Bell Bank cannot be vicariously liable, because ONB has not adequately pleaded the Employee Defendants' liability.

### C.    ONB's Aiding and Abetting and Civil Conspiracy Claims are Preempted by the MUTSA

These claims are also preempted by MUTSA.  ONB is not saved by its vague allegation that Defendants "knowingly conspired and acted in concert to accomplish an unlawful purpose – namely . . . misappropriating [ONB's] trade secrets and confidential business information."  (ECF 64 ¶ 143.)  Rather, ONB's failure to distinguish the facts

supporting its aiding and abetting civil conspiracy claim from those supporting its MUTSA claim is independently dispositive. (*Compare id.* ¶¶ 137, 145 *with id.* ¶ 116.) Because ONB has failed to distinguish its civil conspiracy claim from its MUTSA claim, ONB's claim for civil conspiracy is preempted by the MUTSA and must be dismissed. Minn. Stat. § 325C.07. *See, e.g., Nephron Pharms. Corp. v. Hulsey*, No. 618CV1573ORL31LRH, 2019 WL 2423650, at *3 (M.D. Fla. June 10, 2019) (dismissing civil conspiracy claim as preempted by Florida's version of the MUTSA where no material distinction existed between civil conspiracy claim and statutory violations).

## V.     ONB'S CLAIMS FOR TORTIOUS INTERFERENCE FAILS BECAUSE IT IDENTIFIES NO BREACHED CONTRACT OR BUSINESS EXPECTANCY

Count IV alleges a claim for "tortious interference with existing business relationships and expectancies" against all Defendants. (ECF 64 ¶¶ 152-161.) This claim is an improper combination of two claims, which differ from one another in that they "protect different interests." *Marco Techs., LLC v. Midkiff*, No. 19-CV-2323 (PJS/LIB), 2020 WL 12442072, at *8 (D. Minn. Feb. 24, 2020). Both are predicated on conclusory statements that Defendants acted wrongfully, but both fail without adequately pleaded facts.

### A.     ONB's Claim for Tortious Interference With Contracts Fails to Allege a Breached Contract.

While not styled as a claim for tortious interference with an existing contract, ONB's claim alleges interference with "banking contracts and agreements between ONB and its customers…" (ECF 64 ¶ 154.) Claims that allege tortious interference with contracts have five elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of

the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Sysdyne Corp. v. Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015).

ONB failed to identify any specific contract, so this claim fails at the outset. *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 (D. Minn. 2019) (dismissing tortious interference claim that failed to plead the existence of an actual contract); *Karnewie-Tuah v. Frazier*, 757 N.W.2d 714, 719 (Minn. Ct. App. 2008) ("A plaintiff claiming interference with contractual rights must first establish there is a contract in existence that conveys rights and duties on both parties.").

Nor does ONB plead Defendants' procurement of a breach. *See Cardiovascular Sys., Inc. v. Petrucci,* No. 21-1827, 2022 WL 2133743, at *2 (8th Cir. June 14, 2022) (affirming district court's 12(b)(6) dismissal for failure to state a claim for tortious interference with contract where plaintiff failed to identify a breach of the contract). ONB alleges only that the Employee Defendants "solicited" customers following their departure. (ECF 64 ¶ 90.) But solicitation does not amount to a breach of any customers' contracts with ONB. *See RSS Fridley, LLC v. Nw. Orthopaedic Surgeons P'ship, LLP*, No. A21-0664, 2022 WL 200359, at *13 n. 6 (Minn. Ct. App. Jan. 24, 2022) (finding no factual support for tortious interference claim alleging that tenants were influenced to leave before lease expiration when "no provision in the leases prohibited the tenants from leaving the property before the expiration of the lease term").

