**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Old National Bank,<br><br>Plaintiff,<br><br>v.<br><br>Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,<br><br>Defendants. | Court File No. 0:25-CV-04636 (PJS/LIB)<br><br>**EMPLOYEE DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED** |

Defendants Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, and Daniel Yantes (collectively, the "Employee Defendants"), by their undersigned counsel, hereby answer Plaintiff Old National Bank's ("Plaintiff" or "ONB") First Amended Complaint ("Complaint") [ECF No. 64]. All allegations are hereby denied unless expressly admitted. An admission to a portion of an allegation does not constitute an admission, either express or implied, to any other portion of the allegation.

## THE NATURE OF THIS ACTION[1]

1. The Employee Defendants deny the allegations in Paragraph 1 of the First Amended Complaint.

[1] The Employee Defendants include the headings from Plaintiff's First Amended Complaint for ease of reference only. To the extent the headings are considered factual allegations, the Employee Defendants deny them.

2. As to Paragraph 2 of the First Amended Complaint, the Employee Defendants admit that most of them resigned or retired from ONB on December 8, 2025. Defendant McConkey retired from ONB as of December 7, 2025. The Employee Defendants specifically deny that their resignations and retirements forced ONB to "shutter" the Brainerd branch or to "shut down operations" in the Baxter branch lobby and deny the remaining allegations in Paragraph.

3. As to Paragraph 3 of the First Amended Complaint, the Employee Defendants admit that they coordinated the date(s) of their resignations and retirements but otherwise deny the allegations in Paragraph 3.

4. As to Paragraph 4 of the First Amended Complaint, the Employee Defendants deny that Defendants Ellingson, Campbell, or Bell Bank solicited, induced, or poached any of them. As to the subparts of Paragraph 4:

a. The Employee Defendants admit that all of them except Defendants Vold and Bernu attended a meeting at Bell Bank in Fargo, North Dakota on November 14, 2025, but deny that they discussed relationships or trade secrets "they could take from ONB and bring to Bell Bank."

b. The Employee Defendants admit that all of them except Defendant Yantes authorized Defendant Ellingson to provide their compensation information to Bell Bank. Defendant Yantes supplied the offer he received from another bank and authorized Defendant Ellingson to share it with Bell Bank. Defendants Ellingson and Campbell deny that they helped Bell Bank prepare employment offers or compensation packages to "lure" any of the Employee Defendants.

5. As to Paragraph 5 of the First Amended Complaint, the Employee Defendants admit that Bell Bank extended individual offers to them on or around

November 19, 2025, and that the Employee Defendants each accepted their own offer on or around November 20, 2025. The Employee Defendants otherwise deny the allegations in Paragraph 5.

6. The Employee Defendants deny the allegations in Paragraph 6 of the First Amended Complaint.

7. As to Paragraph 7 of the First Amended Complaint, the Employee Defendants admit that they resigned and/or and retired at approximately the same time. The Employee Defendants otherwise deny the allegations in Paragraph 7.

8. As to Paragraph 8 of the First Amended Complaint, Defendants Ellingson, McConkey, and Vold deny that ONB had *no* knowledge of their retirement and state that they each contacted ONB's Human Resources ("HR") department to discuss retirement. In late October 2025, Defendant Ellingson submitted an online request to HR to ask whether retirement was an option, but she received no response. Defendant Ellingson then called HR and learned that she was eligible to retire; she only needed to notify her manager, and she could retire the same day. Defendant McConkey asked whether he could accept employment at another company after he retired; the HR department told him he could. Defendant Vold asked whether two weeks' notice prior to her retirement was required; ONB's HR representative told her that notice was a courtesy, but not a requirement. The Employee Defendants admit that they did not give advance notice to ONB of the specific dates of their resignations and retirements, but deny that this was a "scheme" to keep ONB in the dark. The Employee Defendants wanted to ensure customers were well-served until they left, but they feared that when ONB learned they were going to Bell Bank, they would

be terminated immediately. The Employee Defendants otherwise deny the allegations in Paragraph 8.

9. As to Paragraph 9 of the First Amended Complaint, the Employee Defendants admit that they continued to perform their jobs at ONB, which required them to access computer systems, while they were employed by ONB. The Employee Defendants otherwise deny the allegations in Paragraph 9.

10. As to Paragraph 10 of the First Amended Complaint, the Employee Defendants' retirement notices and resignation letters speak for themselves. Defendant McConkey admits that he appropriately addressed his retirement notice to his direct supervisor, Defendant Campbell. Defendant Yantes similarly admits that he appropriately addressed his resignation letter to his direct supervisor, Defendant Campbell. The Employee Defendants otherwise deny the allegations in Paragraph 10.

11. As to Paragraph 11 of the First Amended Complaint, the Employee Defendants admit that video surveillance footage from ONB's Brainerd and Baxter branches shows most of the Employee Defendants entering ONB branch offices the morning of December 8, 2025. The Employee Defendants further admit that they removed their personal belongings, but deny the implication that ONB's HR Department or corporate security personnel would have inspected such belongings if they were present. The Employee Defendants deny the remaining allegations in Paragraph 11.

12. As to the allegations in Paragraph 12 of the First Amended Complaint, the Employee Defendants admit that they began working for Bell Bank on December 8, 2025. The Employee Defendants otherwise deny the allegations in Paragraph 12.

13. Paragraph 13 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

14. Paragraph 14 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations. Paragraph 14 also alleges a legal conclusion to which no response is required. To the extent a response is required, the Employee Defendants deny the allegation.

15. As to Paragraph 15 of the First Amended Complaint, the Employee Defendants admit that ONB sent them cease-and-desist letters, which speak for themselves. The Employee Defendants otherwise deny the allegations in Paragraph 15.

16. As to Paragraph 16 of the First Amended Complaint, the Employee Defendants admit that they did not respond to ONB's cease-and-desist letters, and further admit that ONB asserted the listed claims and requests for relief in this lawsuit. The Employee Defendants otherwise deny the allegations in Paragraph 16.

