**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

OLD NATIONAL BANK,

Plaintiff,

v.

SARAH ADAMS, KASEY BERNU, YVETTE CAMPBELL, KIMBERLY ELLINGSON, RACHAL JOHNSON, MICHAEL MCCONKEY, SHARON VOLD, DANIEL YANTES, and BELL BANK,

Defendants.

KIMBERLY ELLINGSON,

Counter-Plaintiff,

v.

OLD NATIONAL BANK,

Counter-Defendant.

Case No. 0:25-cv-04636 (PJS/LIB)

**ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIMS OF KIMBERLY ELLINGSON**

Plaintiff/Counter-Defendant, Old National Bank ("ONB" or "Old National"), for its Answer to the Counterclaim filed by Defendant/Counter-Plaintiff Kimberly Ellingson ("Ellingson") (Dkt. No. 94), states as follows:

1. Ellingson is an individual person residing in Pequot Lakes, Minnesota, and is a citizen of Minnesota.

**ANSWER:** ONB, on information and belief, admits the allegations in this paragraph.

2. ONB is a nationally-chartered bank that is headquartered in Evansville, Indiana and Chicago, Illinois.

**ANSWER:** Admitted.

3. Ellingson worked for Bremer Bank ("Bremer") for over 25 years before ONB acquired Bremer in May 2025.

**ANSWER:** Admitted.

4. Ellingson began her tenure at Bremer as a Vice President of Business Banking. She earned several promotions during her Bremer tenure, holding the additional positions of Senior Vice President and Region President of the Brainerd Charter over time.

**ANSWER:** ONB admits, on information and belief, that Ellingson held various positions at Bremer, including Vice President of Business Banking, Senior Vice President, and Region President. ONB denies any remaining allegations to the extent they characterize the legal effect of those positions or imply entitlement to any incentive compensation.

5. Ellingson's final position with Bremer was as the Director of Commercial and Agricultural Loan Delivery.

**ANSWER:** ONB, on information and belief, admits the allegations in this paragraph.

6. At Bremer, Ellingson was eligible for certain forms of incentive pay, including a short-term annual incentive ("STI") and a long-term three-year incentive ("LTI").

**ANSWER:** ONB admits that, while employed by Bremer, Ellingson was eligible to participate in certain incentive plans, subject to the terms, conditions, limitations, and discretion applicable to those plans. ONB denies any allegation that Ellingson was guaranteed any incentive compensation, and further denies that she was entitled to receive,

or had earned, any unpaid incentive pay or other compensation that she may claim is due and owing to her from ONB.

7. Prior to ONB's acquisition of Bremer Ellingson's STI plan target was 35.00% of her annual earnings, and her LTI plan target was 30.00% of her annual earnings.

**ANSWER:** ONB admits that Ellingson's target incentive opportunity before ONB's acquisition of Bremer included the percentages alleged, subject to the terms, conditions, limitations, and discretion applicable to the relevant plans. ONB denies any allegation that a target incentive opportunity constituted earned, vested, or guaranteed compensation, further denies any allegation that Ellingson was guaranteed any incentive compensation, and further denies any incentive pay or other compensation is due and owing to her.

8. Following ONB's acquisition of Bremer, Ellingson's position was as the Credit Systems Director, Executive Vice President.

**ANSWER:** Admitted.

9. Unlike Bremer, ONB combines short-term incentive and long-term incentive targets under a single "corporate incentive plan" with an overall corporate incentive target of 65.00% of annual earnings.

**ANSWER:** ONB admits only that, for certain former Bremer employees including Ellingson, the 2025 plan year combined former Bremer STI and LTI targets into one overall ONB incentive target. ONB denies any allegation that an incentive target created a guaranteed, earned, vested, or nondiscretionary award, and denies any allegation inconsistent with the written terms of the 2025 Old National Corporate Incentive Plan.

10. ONB represented that upon ONB's acquisition of Bremer, the "2025 plan year [would] combine[] former Bremer STI and LTI targets into one overall ONB incentive target."

**ANSWER:** ONB admits that this quoted language (along with other language and context, omitted by Ellingson) appeared in written communications concerning the 2025 Corporate Incentive Plan. ONB denies that the quoted language constitutes an accurate or complete representation of those communications, denies any allegation that such language created a guaranteed, earned, vested, or nondiscretionary award, and denies any allegation inconsistent with the written plan documents.