Even if ONB is correct that certain customers "intend to" begin banking with Bell Bank, choosing a bank is every customer's right. (ECF 64 ¶¶ 156, 159.) ONB has not alleged that it has an exclusive right to provide banking services to anyone. *See Robertson*

31

*v. Gov't Pers. Mut. Life Ins. Co.,* No. 21-CV-2236 (SRN/ECW), 2022 WL 3348331, at *8 (D. Minn. Aug. 12, 2022) (granting Rule 12(b)(6) motion as to tortious interference claim when no breach of contract occurred or could occur); *Cutter v. Lincoln Nat. Life Ins. Co.*, 794 F.2d 352, 357 (8th Cir. 1986) ("There was no evidence presented that plaintiff had an exclusive right to service the insurance contracts.").

### B.    ONB's Claim for Tortious Interference with Prospective Business Expectancy Fails Because ONB Has Not Identified Any Prospects

Count IV simultaneously asserts a claim for tortious interference with "prospective business expectancies." (ECF 64 ¶¶ 152-161.) Such a claim has elements: (1) a reasonable expectation of economic advantage; (2) the defendant's knowledge of that expectation; (3) the defendant's intentional interference with the plaintiff's reasonable expectation; (4) a reasonable probability that the plaintiff would have realized an economic advantage or benefit in the absence of the wrongful act of defendant; and (5) damages. *Metro. Transportation Network, Inc. v. Collaborative Student Transp. of Minnesota, LLC*, 6 N.W.3d 771, 783–74 (Minn. Ct. App. 2024), *review denied* (July 23, 2024), *review denied* (July 23, 2024).

To sustain this claim, ONB "must specifically identify the third party that is the source of the expected future economic relationship because a projection of future business or unidentified customers, without more, is insufficient as a matter of law." *Paisley Park Enters., Inc.*, 361 F. Supp. 3d at 881 (citation modified). ONB failed to do this, instead vaguely describing "prospective and long-standing clients." (ECF 64 ¶ 158.)

ONB likewise fails to allege facts supporting a reasonable probability that ONB would have obtained economic advantage absent Defendants' conduct. (ECF 64 ¶ 159.) *See CH Bus Sales, Inc.*, 2019 WL 1282110 ("Courts in this District have dismissed tortious interference with prospective economic advantage claims when the plaintiff identifies no … reasonable expectation of a prospective business relation with which the defendant interfered."). "The mere general loss of possible unspecified customers does not establish the tort of intentional interference with prospective economic relations under Minnesota law." *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (8th Cir. 1993). Ignoring Minnesota law, and consistent with the rest of its Complaint, ONB relies on speculation and conclusions, rather than facts to support its claims.

Courts in Minnesota regularly dismiss tortious interference claims that fail to plead essential elements. *See, e.g., Nelson v. Dakota Cnty.*, No. 24-CV-4662 (ECT/LIB), 2025 WL 3284932 (D. Minn. Oct. 8, 2025) (granting motion to dismiss where plaintiff "failed to allege any facts to plausibly show" all the elements of tortious interference with prospective economic advantage); *Hawke Media, LLC v. Stable Grp. Holdings, LLC*, No. 23-CV-2496 (ECT/TNL), 2025 WL 437483 (D. Minn. Feb. 7, 2025) (dismissing tortious interference claim that relied on conclusory allegations without identifying lost customers or explaining how claimed interference was independently tortious.); *Encore Rehab. Servs., LLC v. Moorhead Operations LLC*, No. 19-CV-1283 (PAM/LIB), 2019 WL 13235827 (D. Minn. Feb. 24, 2019) (dismissing claims where plaintiff had not "plausibly alleged any specific facts to support a conclusion that [defendant] wrongfully interfered

with a reasonable expectation of economic advantage."). This claim must meet the same fate.

### C.    Tortious Interference Claims That Recite Allegations of Trade Secret Misappropriation are preempted by MUTSA

ONB alleges that its claim for tortious interference arises, in part, from the use of its confidential and proprietary information. (ECF 64 ¶¶ 156.)  Again, to the extent this claim relies on the same facts alleged in support of ONB's trade secret misappropriation claim, it is preempted by the MUTSA and must be dismissed. Minn. Stat. § 325C.07. *See Lutheran Ass'n of Missionaries & Pilots, Inc. v. Lutheran Ass'n of Missionaries & Pilots, Inc.*, No. CIV.03-6173 PAM/RLE, 2005 WL 629605, at *13 (D. Minn. Mar. 15, 2005) (dismissing tortious interference claim as preempted by the MUTSA where claim was premised on misappropriation of trade secrets). ONB cannot avoid preemption by purporting to exclude its MUTSA claim from Count IV. (*See* ECF 64 ¶ 152.)