**THE PARTIES**

17. Upon information and belief, the Employee Defendants admit the allegations in Paragraph 17 of the First Amended Complaint.

18. As to Paragraph 18 of the First Amended Complaint, the Employee Defendants are without sufficient knowledge to admit or deny whether Bell Bank's "activities" are directed, controlled, or coordinated by high-level officers in Fargo, North

Dakota, so they deny this allegation. Upon information and belief, the Employee Defendants admit the remaining allegations in Paragraph 18.

19. As to Paragraph 19 of the First Amended Complaint, Defendant Ellingson denies that she was formerly employed as a Regional President of ONB or that she was responsible for nearly 200 employees at ONB. Defendant Ellingson admits the remaining allegations in Paragraph 19.[2]

20. As to Paragraph 20 of the First Amended Complaint, Defendant Campbell admits that her public-facing title at ONB was Market President, but internally, she was a Business Banking Relationship Manager IV, Vice President, at ONB's Brainerd branch. Defendant Campbell denies that she was "responsible for [ONB]'s operations in the Brainerd-Baxter market," as she did not have the ability to fill needed positions, approve credit, or solve systems-related problems for customers. Defendant Campbell further denies this allegation because it implies responsibility for all operations, whereas business banking operated wholly separate from the teller and retail aspects of the branch. Defendant Campbell admits the remaining allegations in Paragraph 20.

21. As to Paragraph 21 of the First Amended Complaint, Defendant Johnson denies ONB's characterization of her role. She admits being employed in Treasury

[2] Paragraphs in the First Amended Complaint that are directed at a single Employee Defendant are answered only by the named individual. These paragraphs do not contain allegations against the remaining Employee Defendants, so no response from them is required. To the extent ONB contends a response is required, the non-answering Employee Defendants concur and join in the response of the answering Employee Defendant.

Management at ONB, but her role was Treasury Management Consultant, not "executive." Defendant Johnson admits the remaining allegations in Paragraph 21.

22. As to Paragraph 22 of the First Amended Complaint, Defendant Vold denies ONB's characterization of her role at ONB but admits that she was a Commercial Banking Specialist and Penny Stender was her lead. Defendant Vold admits the remaining allegations in Paragraph 22.

23. As to Paragraph 23 of the First Amended Complaint, Defendant McConkey admits that his public-facing title at ONB was Vice President/Business Banker IV, but internally, he was a commercial banker at ONB's Brainerd branch. Defendant McConkey admits the remaining allegations in Paragraph 23.

24. As to Paragraph 24 of the First Amended Complaint, Defendant Yantes admits that his public-facing title at ONB was Vice President, Business Banker, but internally, he was a Business Banking Relationship Manager III, Vice President, at ONB's Brainerd branch. Defendant Yantes admits the remaining allegations in Paragraph 23.

25. As to Paragraph 25 of the First Amended Complaint, Defendant Adams admits that her internal title at ONB was Community Banking Market Manager, but her public-facing title was Community Banking Team Lead, as it had been at Bremer Bank. Defendant Adams admits the remaining allegations in Paragraph 25.

26. Defendant Bernu admits the allegations in Paragraph 26 of the First Amended Complaint.

## JURISDICTION AND VENUE

27. Paragraph 27 of the First Amended Complaint is a legal conclusion, and therefore no response is required. To the extent a response is required, the Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations and therefore deny them.

28. Paragraph 28 of the First Amended Complaint is a legal conclusion, and therefore no response is required. To the extent a response is required, the Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations and therefore deny them.

29. Paragraph 29 of the First Amended Complaint is a legal conclusion, and therefore no response is required. To the extent a response is required, the Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations and therefore deny them.

30. Paragraph 30 of the First Amended Complaint is a legal conclusion, and therefore no response is required. To the extent a response is required, the Employee Defendants admit that they live and work in Minnesota but expressly deny that they committed wrongful acts. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30 and therefore deny them.

31. Paragraph 31 of the First Amended Complaint is a legal conclusion, and therefore no response is required. To the extent a response is required, the Employee

Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations and therefore deny them.

## FACTUAL BACKGROUND

### A. ONB Invests in Confidential, Near-Permanent Customer Relationships

32. As to Paragraph 32 of the First Amended Complaint, on information and belief, the Employee Defendants deny that ONB made substantial investments in customer relationships in the Brainerd-Baxter market in Minnesota. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 and therefore deny them.

33. As to Paragraph 33 of the First Amended Complaint, on information and belief, the Employee Defendants deny that ONB successfully maintains all customer relationships in the Brainerd-Baxter market as many customers left ONB for reasons unrelated to the Employee Defendants. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33 and therefore deny them.

34. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 of the First Amended Complaint and therefore deny them.

35. As to Paragraph 35 of the First Amended Complaint, the Employee Defendants admit that they have deep working relationships (and often friendships) with customers, many of which pre-date ONB and even Bremer Bank. The Employee

Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 and therefore deny them.

36. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 36 and therefore deny them.

37. As to Paragraph 37 of the First Amended Complaint, the Employee Defendants deny that ONB treats all the information listed in Paragraph 37 as "highly confidential and proprietary," and the Employee Defendants deny that none of the information is known to others. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 37 and therefore deny them.

38. The Employee Defendants deny the allegations in Paragraph 38 of the First Amended Complaint.

39. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 and therefore deny them.

40. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 and therefore deny them.

41. As to Paragraph 41 of the First Amended Complaint, the Employee Defendants deny that the information ONB listed in Paragraph 37 is all "available only to ONB." The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 and therefore deny them.

42. As to Paragraph 42 of the First Amended Complaint, the Employee Defendants admit that they work at Bell Bank but deny the remaining allegations in Paragraph 42.

**B. ONB Protects the Secrecy of Its Confidential Information**

43. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 43 and therefore deny them.