11. ONB further represented that the 2025 corporate incentive would "be delivered as a cash/stock split," with the 2025 cash payout being made to former Bremer employee-participants in March 2026 and the 2025 restricted stock award being issued to former Bremer employee-participants on April 1, 2026, to be vested over three years.

**ANSWER:** ONB admits only that written materials concerning the 2025 Corporate Incentive Plan state that incentive awards, depending on amount, may be delivered in cash, or in a combination of cash and restricted stock, and that any restricted stock would be subject to the terms and conditions of a restricted stock award agreement and an active-employment requirement on the grant date. ONB denies any allegation inconsistent with the written plan documents, and further denies that Ellingson was entitled to a cash payment, restricted stock, or any other award.

12. As part of ONB's acquisition of Bremer, Ellingson was impacted by this merging of the Bremer incentive plans' structure, converting to the ONB corporate incentive plan effective May 1, 2025.

**ANSWER:** ONB admits that Ellingson became eligible to participate in the 2025 Corporate Incentive Plan effective May 1, 2025, subject to the terms, conditions,

limitations, and discretion applicable to that plan. ONB denies any allegation that her eligibility to participate created an entitlement to any incentive award, and further denies that any award or compensation is due and owing to her.

13. ONB's corporate incentive plan provides that participating employees who retire from ONB on or after October 1 of the plan year remain eligible for the annual corporate incentive, so long as they have reached age 55 and have five consecutive years of service immediately preceding retirement (hereinafter, "Retirement Criteria").

**ANSWER:** ONB admits only that the written 2025 Corporate Incentive Plan contains a continued-employment requirement and certain exceptions, including an exception for a participant who retires on or after October 1 of the plan year and satisfies the plan's age-and-service requirements. ONB denies that Ellingson retired, denies that she satisfied all plan conditions, and denies any allegation inconsistent with the written plan documents.

14. Participating employees such as Ellingson had their Bremer years of service count toward the five-year consecutive year of service requirement.

**ANSWER:** ONB admits that Bremer service could count toward the five-year service requirement for a participant who otherwise satisfied the requirements of the written plan. ONB denies that Ellingson otherwise satisfied the requirements of the written plan.

15. Ellingson met the Retirement Criteria to remain eligible for participation in the ONB corporate incentive plan in 2025 because she worked over five years consecutively for Bremer and ONB combined, she had reached age 55, and she did not retire from ONB until after October 1, 2025.

**ANSWER:** ONB admits that Ellingson had more than five years of service with Bremer and ONB combined and had reached age 55. ONB denies that Ellingson retired, denies that she met the criteria to remain eligible for any incentive award, and denies the remaining allegations in this paragraph.

16. In 2025, ONB represented to multiple former Bremer employees that they would still be eligible for retirement benefits, including payment of the 2025 corporate incentive, if they met the Retirement Criteria, even if they chose to continue working for a different employer after retiring from ONB.

**ANSWER:** Denied.

17. Ellingson retired from ONB on December 8, 2025.

**ANSWER:** Denied.

18. After her retirement from ONB, an ONB human resources representative confirmed to Ellingson that she had earned and would receive her 2025 corporate incentive pay in the first quarter of 2026.

**ANSWER:** Denied. Further answering, ONB affirmatively denies Ellingson's characterization of any alleged communication with Human Resources, and denies Ellingson's characterization of her resignation from ONB as a "retirement." To the extent any Human Resources representative made any statement to Ellingson, ONB denies that any such statement amended the written plan, waived any plan condition, overrode the discretion reserved in the written plan, bound the Old National Bancorp Human Capital Committee, or entitled Ellingson to any incentive award.

19. Because the performance requirements were met for 2025, Ellingson earned 2025 corporate incentive pay.

**ANSWER:** Denied. Further answering, ONB affirmatively denies that the performance requirements alleged by Ellingson were either met or entitled her to any incentive award, denies that she earned any incentive pay, and denies that any incentive pay is due and owing to her.

20. Under ONB's corporate incentive plan, Ellingson should have received 70% of her 2025 corporate incentive pay in the form of a cash payment in March 2026.