## VI.    ONB FAILS TO STATE A VIABLE CLAIM FOR UNJUST ENRICHMENT

ONB also brings a claim against Bell Bank for unjust enrichment.  (ECF 64 ¶¶ 162-168.)  Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable.  *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).  Claims for unjust enrichment "do not lie simply because one party benefits from the efforts or obligations of others."  *First Nat. Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).  Rather, the plaintiff must show that the defendant was enriched illegally or unlawfully, or in a manner that is morally wrong.  *Herlache v. Rucks*, 990 N.W.2d 443, 450 (Minn. 2023).

And relief under a theory of unjust enrichment is not available when, as here, a plaintiff has an adequate legal remedy. *United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013) (recognizing that "it is the existence of an adequate legal remedy that precludes unjust enrichment recovery" even if "plaintiff failed to pursue adequate legal remedies").

ONB's unjust enrichment claim rests on the same speculation and conclusions it uses to support its other claims. First, ONB states that the "wrongful conduct" supporting its claim includes Bell Bank's acquisition of "ONBs confidential and trade secret business information." (ECF 64 ¶ 164.) The MUTSA preempts claims for unjust enrichment when the allegations supporting the claim are the same as those supporting a plaintiff's MUTSA claim. *See Protege Biomedical, LLC*, 394 F. Supp. 3d at 941 (dismissing unjust enrichment claim where facts alleged to support the claim were the same as those alleged in support of misappropriation claim).

Second, ONB declares that Bell Bank has wrongfully obtained its goodwill, customer relationships, and business opportunities. (ECF 64 ¶ 164.) Aside from the general knowledge of the Employee Defendants that any employee would gain over years of work, ONB identified *no* benefit that it conferred upon Defendants. This is not sufficient pleading under *Twombly*. 550 U.S. at 545 (finding a claim lacking factual enhancement "stops short of the line between possibility and plausibility."). In the absence of other tortious conduct or breach of restrictive covenants, employee resignations and follow-up customer solicitation are the sort recognized by the law as *permitted* competition. *See Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 645 (Minn. Ct. App. 1985) ("[S]olicitation of former customers might seem unfair and unjust, but the employer has no

exclusive right to the continued patronage of customers, and employees have the right to better themselves in new businesses.").  A plaintiff cannot complain of a wrongful benefit simply because it lost the competition.

ONB asserted various other claims which could offer an adequate legal remedy if ONB had properly plead them. The fact ONB has not successfully plead—and thus cannot prevail on—its other claims does not render its legal remedies "unavailable."  *See Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854-55 (8th Cir. 2014) (holding plaintiff's inability to prevail on legal claim did not render legal remedy unavailable).  For these reasons, the Court should also dismiss ONB's unjust enrichment claim.

## CONCLUSION

ONB's First Amended Complaint contains an abundance of speculation and conclusions, but is severely lacking in facts.  Because each claim fails to satisfy the pleading standard of Fed. R. Civ. P. 12(b)(6), and for all the other reasons discussed herein, ONB's First Amended Complaint should be dismissed.

**SPENCER FANE LLP**

Dated: February 17, 2026

By: *s/ Heidi J. Bassett*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

*Attorneys for Employee Defendants*

**BRADFORD ANDRESEN NORRIE & CAMAROTTO**

Dated: February 17, 2026

By: *s/ Jonathan P. Norrie*
Jonathan P. Norrie (#347309)
3600 American Boulevard W., Suite 670
Bloomington, MN 55431
Telephone: (612) 474-1811
jnorrie@banclaw.com

*Attorneys for Bell Bank*