44. As to Paragraph 44 of the First Amended Complaint, the Employee Defendants admit that they used unique credentials to log in to ONB systems, and that not every employee at ONB had the same access to the same systems and functions. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 44 and therefore deny them.

45. As to Paragraph 45 of the First Amended Complaint, the Employee Defendants admit that ONB has written policies and procedures, but deny that such written policies and procedures prohibit saving the phone numbers of customers and friends as ONB has alleged in this lawsuit. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 45 and therefore deny them.

46. As to Paragraph 46 of the First Amended Complaint, the Employee Defendants state that ONB's Team Member Handbook (including any acknowledgment) is a written document that speaks for itself and deny all allegations inconsistent with the written terms of ONB's Team Member Handbook. The Employee Defendants are without

information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 46 and therefore deny them.

47. As to Paragraph 47 of the First Amended Complaint, the Employee Defendants state that ONB's Acceptable Use Policy is a written document that speaks for itself and deny all allegations inconsistent with the written terms of ONB's Acceptable Use Policy.

48. As to Paragraph 48 of the First Amended Complaint, the Employee Defendants state that ONB's Code of Conduct (including any acknowledgment) is a written document that speaks for itself and deny all allegations inconsistent with the written terms of ONB's Code of Conduct. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48 and therefore deny them.

49. As to Paragraph 49 of the First Amended Complaint, the Employee Defendants deny that Bremer Bank prohibited saving individual names and phone numbers of customers and friends in employees' personal phones. The Employee Defendants otherwise state that Bremer's Code of Conduct is a written document that speaks for itself and deny all allegations inconsistent with the written terms of Bremer's Code of Conduct.

50. As to the allegations in Paragraph 50 of the First Amended Complaint, the Employee Defendants admit that ONB's computers are password protected, that branch locations require keycard access, and that the branches are equipped with security cameras. Upon information and belief, the Employee Defendants also admit that ONB retains its property when employees leave, which is why the Employee Defendants left ONB's

property at their respective branches. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 50 and therefore deny them.

51. The Employee Defendants deny the allegations in Paragraph 51 of the First Amended Complaint.

52. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52 and therefore deny them.

### C. The Former Employees Had Access to ONB's Confidential Information

53. As to Paragraph 53 of the First Amended Complaint, the Employee Defendants deny that ONB treated them with "trust" or that identities and cell phone numbers were "ONB's highly-sensitive nonpublic customer information." The Employee Defendants generally admit that they had access to various information stored in ONB's systems but deny that they owed ONB duties to protect all the information ONB now claims is confidential. As to the sub-parts of Paragraph 53, the Employee Defendants incorporate their responses to Paragraphs 19 to 26 by reference and deny any classification of their roles that deviates from those responses. The Employee Defendants deny the remaining allegations in Paragraph 53.

54. As to Paragraph 54 of the First Amended Complaint, the Employee Defendants admit that they had access to various ONB systems but deny that they all had the same access to the same systems. The Employee Defendants further admit that they

managed client relationships, collaborated across departments, and delivered financial services, but deny any inference that they did not maintain customer confidentiality.

55. As to Paragraph 55 of the First Amended Complaint, and upon information and belief, the Employee Defendants admit that some of them saw team performance data and incentive structures. Without a description or identification of terms, documents, or concepts ONB alleges as "strategic business plans, marketing initiatives, and potential expansion opportunities," the Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 55 and therefore deny them.

56. As to Paragraph 56 of the First Amended Complaint, Defendants Ellingson and Campbell admit that they decided to explore the possibility that the Employee Defendants could stay together and move to Bell Bank, rather than scatter to various banks, but deny that their positions at ONB prohibited them from doing so.

**D. The Former Employees Coordinate a Mass Exodus to Bell Bank**

57. As to Paragraph 57 of the First Amended Complaint, Defendant Ellingson admits that she coordinated a meeting for the Employee Defendants to visit Bell Bank but denies any inference that coordinating a meeting was improper.

58. As to Paragraph 58 of the First Amended Complaint, the Employee Defendants admit that Ellingson, Adams, Campbell, Johnson, McConkey, and Yantes attended a meeting with Bell Bank in Fargo, North Dakota on Friday, November 14, 2025, and that Johnson and Yantes took paid time off to attend the meeting. The Employee Defendants deny the remaining allegations in Paragraph 58.

59. As to Paragraph 59 of the First Amended Complaint, the Employee Defendants admit that except for Defendant Yantes, they authorized Ellingson to send their compensation information to Bell Bank. Defendant Yantes specifically denies sub-part "e" to Paragraph 59, as he shared compensation information derived from a pending offer extended to him by another bank. The remaining sub-parts of Paragraph 59 are ONB's interpretation of the Employee Defendants' sworn declarations, which speak for themselves, so the Employee Defendants deny all allegations inconsistent with their written testimony.

60. The Employee Defendants deny the allegations in Paragraph 60 of the First Amended Complaint.

61. As to Paragraph 61 of the First Amended Complaint, the Employee Defendants admit that they all received offers from Bell Bank on or around November 19, 2025, and that they all accepted the offers over the following day or two. The Employee Defendants otherwise deny the allegations in Paragraph 61.

62. As to Paragraph 62 of the First Amended Complaint, the Employee Defendants admit that they accepted Bell Bank's offers and agreed that all but McConkey (who retired from ONB as of December 7, 2025) would resign or retire from ONB on December 8, 2025. The Employee Defendants also admit that they did not give two weeks' notice to ONB but deny that notice was "customary" in banking when an employee was going to a competitor bank.

63. As to Paragraph 63 of the First Amended Complaint, the Employee Defendants admit they agreed to send resignation or retirement letters, that a few of them

shared a template, and that some letters may contain typographical errors. Defendants McConkey and Yantes further admit they sent their letters to Defendant Campbell, as they directly reported to her. The Employee Defendants deny that their departures were planned "to maximize operational disruption and minimize ONB's opportunity to prepare a response."