**ANSWER:** Denied.

21. Under ONB's corporate incentive plan, Ellingson should have received the remaining 30% of her 2025 corporate incentive pay in the form of a restricted stock award issued to her in April 2026.

**ANSWER:** Denied.

22. ONB paid 2025 corporate incentive pay to other former Bremer employees who met the Retirement Criteria, including two of the other Employee Defendants in this action.

**ANSWER:** ONB admits only that certain former Bremer employees received 2025 Corporate Incentive Plan payments under different facts and circumstances. ONB denies that any such employee was similarly situated to Ellingson, denies that any such payment entitled Ellingson to a payment, and denies that any such payment waived or modified the written plan.

23. To date, ONB has refused to pay the 2025 corporate incentive pay earned by Ellingson, which is now overdue.

**ANSWER:** ONB admits that it has not paid Ellingson a 2025 Corporate Incentive Plan award, but denies that Ellingson earned any such award. ONB further denies that any incentive pay or award is owed to Ellingson, and denies that any payment is overdue.

24. Ellingson has made repeated requests to ONB Human Resources representatives, including verbally by phone, by written email communication, and by letter sent by certified mail, requesting that ONB pay both the cash incentive payment that was due to Ellingson in March 2026 and the restricted stock award incentive payment due to her in April 2026.

**ANSWER:** ONB admits that Ellingson requested payment of an alleged 2025 Corporate Incentive Plan award, which she had not earned and was not entitled to receive. ONB denies that any cash incentive payment or restricted stock award was due to Ellingson in March 2026, April 2026, or at any other time.

25. ONB continues to ignore Ellingson's repeated request to pay the 2025 corporate incentive pay that Ellingson earned.

**ANSWER:** Denied.

26. ONB's refusal to pay Ellingson her earned 2025 corporate incentive pay compensation is without justification.

**ANSWER:** Denied.

27. Ellingson again requested payment of her earned 2025 corporate incentive pay compensation in a letter sent by email and certified mail and received by ONB on May 5, 2026.

**ANSWER:** ONB admits that it received a letter on or about May 5, 2026, requesting payment to Ellingson of an alleged 2025 Corporate Incentive Plan award which

she had not earned and was not entitled to receive. ONB denies that Ellingson earned any such compensation or that any such compensation was due.

28. In the same letter, Ellingson requested a copy of her complete personnel record from ONB pursuant to Minn. Stat. § 181.961.

**ANSWER:** Admitted.

29. Upon information and belief, ONB maintains Ellingson's personnel record in the State of Minnesota.

**ANSWER:** Denied.

30. More than seven working days have passed since ONB's receipt of Ellingson's written request for a copy of her personnel record, and ONB has still not provided it.

**ANSWER:** ONB denies it has not provided Ellingson with her personnel record. Further answering, ONB affirmatively states it maintained Ellingson's personnel record outside the State of Minnesota, and ONB timely provided Ellingson with her personnel record within 14 working days after receiving her request.

## COUNTERCLAIM COUNT I
## Failure to Pay Earned Compensation
## Minn. Stat. § 181.171

31. Ellingson realleges and incorporates by reference the allegations set forth in Counterclaim Paragraphs 1–29 above as if fully set forth herein.

**ANSWER:** ONB incorporates by reference its answers to Counterclaim Paragraphs 1 through 29 as if fully set forth herein.

32. Minnesota law requires every employer to pay all wages, including salary, earnings, and gratuities earned by the employee at least once every 31 days. Minn. Stat. §181.101(a).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that Ellingson earned any unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation.

33. Minnesota law provides a substantive right for employees to the payment of wages, including salary, earnings and gratuities, that is in addition to the right to be paid at certain times. *Id*.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that Ellingson earned any unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation. ONB further denies all liability and wrongdoing on its part whatsoever, denies that any wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation are due and owing to Ellingson, and denies that Ellingson has any claim against ONB for any alleged unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation.

34. Minnesota law also requires an employer to promptly pay the wages and commissions that have been earned but remain unpaid to an employee that voluntarily separates their employment. Minn. Stat. § 181.14, subd. 1(a).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that Ellingson earned any unpaid wages or commissions, and denies that Minn. Stat. § 181.14 entitles Ellingson to any relief. ONB further denies all liability and wrongdoing on

its part whatsoever, denies that any wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation are due and owing to Ellingson, and denies that Ellingson has any claim against ONB for any alleged unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation.