64. The Employee Defendants deny the allegations in Paragraph 64 of the First Amended Complaint.

65. The Employee Defendants deny the allegations in Paragraph 65 of the First Amended Complaint.

**E. The Simultaneous Resignations Negatively Impact ONB's Business**

66. The Employee Defendants deny the allegations in Paragraph 66 of the First Amended Complaint.

67. The Employee Defendants deny the allegations in Paragraph 67 of the First Amended Complaint.

68. As to Paragraph 68 of the First Amended Complaint, the Employee Defendants admit that they applied at Bell Bank and planned their departures while working at ONB. The Employee Defendants further admit that they communicated with one another about their plans but deny any inference that their decision to continue working together, rather than scattering to various other banks, was improper. The Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 68 and therefore deny them.

69. The Employee Defendants deny the allegations in Paragraph 69 of the First Amended Complaint.

70. The Employee Defendants deny the allegations in Paragraph 70 of the First Amended Complaint.

**F. The Former Employees Steal ONB's Trade Secrets For the Benefit of Bell Bank**

71. As to Paragraph 71 of the First Amended Complaint, the Employee Defendants admit that after they began communicating with Bell Bank, they continued to perform their jobs at ONB until they retired or resigned but deny that accessing systems and documents was outside the scope of their jobs. The Employee Defendants further state that ONB's system logs and materials are written documents that speak for themselves and deny all allegations inconsistent with such system logs and materials.

72. The Employee Defendants deny the allegations in Paragraph 72 of the First Amended Complaint.

73. As to Paragraph 73 of the First Amended Complaint, the Employee Defendants admit they continued to perform their jobs at ONB until they retired or resigned but deny that printing documents was outside the scope of their jobs. The Employee Defendants further state that ONB's logs are documents that speak for themselves and deny all allegations inconsistent with such documents.

74. As to Paragraph 74 of the First Amended Complaint, Defendant Campbell states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. As to the subparts of Paragraph 74:

a. ONB has not identified the spreadsheet described in this allegation, but upon information and belief, Defendant Campbell admits that she printed two copies of her pending items, leaving one in her desk at ONB and giving the other to Defendant Vold to leave in her own desk at ONB. Defendant Campbell denies that she took a copy when she left.

b. Defendant Campbell is without sufficient information to form a belief as to the truth or falsity of the allegation that she printed a "Consent and Joinder of Mortgagee" and therefore denies this allegation. Defendant Campbell further denies that she took any copies of a "Consent and Joinder of Mortgagee" when she left.

c. ONB has not identified the customer in this allegation, but upon information and belief, Defendant Campbell admits that she printed the documents, signed them, and the customer picked them up from ONB. Defendant Campbell denies that she took the documents when she left.

d. ONB has not identified the customer in this allegation, but upon information and belief, Defendant Campbell admits that she printed the documents while working on a task for a customer and then placed the documents in the shred bin. Defendant Campbell denies that she took the documents when she left.

e. ONB has not identified the customer in this allegation, but upon information and belief, Defendant Campbell admits that she printed the documents while working on a task for a customer and then placed the documents in the shred bin. Defendant Campbell denies that she took the documents when she left.

75. Defendant Campbell is without sufficient information to form a belief as to the truth or falsity of the allegation in Paragraph 75 of the First Amended Complaint that she printed a "call list spreadsheet" and therefore denies the allegation. Defendant Campbell denies that she provided any of ONB's documents or information to Bell Bank.

76. As to Paragraph 76 of the First Amended Complaint, Defendant McConkey states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. As to the subparts of Paragraph 76:

a. Defendant McConkey denies that "A.H." was an ONB customer, but admits that he printed an outdated proposal to reference verbiage in the document while assisting an underwriter at ONB who had a question about a pending deal, then shredded the document. Defendant McConkey denies taking the document when he left.

b. ONB has not identified the customer in this allegation, so Defendant McConkey is without sufficient information to form a belief as to the truth or falsity of the allegation that he accessed the referenced documents. Defendant McConkey denies that he took any of ONB's documents when he left.

77. As to Paragraph 77 of the First Amended Complaint, Defendant Bernu states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. As to the subparts of Paragraph 77:

a. ONB has not identified the customer in this allegation, but upon information and belief, Defendant Bernu admits that she printed the documents and mailed them to the customer. Defendant Bernu denies that she took the documents when she left.

b. ONB has not identified the customers in this allegation, so Defendant Bernu is without sufficient information to form a belief as to the truth or falsity of the allegation that she printed the referenced documents and therefore denies the allegation. Defendant Bernu denies that she took any of ONB's documents when she left.

78. As to Paragraph 78 of the First Amended Complaint, Defendant Ellingson states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. Defendant Ellingson admits that she accessed the CLT project finance spreadsheets during the week before her retirement, because she continued to perform her job until her last day and ONB assigned the CLT project to her. Ellingson denies that she copied any information from the spreadsheet.

79. As to Paragraph 79 of the First Amended Complaint, Defendant Vold states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. As to the subparts of Paragraph 79:

a. ONB has not identified the customer in this allegation, so Defendant Vold is without sufficient information to form a belief as to the truth or falsity of the allegation that she printed the referenced document and therefore denies the allegation. Defendant Vold denies that she took any of ONB's documents when she left.

b. Defendant Vold admits that she printed emails to include in a folder for her ONB team lead in order to make it easier for ONB employees to follow up with customers, but she is otherwise without sufficient information to form a belief as to the truth or falsity of the allegation and therefore denies the allegation. Defendant Vold denies that she took any of ONB's documents when she left.

c. ONB has not identified the customers in this allegation, so Defendant Vold is without sufficient information to form a belief as to the truth or falsity of the allegation that she printed the referenced documents and therefore denies the allegation. Defendant Vold denies that she took any of ONB's documents when she left.

d. Defendant Vold admits that she printed the "HOW TO GUIDE RE LEASES" to leave in the folder for her ONB team leader but denies that she took any of ONB's documents when she left.

e. Defendant Vold is without sufficient information to form a belief as to the truth or falsity of the allegation that she printed the referenced documents and therefore denies the allegation. Defendant Vold denies that she took any of ONB's documents when she left.