35. Wages that are not paid within the required period to a separated employee become immediately payable upon the demand of the employee. Id., subd. 2.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that Ellingson earned any unpaid wages or commissions, denies that any amount became immediately payable upon demand, and denies that Ellingson has any claim against ONB for any alleged unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation.

36. Employees whose rights are violated under Minn. Stat. § 181.101 and/or 181.14 may bring a civil action seeking redress directly to the district court. Minn. Stat.§ 181.171, subd. 1.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that it violated Ellingson's rights under Minn. Stat. §§ 181.101, 181.14, or 181.171. ONB further denies all liability and wrongdoing on its part whatsoever, denies that any wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation are due and owing to Ellingson, and denies that Ellingson has any

claim against ONB for any alleged unpaid wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation.

37. An employer who is found to have violated either or both above sections of Minn. Stat. Ch. 181 is liable to the aggrieved employee for civil penalties and damages as provided in the section(s) violated. *Id*.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that it violated Minn. Stat. Ch. 181 and denies that Ellingson is entitled to civil penalties, damages, or any other relief.

38. Additionally, employers found to have violated either or both above sections of Minn. Stat. Ch. 181 shall be liable to the aggrieved employee for all compensatory damages and other appropriate relief, including but not limited to injunctive relief. *Id*.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that it violated Minn. Stat. Ch. 181 and denies that Ellingson is entitled to civil penalties, damages, or any other relief.

39. In any action such as this one brought under Minn. Stat. § 181.171, subd. 1, the Court "shall order" the employer found to have committed a violation to pay the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees. Id., subd. 3.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, the cited statute speaks for itself. ONB denies that it violated Minn. Stat. Ch. 181 and denies that Ellingson is entitled to costs, disbursements, witness fees, attorney fees, or any other relief.

40. Ellingson earned 2025 incentive pay under the ONB corporate incentive plan.

**ANSWER:** Denied.

41. The amount of 2025 incentive pay earned and due to Ellingson from ONB exceeds $75,000.

**ANSWER:** Denied.

42. ONB violated Minn. Stat. Ch. 181 by refusing to pay the cash portion of Ellingson's 2025 incentive pay to Ellingson in March 2026.

**ANSWER:** Denied.

43. ONB violated Minn. Stat. Ch. 181 by refusing to issue the restricted stock award portion of Ellingson's 2025 incentive pay to Ellingson in April 2026.

**ANSWER:** Denied.

44. Ellingson has made repeated demands to ONB to pay the earned 2025 incentive pay still due to her.

**ANSWER:** ONB admits that Ellingson demanded payment of an alleged 2025 Old National Bank Corporate Incentive Plan award. ONB denies that Ellingson earned any such award, denies that any incentive pay is due to her, and denies the remaining allegations in this paragraph.

45. ONB is liable to Ellingson for the 2025 incentive pay award earned and due to her.

**ANSWER:** Denied.

46. Additionally, ONB is liable to Ellingson for the statutory penalties available under Minn. Stat. Ch. 181 as a result of ONB's failure to pay Ellingson her earned 2025 incentive pay.

**ANSWER:** Denied.

47. ONB is also liable to Ellingson for all interest, reasonable costs, disbursements, witness fees, and attorney fees incurred by Ellingson as a result of ONB's violations of Minn. Stat. Ch. 181.

**ANSWER:** Denied.

48. Upon information and belief, ONB does not intend to pay the earned compensation that will become due to Ellingson in future years based on the 2025 plan year beginning in 2027.

**ANSWER:** ONB denies that there is any earned compensation that will become due to Ellingson under the 2025 Old National Bank Corporate Incentive Plan, and therefore denies the allegations in this paragraph.

49. Accordingly, Ellingson is also entitled to injunctive relief in the form of a court order requiring ONB to pay the additional 2025 incentive pay earned by Ellingson as it becomes due beginning in 2027.