80. As to Paragraph 80 of the First Amended Complaint, Defendant Yantes states that ONB's system records speak for themselves and denies all allegations inconsistent with those records. Defendant Yantes admits that he accessed the spreadsheet while he was working on renewals for ONB customers, because he continued to perform his job until he

resigned from ONB. Defendant Yantes denies that he copied any information from the spreadsheet by hand, by capturing an image on his personal cell phone, or otherwise.

81. The Employee Defendants deny the allegations in Paragraph 81 of the First Amended Complaint.

82. As to Paragraph 82 of the First Amended Complaint, the Employee Defendants deny that they concealed their accepted offers from Bell Bank. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 82 and therefore deny them.

83. The Employee Defendants deny the allegations in Paragraph 83 of the First Amended Complaint.

**G. The Former Employees Admit to Retaining ONB's Confidential Information**

84. Paragraph 84 of the First Amended Complaint presents ONB's interpretation of the Employee Defendants' sworn declarations which speak for themselves, so the Employee Defendants deny all allegations inconsistent with their written testimony. The Employee Defendants deny the remaining allegations in Paragraph 84 and affirmatively deny that they engaged in any unlawful conduct.

85. The Employee Defendants deny the allegations in Paragraph 85 of the First Amended Complaint.

86. The Employee Defendants deny the allegations in Paragraph 86 of the First Amended Complaint.

**H. Defendants Target ONB's Customers**

87. The Employee Defendants deny the allegations in Paragraph 87 of the First Amended Complaint.

88. As to Paragraph 88 of the First Amended Complaint, Defendant Campbell admits that she called Customer C.L. using a publicly-available phone number, and that Customer C.L. is located in Aitkin, Minnesota, but Campbell denies that she solicited C.L. Defendant Campbell is without information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 88 and therefore denies them.

89. Defendant Campbell denies the allegations in Paragraph 89 of the First Amended Complaint.

90. The Employee Defendants deny the allegations in Paragraph 90 of the First Amended Complaint. Furthermore, the subparts of Paragraph 90 present ONB's interpretation of the Employee Defendants' sworn declarations which speak for themselves, so the Employee Defendants deny all allegations inconsistent with their written testimony. The Employee Defendants deny that they engaged in any unlawful conduct.

91. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 91 of the First Amended Complaint and therefore deny them.

92. The Employee Defendants deny the allegations in Paragraph 92 of the First Amended Complaint.

93. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegation that "ten of the accounts listed above

represent more than forty percent (40%) of ONB's commercial loan business in the Brainerd-Baxter Market" and therefore deny that allegation. The Employee Defendants deny the remaining allegations in Paragraph 93 of the First Amended Complaint.

94. Paragraph 94 of the First Amended Complaint alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations. The Employee Defendants further deny that they used or disclosed information from ONB for competitive purposes.

95. As to Paragraph 95 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 95 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

96. As to Paragraph 96 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 96 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

97. The Employee Defendants deny the allegations in Paragraph 97 of the First Amended Complaint. Paragraph 97 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

### I. Bell Bank's Scheme to Cripple ONB from Within

98. The Employee Defendants deny the allegations in Paragraph 98 of the First Amended Complaint.

99. The Employee Defendants deny the allegations in Paragraph 99 of the First Amended Complaint.

100. The Employee Defendants deny the allegations in Paragraph 100 of the First Amended Complaint.

101. The Employee Defendants deny the allegations in Paragraph 101 of the First Amended Complaint.

102. The Employee Defendants deny the allegations in Paragraph 102 of the First Amended Complaint.

### J. Defendants' Scheme Harms ONB

103. As to Paragraph 103 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations and therefore deny them. Paragraph 103 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

104. As to Paragraph 104 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 104 and therefore

deny them. Paragraph 104 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

105. As to Paragraph 105 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 105 and therefore deny them.

106. As to Paragraph 106 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 106 and therefore deny them. Paragraph 106 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

107. As to Paragraph 107 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct. Paragraph 106 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

**COUNT I**
**Misappropriation**
(*Against All Defendants*)

108. The Employee Defendants reallege their responses to the allegations set forth in Paragraphs 1-107 as though fully set forth herein.

109. Paragraph 109 of the First Amended Complaint alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

110. Paragraph 110 of the First Amended Complaint alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

111. Paragraph 111 of the First Amended Complaint alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

112. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 112 of the First Amended Complaint and therefore deny them.

113. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113 of the First Amended Complaint and therefore deny them. Paragraph 113 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

114. The Employee Defendants are without information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 114 of the First Amended Complaint and therefore deny them. Paragraph 114 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

115. The Employee Defendants deny the allegations in Paragraph 115 of the First Amended Complaint. Paragraph 115 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

116. The Employee Defendants deny the allegations in Paragraph 116 of the First Amended Complaint. Paragraph 116 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

117. The Employee Defendants deny the allegations in Paragraph 117 of the First Amended Complaint. Paragraph 117 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

118. The Employee Defendants deny the allegations against them in Paragraph 118 of the First Amended Complaint. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 118 and therefore deny them. Paragraph 118 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

119. As to Paragraph 119 of the First Amended Complaint, the Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the allegations against Bell Bank in Paragraph 119 and therefore deny them. Paragraph 119

also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

120. As to Paragraph 120 of the First Amended Complaint, the Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the allegations against Bell Bank in Paragraph 120 and therefore deny them. Paragraph 120 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

121. As to Paragraph 121 of the First Amended Complaint, the Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the allegations against Bell Bank in Paragraph 121 and therefore deny them. Paragraph 121 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

122. As to Paragraph 122 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 122 and therefore deny them. Paragraph 122 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

123. As to Paragraph 123 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 123 and therefore

deny them. Paragraph 123 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

124. As to Paragraph 124 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 124 and therefore deny them. Paragraph 124 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

**COUNT II**
**Breach of Fiduciary Duty**
(*Against the Former Employees*)

125. The Employee Defendants reallege their responses to the allegations set forth in Paragraphs 1-107 as though fully set forth herein.