**ANSWER:** Denied.

WHEREFORE, for all of the reasons set forth above, Plaintiff/Counter-Defendant, Old National Bank ("ONB"), respectfully requests that this Court enter judgment in its favor and against Defendant/Counter-Plaintiff Ellingson, and enter an Order:

A. Dismissing Ellingson's claims in Count I of her Counterclaims in their entirety, with prejudice;

B. Denying all relief sought by Ellingson in Count I of her Counterclaims;

C. Awarding ONB its actual costs and attorneys' fees incurred in connection with Count I of Ellingson's Counterclaims to the extent permitted by law; and

D. Awarding ONB any such other and further relief as the Court deems just.

## COUNTERCLAIM COUNT II
## Failure to Furnish Complete Personnel Record
## Minn. Stat. § 181.965

50. Minnesota law requires an employer to provide a copy of a former employee's complete personnel record to the former employee within seven working days after receipt of a request from that employee for their personnel record when the personnel record is located in Minnesota. Minn. Stat. §§ 181.960, subd. 4 and 181.961, subd. 2.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, ONB denies that Ellingson has accurately or completely set forth the cited statutory language, and states that the cited statutes speak for themselves. ONB admits only that Minn. Stat. § 181.961 provides different response periods depending on whether the personnel record is located inside or outside Minnesota. ONB denies that Ellingson's personnel record was located in Minnesota, denies any violation of Minn. Stat. § 181.961, and denies all liability and alleged wrongdoing on its part whatsoever.

51. If an employer violates Minn. Stat. § 181.961, the employee may bring a civil action to compel compliance, as well as for their actual damages and costs.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent a response is required, ONB denies that Ellingson has accurately or completely set forth the cited statutory language, and states that the cited statutes speak for themselves. ONB admits only that Minn. Stat. § 181.961 provides different response periods depending on whether the personnel record is located inside or outside Minnesota. ONB denies that Ellingson's personnel record was located in Minnesota, denies any violation of Minn. Stat. § 181.961, and denies all liability and alleged wrongdoing on its part whatsoever.

52. ONB received Ellingson's written request for her complete personnel record on May 5, 2026.

**ANSWER:** Admitted.

53. ONB failed to provide Ellingson with a copy of her complete personnel record within seven working days even though ONB maintains her personnel record in Minnesota.

**ANSWER:** Denied. Ellingson's personnel record is maintained outside Minnesota, and ONB timely provided the personnel record within 14 working days after receipt of Ellingson's request.

54. Ellingson is entitled to a court order compelling ONB's compliance with Minn. Stat. § 181.961.

**ANSWER:** Denied.

55. Additionally, Ellingson is entitled to recover the actual damages and costs incurred by her as a result of ONB's failure to comply with Minn. Stat. § 181.961.

**ANSWER:** Denied.

WHEREFORE, for all of the reasons set forth above, Plaintiff/Counter-Defendant, Old National Bank ("ONB"), respectfully requests that this Court enter judgment in its favor and against Defendant/Counter-Plaintiff Ellingson, and enter an Order:

A. Dismissing Ellingson's claims in Count II of her Counterclaims in their entirety, with prejudice;

B. Denying all relief sought by Ellingson in Count II of her Counterclaims;

C. Awarding ONB its actual costs and attorneys' fees incurred in connection with Count II of Ellingson's Counterclaims to the extent permitted by law; and

D. Awarding ONB any such other and further relief as the Court deems just.

## GENERAL DENIAL

ONB has endeavored to address all of the allegations in Ellingson's Counterclaims. To the extent ONB has not specifically mentioned or directly responded to any allegation, ONB respectfully denies that allegation.

**ANSWER TO ELLINGSON'S PRAYER FOR RELIEF:** ONB denies that Ellingson is entitled to any relief.

WHEREFORE, for all of the reasons set forth above, ONB respectfully requests that this Court enter judgment in its favor and against Ellingson and enter an Order:

A. Dismissing Ellingson's Counterclaims in their entirety, with prejudice;

B. Denying all relief sought by Ellingson in her Counterclaims;

C. Awarding ONB its actual costs and attorneys' fees incurred in connection with Ellingson's Counterclaims to the extent permitted by law; and

D. Awarding ONB any such other and further relief as the Court deems just.

## AFFIRMATIVE DEFENSES

ONB, in addition to the affirmative matters set forth in its Answer (*supra*.), and incorporating by reference the allegations set forth in ONB's First Amended Complaint (Dkt. No. 64), including without limitation the allegations concerning Ellingson's breaches of fiduciary duty and duty of loyalty, respectfully asserts the following affirmative defenses to Ellingson's Counterclaims:

**AFFIRMATIVE DEFENSE NO. 1**
**FAILURE TO STATE A CLAIM**

Ellingson's Counterclaims should be dismissed, in whole or in part, because they fail to state a claim upon which relief may be granted.