126. As to Paragraph 126 of the First Amended Complaint, the Employee Defendants admit that they were employees of ONB but otherwise deny the allegations in Paragraph 126.

127. Paragraph 127 alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

128. As to the allegations in Paragraph 128 of the First Amended Complaint, the Employee Defendants admit that they held various roles at ONB and had access to various customer and employee information in the course of performing their duties, some of which involved serving customers. The Employee Defendants deny the implication in Paragraph 128 that they all held roles at the same level or that they had access to the same information,

and they also deny that they engaged in any unlawful conduct. As to ONB's allegation that they were "entrusted," the Employee Defendants are without sufficient information to form a belief as to the truth or falsity of this allegation and therefore deny it.

129. As to Paragraph 129 of the First Amended Complaint, the Employee Defendants admit that they decided to leave together and they did not provide advance notice to ONB regarding their departures from ONB. The Employee Defendants deny the remaining allegations in Paragraph 129.

130. The Employee Defendants deny the allegations in Paragraph 130 of the First Amended Complaint.

131. The Employee Defendants deny the allegations in Paragraph 131 of the First Amended Complaint. Paragraph 131 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

132. As to Paragraph 132 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 132 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

133. As to Paragraph 133 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 133 also alleges legal conclusions to which no response is

required. To the extent a response is required, the Employee Defendants deny the allegations.

**COUNT III**
**Aiding and Abetting / Civil Conspiracy**
(*Against All Defendants*)

134. The Employee Defendants reallege their responses to the allegations set forth in Paragraphs 1–107 and 125–133 as though fully set forth herein.

135. Paragraph 135 alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

136. Paragraph 136 alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

137. The Employee Defendants deny the allegations in Paragraph 137 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 137 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

138. The Employee Defendants deny the allegations in Paragraph 138 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 138 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

139. The Employee Defendants deny the allegations in Paragraph 139 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 139 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

140. Paragraph 140 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

141. The Employee Defendants deny the allegations against them in Paragraph 141 of the First Amended Complaint. Paragraph 141 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

142. Paragraph 142 alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

143. The Employee Defendants deny the allegations against them in Paragraph 143 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 143 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

144. The Employee Defendants deny the allegations against them in Paragraph 144 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 144 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

145. The Employee Defendants deny the allegations against them in Paragraph 145 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 145 also alleges legal conclusions to which no response is

required. To the extent a response is required, the Employee Defendants deny the allegations.

146. The Employee Defendants deny the allegations against them in Paragraph 146 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct. Paragraph 146 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

147. As to Paragraph 147 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 147 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

148. As to Paragraph 148 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 148 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

149. As to Paragraph 149 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 149 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

150. As to Paragraph 150 of the First Amended Complaint, the Employee Defendants affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 150 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

151. The Employee Defendants deny the allegations against them in Paragraph 151 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 151 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

**COUNT IV**
**Tortious Interference with Existing Business Relationship and Expectancies**
(*Against All Defendants*)

152. The Employee Defendants reallege their responses to the allegations set forth in Paragraphs 1-107, 125–133, and 135–151 as though fully set forth herein.

153. The Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 153 and therefore deny them.

154. As to Paragraph 154 of the First Amended Complaint, the Employee Defendants admit that ONB has contracts with customers but are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 154 and therefore deny them.

155. As to Paragraph 155 of the First Amended Complaint, the Employee Defendants admit that some of them managed or serviced ONB customers while employed

by ONB. The Employee Defendants are otherwise without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 155 and therefore deny them.

156. The Employee Defendants deny the allegations in Paragraph 156 of the First Amended Complaint.

157. The Employee Defendants deny the allegations in Paragraph 157 of the First Amended Complaint.

158. The Employee Defendants are without sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 158 of the First Amended Complaint and therefore deny them.

159. As to Paragraph 159 of the First Amended Complaint, the Employee Defendants are without sufficient information to form a belief as to the truth or falsity of their alleged knowledge of "prospective business opportunities" and therefore deny such allegations. The Employee Defendants deny the remaining allegations in Paragraph 159.

160. The Employee Defendants deny the allegations in Paragraph 160 of the First Amended Complaint.

161. The Employee Defendants deny the allegations in Paragraph 161 of the First Amended Complaint and affirmatively deny that they engaged in any unlawful conduct or caused any damages to ONB. Paragraph 161 also alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

**COUNT V**
**Unjust Enrichment**
(*Against Bell Bank*)

162. The Employee Defendants reallege their responses to the allegations set forth in Paragraphs 1-107, 125–133, 135 –151, and 153–161 as though fully set forth herein.

163. Paragraph 163 of the First Amended Complaint alleges legal conclusions to which no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

164. Paragraph 164 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

165. Paragraph 165 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

166. Paragraph 166 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

167. Paragraph 167 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

168. Paragraph 168 of the First Amended Complaint contains no allegations against the Employee Defendants, and therefore no response is required. To the extent a response is required, the Employee Defendants deny the allegations.

## **AFFIRMATIVE DEFENSES**

1. The First Amended Complaint fails to state a claim upon which relief may be granted.

2. ONB's claim for misappropriation of trade secrets is barred, in whole or in part, because the Employee Defendants independently developed personal and professional relationships with customers. The names and phone numbers of these customers are not ONB's trade secrets or confidential information because the Employee Defendants did not learn this information through a confidential relationship with ONB, and ONB did not give notice of its belief that names and phone numbers were to be kept secret.