**AFFIRMATIVE DEFENSE NO. 2**
**NO EARNED COMPENSATION OR WAGES**

Ellingson's Counterclaims are barred, in whole or in part, because the amounts she seeks were not wages, salary, earnings, gratuities, commissions, incentive compensation, restricted stock, or other compensation earned and unpaid under Minn. Stat. §§ 181.101, 181.14, or any other law. Ellingson cannot transform a discretionary, conditional incentive opportunity into earned compensation.

**AFFIRMATIVE DEFENSE NO. 3**
**FAILURE OF CONDITIONS PRECEDENT / PLAN ELIGIBILITY**

Ellingson's Counterclaims are barred, in whole or in part, because she failed to satisfy conditions precedent and eligibility requirements under the 2025 Corporate Incentive Plan, including without limitation the requirements that she be actively employed through December 31, 2025, be employed on the payment date, retire within the meaning of the Plan to qualify for any retirement exception, maintain acceptable performance, and satisfy the applicable requirements for any restricted stock grant.

**AFFIRMATIVE DEFENSE NO. 4**
**VOLUNTARY RESIGNATION / QUIT, NOT RETIREMENT**

Ellingson's Counterclaims are barred, in whole or in part, because she did not retire from ONB. Ellingson voluntarily quit or resigned from ONB to immediately begin

employment with Bell Bank, a direct competitor. Her age and length of service did not convert a resignation into a qualifying retirement under the 2025 Corporate Incentive Plan.

**AFFIRMATIVE DEFENSE NO. 5**
**DISCRETIONARY PLAN / NO VESTED RIGHT**

Ellingson's Counterclaims are barred, in whole or in part, because the 2025 Corporate Incentive Plan was discretionary. The Plan reserved discretion to allocate individual awards based on individual contributions and performance, to interpret and administer the Plan, and to reduce or eliminate any incentive as deemed appropriate. No incentive target, estimate, communication, or plan participation created a vested or guaranteed right to payment.

**AFFIRMATIVE DEFENSE NO. 6**
**UNACCEPTABLE PERFORMANCE / DISQUALIFYING CONDUCT**

Ellingson's Counterclaims are barred, in whole or in part, because participant performance had to be acceptable to receive an incentive payment. Ellingson's conduct, including the conduct alleged in ONB's First Amended Complaint, was disloyal, harmful to ONB, and inconsistent with acceptable performance. Any such conduct provided an independent basis to deny, reduce, eliminate, or withhold any discretionary incentive award.

**AFFIRMATIVE DEFENSE NO. 7**
**BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY**

Ellingson's Counterclaims are barred, in whole or in part, because Ellingson owed ONB fiduciary duties and duties of loyalty during her employment and breached those duties by, among other things, coordinating and facilitating a group departure to Bell Bank,

assisting Bell Bank while employed by ONB, concealing the coordinated departure, and acting contrary to ONB's interests. A fiduciary who breaches duties to her principal cannot recover equitable relief or discretionary compensation arising from the same relationship and course of conduct.

**AFFIRMATIVE DEFENSE NO. 8**
**FAITHLESS SERVANT / FORFEITURE / DISGORGEMENT**

Ellingson's Counterclaims are barred, in whole or in part, because, to the extent permitted by law, a disloyal employee's compensation, benefits, incentive payments, and other economic gains during the period of disloyalty are subject to forfeiture, disgorgement, denial, offset, or recoupment. Ellingson may not obtain a discretionary incentive award for a period in which she breached fiduciary duties and acted adversely to ONB's interests.

**AFFIRMATIVE DEFENSE NO. 9**
**PRIOR MATERIAL BREACH / FIRST BREACH**

Ellingson's Counterclaims are barred, in whole or in part, because Ellingson materially breached her duties to ONB before any alleged obligation to pay an incentive award arose. Any alleged failure of performance by ONB was excused by Ellingson's prior material breaches.