3. ONB's claim for breaches of the fiduciary duty of loyalty is barred, in whole or in part, because the Employee Defendants were employees at will, with no restrictive covenants, who each decided to leave ONB. The duty of loyalty did not govern *where* they went, and the law did not prohibit them from deciding to go to Bell Bank instead of other new employers.

4. ONB's claims are barred, in whole or in part, because ONB failed to mitigate its damages, if any.

5. ONB's claim is barred, in whole or in part, because ONB's alleged damages were not caused by the conduct alleged in the First Amended Complaint.

6. If ONB suffered any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the conduct, acts, omissions, negligence, and or misconduct of ONB, and not by the Employee Defendants.

7. If ONB suffered any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by the conduct, acts, omissions, negligence, and/ or misconduct of others, and not by the Employee Defendants.

**RESERVATION OF RIGHTS**

The Employee Defendants reserve the right to amend this Answer and rely upon any additional defenses that may be revealed in discovery. To preserve the defenses pending further discovery, the Employee Defendants incorporate by reference all affirmative defenses required to be asserted under Rule 8(c) of the Federal Rules of Civil Procedure.

WHEREFORE, the Employee Defendants pray for relief as follows:

1. Dismissal of Plaintiff's First Amended Complaint with prejudice and without costs, fees, or disbursements to Plaintiff;
2. Awarding the Employee Defendants their costs, fees, and disbursements incurred in defending this action; and
3. For such other and further relief as the Court may deem just and equitable in favor of the Employee Defendants.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Employee Defendants hereby demand a trial by jury on all issues so triable.

**ELLINGSON COUNTERCLAIMS AGAINST ONB**

Counterclaim-Plaintiff Kimberly Ellingson, for her Counterclaims against Counterclaim-Defendant ONB, states and alleges as follows:

1. Ellingson is an individual person residing in Pequot Lakes, Minnesota, and is a citizen of Minnesota.

2. ONB is a nationally-chartered bank that is headquartered in Evansville, Indiana and Chicago, Illinois.

3. Ellingson worked for Bremer Bank ("Bremer") for over 25 years before ONB acquired Bremer in May 2025.

4. Ellingson began her tenure at Bremer as a Vice President of Business Banking. She earned several promotions during her Bremer tenure, holding the additional positions of Senior Vice President and Region President of the Brainerd Charter over time.

5. Ellingson's final position with Bremer was as the Director of Commercial and Agricultural Loan Delivery.

6. At Bremer, Ellingson was eligible for certain forms of incentive pay, including a short-term annual incentive ("STI") and a long-term three-year incentive ("LTI").

7. Prior to ONB's acquisition of Bremer, Ellingson's STI plan target was 35.00% of her annual earnings, and her LTI plan target was 30.00% of her annual earnings.

8. Following ONB's acquisition of Bremer, Ellingson's position was as the Credit Systems Director, Executive Vice President.

9. Unlike Bremer, ONB combines short-term incentive and long-term incentive targets under a single "corporate incentive plan" with an overall corporate incentive target of 65.00% of annual earnings.

10. ONB represented that upon ONB's acquisition of Bremer, the "2025 plan year [would] combine[] former Bremer STI and LTI targets into one overall ONB incentive target."

11. ONB further represented that the 2025 corporate incentive would "be delivered as a cash/stock split," with the 2025 cash payout being made to former Bremer employee-participants in March 2026 and the 2025 restricted stock award being issued to former Bremer employee-participants on April 1, 2026, to be vested over three years.

12. As part of ONB's acquisition of Bremer, Ellingson was impacted by this merging of the Bremer incentive plans' structure, converting to the ONB corporate incentive plan effective May 1, 2025.

13. ONB's corporate incentive plan provides that participating employees who retire from ONB on or after October 1 of the plan year remain eligible for the annual corporate incentive, so long as they have reached age 55 and have five consecutive years of service immediately preceding retirement (hereinafter, "Retirement Criteria").

14. Participating employees such as Ellingson had their Bremer years of service count toward the five-year consecutive year of service requirement.

15. Ellingson met the Retirement Criteria to remain eligible for participation in the ONB corporate incentive plan in 2025 because she worked over five years

consecutively for Bremer and ONB combined, she had reached age 55, and she did not retire from ONB until after October 1, 2025.

16. In 2025, ONB represented to multiple former Bremer employees that they would still be eligible for retirement benefits, including payment of the 2025 corporate incentive, if they met the Retirement Criteria, even if they chose to continue working for a different employer after retiring from ONB.

17. Ellingson retired from ONB on December 8, 2025.

18. After her retirement from ONB, an ONB human resources representative confirmed to Ellingson that she had earned and would receive her 2025 corporate incentive pay in the first quarter of 2026.

19. Because the performance requirements were met for 2025, Ellingson earned 2025 corporate incentive pay.

20. Under ONB's corporate incentive plan, Ellingson should have received 70% of her 2025 corporate incentive pay in the form of a cash payment in March 2026.

21. Under ONB's corporate incentive plan, Ellingson should have received the remaining 30% of her 2025 corporate incentive pay in the form of a restricted stock award issued to her in April 2026.

22. ONB paid 2025 corporate incentive pay to other former Bremer employees who met the Retirement Criteria, including two of the other Employee Defendants in this action.

23. To date, ONB has refused to pay the 2025 corporate incentive pay earned by Ellingson, which is now overdue.

24. Ellingson has made repeated requests to ONB Human Resources representatives, including verbally by phone, by written email communication, and by letter sent by certified mail, requesting that ONB pay both the cash incentive payment that was due to Ellingson in March 2026 and the restricted stock award incentive payment due to her in April 2026.