**AFFIRMATIVE DEFENSE NO. 10**
**UNCLEAN HANDS**

Ellingson's Counterclaims, including her requests for injunctive and equitable relief, are barred, in whole or in part, by the doctrine of unclean hands because her alleged entitlement arises from the same employment relationship and separation in which she

engaged in the disloyal and inequitable conduct alleged in ONB's First Amended Complaint.

**AFFIRMATIVE DEFENSE NO. 11**
**SET OFF / RECOUPMENT**

To the extent Ellingson is found entitled to any amount from ONB, which ONB denies, any such amount is subject to setoff, recoupment, disgorgement, or equitable reduction based on the damages, losses, compensation, benefits, fees, costs, and other amounts ONB is entitled to recover from Ellingson arising out of the conduct alleged in ONB's First Amended Complaint.

**AFFIRMATIVE DEFENSE NO. 12**
**AFTER-DISCOVERED MISCONDUCT**

Ellingson's Counterclaims are barred, limited, or reduced, in whole or in part, based on misconduct discovered by ONB before or after Ellingson's separation, including misconduct affecting her eligibility, performance, fiduciary obligations, duty of loyalty, and claimed entitlement to discretionary incentive compensation.

**AFFIRMATIVE DEFENSE NO. 13**
**EXPRESS WRITTEN PLAN CONTROLS / NO ORAL MODIFICATION**

Ellingson's Counterclaims are barred, in whole or in part, because the written 2025 Corporate Incentive Plan and related written plan documents govern her claimed incentive-compensation rights, if any. No alleged oral statement, informal communication, estimate, or summary modified the written Plan, waived any written plan condition, or created an enforceable right inconsistent with the Plan.

**AFFIRMATIVE DEFENSE NO. 14**
**LACK OF AUTHORITY / NO REASONABLE RELIANCE**

Ellingson's Counterclaims are barred, in whole or in part, because any alleged statement by an ONB Human Resources representative or other employee could not bind ONB to pay a discretionary incentive award, waive plan requirements, or amend the Plan. Any reliance by Ellingson on such alleged statements was unreasonable, particularly in light of the written plan terms and Ellingson's own undisclosed competitive employment plans and alleged misconduct.

**AFFIRMATIVE DEFENSE NO. 15**
**NO WAIVER OR ESTOPPEL**

Ellingson's Counterclaims are barred, in whole or in part, because ONB did not waive any plan condition, eligibility requirement, defense, right, or remedy. ONB is not estopped from enforcing the written plan terms or from denying Ellingson's claimed entitlement. Any payments to other employees, if any, were made under different facts and circumstances, were not made to similarly situated employees, did not bind ONB as to Ellingson, and did not waive ONB's rights.

**AFFIRMATIVE DEFENSE NO. 16**
**GOOD-FAITH DISPUTE**

Ellingson's Counterclaims are barred, in whole or in part, and any alleged statutory penalties, fees, interest, or other enhanced relief are unavailable or limited, because any nonpayment was based on a good-faith dispute over eligibility, retirement status, plan discretion, individual performance, the amount of any award, and the legal effect of Ellingson's conduct and alleged breaches of fiduciary duty.

**AFFIRMATIVE DEFENSE NO. 17**
**NO CAUSATION OR DAMAGES**

Ellingson's Counterclaims are barred, in whole or in part, because Ellingson suffered no legally cognizable damages caused by ONB. Any alleged damages are speculative, unavailable, barred by plan terms, barred by Ellingson's own conduct, or otherwise not recoverable.

**AFFIRMATIVE DEFENSE NO. 18**
**RESTRICTED STOCK NOT EARNED / NO GRANT / NO ACTIVE EMPLOYMENT**

Ellingson's claim for restricted stock is barred, in whole or in part, because any restricted stock component was contingent on active employment on the April 1, 2026, grant date, issuance of an award agreement, and satisfaction of all applicable plan and grant requirements. Ellingson was not actively employed by ONB on the grant date, no restricted stock grant was made to her, no shares vested, and no restricted stock was earned or payable.

**AFFIRMATIVE DEFENSE NO. 19**
**ADEQUATE REMEDY AT LAW / NO INJUNCTIVE RELIEF / RIPENESS**

Ellingson's requests for injunctive and equitable relief are barred, in whole or in part, because she has an adequate remedy at law, because the requested relief would improperly compel payment of amounts not earned or owed, because any alleged future payments are speculative and unripe, and because Ellingson cannot satisfy the requirements for equitable relief.