25. ONB continues to ignore Ellingson's repeated request to pay the 2025 corporate incentive pay that Ellingson earned.

26. ONB's refusal to pay Ellingson her earned 2025 corporate incentive pay compensation is without justification.

27. Ellingson again requested payment of her earned 2025 corporate incentive pay compensation in a letter sent by email and certified mail and received by ONB on May 5, 2026.

28. In the same letter, Ellingson requested a copy of her complete personnel record from ONB pursuant to Minn. Stat. § 181.961.

29. Upon information and belief, ONB maintains Ellingson's personnel record in the State of Minnesota.

30. More than seven working days have passed since ONB's receipt of Ellingson's written request for a copy of her personnel record, and ONB has still not provided it.

**COUNTERCLAIM COUNT I**
**Failure to Pay Earned Compensation**
**Minn. Stat. § 181.171**

31. Ellingson realleges and incorporates by reference the allegations set forth in Counterclaim Paragraphs 1–29 above as if fully set forth herein.

32. Minnesota law requires every employer to pay all wages, including salary, earnings, and gratuities earned by the employee at least once every 31 days. Minn. Stat. § 181.101(a).

33. Minnesota law provides a substantive right for employees to the payment of wages, including salary, earnings and gratuities, that is *in addition to* the right to be paid at certain times. *Id.*

34. Minnesota law also requires an employer to promptly pay the wages and commissions that have been earned but remain unpaid to an employee that voluntarily separates their employment. Minn. Stat. § 181.14, subd. 1(a).

35. Wages that are not paid within the required period to a separated employee become immediately payable upon the demand of the employee. *Id.*, subd. 2.

36. Employees whose rights are violated under Minn. Stat. § 181.101 and/or 181.14 may bring a civil action seeking redress directly to the district court. Minn. Stat. § 181.171, subd. 1.

37. An employer who is found to have violated either or both above sections of Minn. Stat. Ch. 181 is liable to the aggrieved employee for civil penalties and damages as provided in the section(s) violated. *Id.*

38. Additionally, employers found to have violated either or both above sections of Minn. Stat. Ch. 181 shall be liable to the aggrieved employee for all compensatory damages and other appropriate relief, including but not limited to injunctive relief. *Id.*

39. In any action such as this one brought under Minn. Stat. § 181.171, subd. 1, the Court "shall order" the employer found to have committed a violation to pay the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees. *Id.*, subd. 3.

40. Ellingson earned 2025 incentive pay under the ONB corporate incentive plan.

41. The amount of 2025 incentive pay earned and due to Ellingson from ONB exceeds $75,000.

42. ONB violated Minn. Stat. Ch. 181 by refusing to pay the cash portion of Ellingson's 2025 incentive pay to Ellingson in March 2026.

43. ONB violated Minn. Stat. Ch. 181 by refusing to issue the restricted stock award portion of Ellingson's 2025 incentive pay to Ellingson in April 2026.

44. Ellingson has made repeated demands to ONB to pay the earned 2025 incentive pay still due to her.

45. ONB is liable to Ellingson for the 2025 incentive pay award earned and due to her.

46. Additionally, ONB is liable to Ellingson for the statutory penalties available under Minn. Stat. Ch. 181 as a result of ONB's failure to pay Ellingson her earned 2025 incentive pay.

47. ONB is also liable to Ellingson for all interest, reasonable costs, disbursements, witness fees, and attorney fees incurred by Ellingson as a result of ONB's violations of Minn. Stat. Ch. 181.

48. Upon information and belief, ONB does not intend to pay the earned compensation that will become due to Ellingson in future years based on the 2025 plan year beginning in 2027.

49. Accordingly, Ellingson is also entitled to injunctive relief in the form of a court order requiring ONB to pay the additional 2025 incentive pay earned by Ellingson as it becomes due beginning in 2027.

**COUNTERCLAIM COUNT II**
**Failure to Furnish Complete Personnel Record**
**Minn. Stat. § 181.965**

50. Minnesota law requires an employer to provide a copy of a former employee's complete personnel record to the former employee within seven working days after receipt of a request from that employee for their personnel record when the personnel record is located in Minnesota. Minn. Stat. §§ 181.960, subd. 4 and 181.961, subd. 2.

51. If an employer violates Minn. Stat. § 181.961, the employee may bring a civil action to compel compliance, as well as for their actual damages and costs.

52. ONB received Ellingson's written request for her complete personnel record on May 5, 2026.

53. ONB failed to provide Ellingson with a copy of her complete personnel record within seven working days even though ONB maintains her personnel record in Minnesota.

54. Ellingson is entitled to a court order compelling ONB's compliance with Minn. Stat. § 181.961.

55. Additionally, Ellingson is entitled to recover the actual damages and costs incurred by her as a result of ONB's failure to comply with Minn. Stat. § 181.961.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Kimberly Ellingson respectfully requests that the Court enter judgment in her favor and against Plaintiff and Counterclaim Defendant Old National Bank and grant the following relief:

A. An injunction:

   i. Ordering ONB to promptly pay the remaining 2025 incentive pay compensation earned by Ellingson as it becomes due beginning in March 2027; and

   ii. Ordering ONB to promptly provide Ellingson's complete personnel record, as defined by Minn. Stat. § 181.961, subd. 4;

B. Compensatory damages in an amount to be proven at trial (but in excess of $75,000) for the earned incentive pay due to Ellingson in the form of an overdue cash payment from March 2026 and a restricted stock award from April 2026;

C. Statutory penalties as permitted by law;

D. Any other exemplary damages as permitted by law;

E. Prejudgment and post-judgment interest as required by law;

F. An award of attorneys' fees, witness fees, and costs incurred in securing ONB's compliance with its obligations arising under Minn. Stat. Ch. 181 and as otherwise permitted or required by applicable law; and

G. Such other and further relief as the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ellingson hereby demands a trial by jury on all issues so triable.

Dated: May 18, 2026

**SPENCER FANE LLP**

By: */s/ Heidi J. Bassett*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

***Attorneys for Employee Defendants***