## AFFIRMATIVE DEFENSE NO. 20
## STATUTORY REMEDY LIMITATIONS / NO EXEMPLARY OR PUNITIVE DAMAGES

Ellingson's requests for statutory penalties, exemplary damages, punitive damages, attorneys' fees, witness fees, costs, interest, and other enhanced relief are barred, in whole or in part, because ONB did not violate any statute, because the statutes invoked do not authorize the relief sought under the circumstances alleged, and because Ellingson has not satisfied the procedural or substantive prerequisites for exemplary or punitive damages.

## AFFIRMATIVE DEFENSE NO. 21
## PERSONNEL RECORD LOCATED OUTSIDE MINNESOTA / TIMELY COMPLIANCE

Ellingson's personnel-record claim is barred because ONB maintained Ellingson's personnel record outside Minnesota and timely provided the record within 14 working days after receipt of her written request, as permitted by Minn. Stat. § 181.961.

## AFFIRMATIVE DEFENSE NO. 22
## STATUTORY PERSONNEL RECORD LIMITATIONS / EXCLUSIONS / PRIVILEGE

Ellingson's personnel-record claim is barred, in whole or in part, because ONB timely provided the personnel record required by Minn. Stat. §§ 181.960 and 181.961. Any materials not provided were not part of the statutory personnel record, were excluded by statute, were privileged, were non-discoverable, concerned ongoing or privileged investigations, contained third-party-private information, or otherwise were not required to be produced.

**AFFIRMATIVE DEFENSE NO. 23**
**MOOTNESS / NO ACTUAL DAMAGES ON PERSONNEL-RECORD CLAIM**

Ellingson's personnel-record claim is barred, in whole or in part, because ONB has produced the statutory personnel record, rendering any request to compel production moot. Ellingson did not suffer actual damages from any alleged personnel-record issue and is not entitled to attorneys' fees or other relief beyond the limited remedies authorized by statute.

**AFFIRMATIVE DEFENSE NO. 24**
**FAILURE TO MITIGATE**

Ellingson's Counterclaims are barred, in whole or in part, because Ellingson failed to mitigate any damages she allegedly sustained.

**AFFIRMATIVE DEFENSE NO. 25**
**RESERVATION OF ADDITIONAL DEFENSES**

ONB reserves the right to assert any additional affirmative defenses, avoidance defenses, and other defenses that become known or available during the pendency of this action.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ONB hereby renews its demand for a trial by jury on all issues so triable.

WHEREFORE, for all of the reasons set forth above, ONB respectfully requests that this Court enter judgment in its favor and against Ellingson and enter an Order:

A. Dismissing Ellingson's Counterclaims in their entirety, with prejudice;

B. Denying all relief sought by Ellingson in her Counterclaims;

C. Awarding ONB its actual costs and attorneys' fees incurred in connection with Ellingson's Counterclaims to the extent permitted by law; and

D. Awarding ONB any such other and further relief as the Court deems just.

Dated: June 8, 2026

Respectfully submitted,

**OLD NATIONAL BANK, Plaintiff**

By: /s/ *Mack H. Reed*
One of Its Attorneys

Mack H. Reed (MN No. 398703)
Bethany R. Jewison (MN No. 505680)
LEWIS BRISBOIS BISGAARD & SMITH LLP
90 South 7th Street, Suite 2800
Minneapolis, Minnesota 55402
Phone: (612) 428-5000
Fax: (612) 428-5001
mack.reed@lewisbrisbois.com
bethany.jewison@lewisbrisbois.com

and

Christopher S. Griesmeyer (IL No. 6269851, *pro hac vice*)
Zachary Mulcrone (IL No. 6300387, *pro hac vice*)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Phone: (312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d)(1)(B)(i), I certify that on June 8, 2026, I caused a copy of the foregoing document to be served on counsel of record via the Court's CM/ECF System.

Dated: June 8, 2026

Lewis Brisbois Bisgaard & Smith LLP

/s/ *Mack H. Reed*

Mack H. Reed (398703)
90 South 7th Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 428-5000
Fax: (612) 428-5001
mack.reed@lewisbrisbois.com

*Counsel for Plaintiff Old National Bank*