**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Old National Bank,

Plaintiff,

v.

Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,

Defendants.

Court File No. 0:25-CV-04636 (PJS/LIB)

**EMPLOYEE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL**

---

Defendants Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, and Daniel Yantes (collectively, the "Employee Defendants") respectfully submit this memorandum in support of their Motion to Compel Plaintiff Old National Bank ("ONB") to provide complete responses in discovery.

## INTRODUCTION

Eight months after accusing the Employee Defendants and Bell Bank of misappropriating trade secrets and confidential information, ONB still refuses to identify *what* was taken or used. ONB claims interference with customer relationships but will not identify the customers. It alleges breaches of loyalty through solicitation, yet will not describe *any* conduct by Defendants Bernu, Yantes, McConkey, or Vold supporting that claim. And although ONB says it produced documents supporting the First Amended

Complaint, it refuses to identify those documents or produce materials relevant to the Employee Defendants' defenses.

ONB may not withhold documents and information relevant to the claims and defenses, nor may it unilaterally define what information opposing parties and counsel may see. The Employee Defendants therefore respectfully request an order compelling ONB to provide complete responses as follows:

- Interrogatory 1 and Request for Production 2: ONB should be compelled to fully answer the interrogatory and specify the documents described in its First Amended Complaint so the Employee Defendants can locate and identify them, and ONB should produce complete video surveillance footage.

- Interrogatories 3-7 and Requests for Production 3-4 and 14-15: ONB should be compelled to identify the confidential information and trade secrets at issue, the customers allegedly solicited, and the contracts and business opportunities with which the Employee Defendants allegedly interfered. ONB should also be compelled to produce documents sufficient to identify the trade secrets, confidential information, contracts, and customers at issue.

- Request for Production 12: ONB should be compelled to answer the request and state whether any responsive documents exist.

- Interrogatories 11-14: ONB should be compelled to describe the actions of Defendants Bernu, Yantes, McConkey, and Vold that ONB alleges induced, encouraged, or solicited others to resign or retire.

Eight months is too long to embroil eight individuals in litigation while withholding the factual basis for the claims against them. ONB's discovery conduct warrants an award of the Employee Defendants' reasonable expenses and attorneys' fees incurred in bringing this motion.

## BACKGROUND

ONB commenced suit on December 15, 2025, alleging that the Employee Defendants breached duties of loyalty, misappropriated confidential information and trade secrets, and solicited ONB customers using that information. (Dkt. No. 1). ONB also sought a temporary injunction to halt alleged "wrongdoing" and irreparable injury based on what it called "overwhelming evidence of [the Employee Defendants'] misconduct." (Dkt. No. 8, p. 3). The motion was denied because that evidence did not exist. (Dkt. No. 45; Dkt. No. 50, 11:19-21 ("Before I can enter such an injunction, I need evidence they've used your confidential trade secrets.")).

ONB amended its pleading on February 3, 2026, but maintained claims for trade secret misappropriation, breach of fiduciary duty of loyalty, and interference with customer contracts and relationships. (Dkt. No. 64). The First Amended Complaint alleged that nearly all Employee Defendants accessed or printed documents shortly before leaving, and inferred they did so to benefit Bell Bank rather than to continue serving ONB customers. (*Id.* ¶¶ 74-81). ONB characterized these activities as "inconsistent with ordinary servicing needs." (*Id.* ¶ 72).

### A. The Employee Defendants sought discovery related to ONB's investigation.

The Employee Defendants served initial discovery requests on March 11, 2026. Declaration of Heidi Bassett in Support of Motion to Compel ("Bassett Decl.") ¶2. Many activities ONB viewed suspiciously were consistent with ordinary practices at the Brainerd and Baxter branches, so the Employee Defendants needed discovery into ONB's investigation, including whether ONB checked shred bins, customer-requested printouts,

desks, offices, and other locations that could confirm innocent explanations. *Id.* at ¶ 5, Exs. A, B. Relevant to this motion are two such requests:

> Interrogatory 1: Describe all actions you took to investigate the Employee Defendants' activities related to their departure from ONB and transition to Bell Bank, and identify all documents that relate to your answer. This interrogatory includes, but is not limited to, your searches of the Employee Defendants' email accounts and ONB's computer systems, review of security camera footage, communications with employees, communications with customers, and review of physical documents in offices, desks, shred bins, or otherwise found within the Brainerd or Baxter branches.
>
> Request for Production 2: All documents, communications, security camera footage, and any other tangible items discovered during or otherwise relating to your investigation of the Employee Defendants' activities before and after their departure from ONB.

ONB responded on April 10, 2026, and made a "prefatory statement" that "[t]o the extent ONB answers an Interrogatory by reference to documents, those documents will be produced in the ordinary course of business or organized to correspond to the requests, subject to any applicable confidentiality designation, protective order, or privilege assertion." Bassett Decl. Ex. B, p. 2. ONB also objected to the discovery "to the extent" the Employee Defendants sought disclosure of attorney-client communications or work product, and because ONB found the discovery overly broad, vague, ambiguous, and not proportional to the needs of the case. *Id.* at p. 3.

Notwithstanding its objections, ONB answered Interrogatory 1 only in broad strokes. ONB said it reviewed branch security footage "for relevant locations and time periods" without identifying either. Bassett Decl. Ex. B at p. 4. It also referenced review of printing logs, email records, web-activity logs, "the documents referenced in [the logs]," and "other non-privileged materials on which ONB may rely in support of its claims." *Id.*

at pp. 4, 7. ONB identified no employee or customer communications and did not say whether it reviewed physical documents in offices, desks, shred bins, or elsewhere in the branches.

As to Request for Production 2, ONB recited the same prefatory statement and objections, but agreed to produce documents "sufficient to show the factual bases for the allegations in the First Amended Complaint and ONB's claims in this action" rather than all non-privileged documents responsive to the request. Bassett Decl. Ex. A.

During an April 24, 2026 meet and confer conference, the Employee Defendants learned that ONB had self-selected the documents it deemed "sufficient to show the factual bases for the allegations in the First Amended Complaint." Bassett Decl. ¶ 6. ONB also had additional materials assembled and reviewed during its investigation that were not provided to counsel, but it was "willing" to produce "irrelevant documents that were reviewed during the investigation." *Id.* at ¶ 5.

### B. The Employee Defendants' could not defend ONB's allegations without understanding ONB's investigation.

The Employee Defendants responded to discovery requests from ONB on May 8, 2026 and addressed allegations in the First Amended Complaint to the best of their recollections. Bassett Decl. ¶¶ 8-10, Exs. D, E. For example, ONB alleged that Defendant Michael McConkey printed an August 2025 proposal for "Customer A.H." and accessed documents such as "account verification letters and covenant waivers" from a customer's loan file. (Dkt. No. 64 ¶ 76). McConkey recalled accessing the outdated proposal, but did so because it contained verbiage he needed to assist an underwriter at ONB. Bassett Decl.

¶ 9, Ex. D. "A.H." declined to accept ONB's proposed terms and did not become a customer of ONB. *Id.* at Ex. D. McConkey also explained that accessing "account verification letters and covenant waivers" was part of his normal course of business while serving customers, so without more information from ONB, he could do nothing else to defend against the allegation. *Id.*

ONB also accused Defendant Kasey Bernu of printing customer loan files and closing documents. (Dkt. No. 64, ¶ 77). ONB could not locate the printed documents, so it concluded that Bernu took them with her to use for Bell Bank's benefit. *Id.* In her interrogatory answers, Bernu recalled printing and mailing a customer loan file and closing documents on December 5, 2025, because ONB needed the customer's signature. Bassett Decl. ¶10, Ex. E. Bernu placed detailed notes of this in the customer's loan file in the top drawer of her credenza. *Id.* She also left detailed notes on all her existing clients in her desk drawer. *Id.* Without knowing whether ONB reviewed those notes, and without ONB having identified the customers in question, Bernu could not defend against ONB's remaining allegations.

ONB produced 276 documents on May 8, 2026, including public filings, incomplete video surveillance footage, screenshots from that footage, and one internal email regarding closure of the Brainerd branch. Bassett Decl. ¶ 11. ONB did not produce documents consistent with its "prefatory statement," so the Employee Defendants asked for help locating the materials referenced in ONB's Interrogatory 1 answer, including "physical materials" reviewed at the branches and documents ONB used to compare the Employee

Defendants' activity with "ordinary" activity. *Id.* at Ex. G. The Employee Defendants also requested an explanation for ONB's incomplete video surveillance production. *Id*.

ONB again confirmed its production was limited to "documents sufficient to show the factual bases for the allegations in the First Amended Complaint" and believed its production was complete. Bassett Decl. Ex. F. But during a meet and confer call on May 19, 2026, ONB's counsel advised that the "physical materials" were *not* included in ONB's first production. *Id.* at ¶ 13, Ex. G, ¶ 5. These would be produced, together with the documents ONB used for comparison to evaluate the Employee Defendants' "ordinary" activity. *Id*. The Employee Defendants again requested complete video surveillance footage, but ONB's counsel confirmed that the materials available for production were limited to what ONB elected to disclose. *Id.*

Because ONB's First Amended Complaint lodged specific allegations about customers, the Employee Defendants needed to review the referenced documents to recall their reasons for accessing or printing the documents. ONB did not specify the documents in its discovery responses, so the Employee Defendants' counsel analyzed and identified what *appeared* to be nine of the referenced documents and requested ONB's approval to show them to the Employee Defendants. Bassett Decl. ¶¶ 13-14, Ex. H, p. 2. Twelve other documents could not be identified, so the Employee Defendants asked ONB to supply the corresponding bates numbers. *Id.* ONB did not.

ONB served its second document production containing 146 documents on May 26, 2026. Bassett Decl. ¶ 15. These included declarations signed by eight ONB employees earlier that month, eleven screen shots depicting partial conversations with Employee

Defendants in text messages and on social media, and various printed documents apparently left in the branches by Defendants Vold, Campbell and Yantes. *Id.*

On May 27, 2026, the Employee Defendants again asked ONB to identify the documents in its productions corresponding to the First Amended Complaint and renewed their request for complete video surveillance footage. Bassett Decl. Ex. I. ONB refused, asserting that *if* the documents described in the First Amended Complaint were "reviewed or compiled as part of ONB's investigation," they were already produced or buried in the forthcoming production of more than 12,000 documents that ONB had previously characterized as irrelevant. *Id.* at Ex. I. The Employee Defendants also learned that ONB's second production *did not* include all physical materials ONB reviewed during its investigation. *Id*.

During yet another meet and confer call on June 2, 2026, ONB refused to explain its production of partial video surveillance footage, ("[T]hat sounds like a good deposition question"), but its counsel agreed to ask ONB to supplement or amend its answer to Interrogatory 1 to identify the "offices, desks, printer areas, and other available locations" from which ONB collected documents, as well as to answer the interrogatory as to "communications with employees and customers." Bassett Decl. ¶ 18, Ex. J. The Employee Defendants asked ONB to fully answer Interrogatory 1 or comply with Rule 33(d), but ONB would not. *Id.*

On June 29, 2026, ONB produced the third volume of its production containing 12,833 documents dating as far back as 2003.[1] Bassett Decl. ¶ 21. ONB then supplemented its answer to Interrogatory 1 on July 7, naming six employees that "ONB spoke with" as part of its investigation. *Id.* at ¶ 22, Ex. B. No supplemental answer was provided to identify the desks and other areas ONB investigated, nor did ONB describe any communications with employees or customers. *Id.*

### C. The Employee Defendants again attempted to discover the bases for ONB's accusations.

The Employee Defendants' second set of discovery requests were served on May 29, 2026. Bassett Decl. ¶ 17, Exs. K, L. Relevant to this motion are the following:

> Interrogatory 3: Identify and describe all confidential information and trade secrets that you contend the Employee Defendants **retained, took, or transferred** when they departed ONB. For each such piece of information, identify whether you consider the information confidential or a trade secret, identify the Employee Defendant who **retained, took, or transferred** the information, and describe the means by which the Employee Defendant acquired the information. Identify all documents that relate to your answer.
>
> Interrogatory 4: Identify and describe all confidential information and trade secrets that you contend the Employee Defendants **used or disclosed** after departing ONB. For each such piece of information, identify whether you consider the information confidential or a trade secret, identify the Employee Defendant who **used or disclosed** the information, identify when and to whom the information was **used or disclosed**, and describe how such information was **used or disclosed**. Identify all documents that relate to your answer.
>
> (Requests for Production 3 and 4 corresponded with Interrogatories 3 and 4.)
>
> Interrogatory 5: Identify each and every ONB customer that you contend the Employee Defendants solicited to move their business to Bell Bank. For

[1] ONB produced additional documents on June 30 and July 24, 2026. Those documents do not appear relevant to this motion.

each such customer, identify the Employee Defendant who solicited the customer, the date(s) of solicitation, and the confidential or trade secret information used by the Employee Defendant to solicit the customer. Identify all documents that relate to your answer

Interrogatory 6: Identify and describe each and every customer contract with which you allege the Employee Defendants interfered. For each such contract, identify the date on which the contract was breached, identify the Employee Defendant whom you contend interfered with the contract, describe the way(s) in which the contract was breached, and describe the facts that form the basis of your belief that the Employee Defendants procured the breach. Identify all documents that relate to your answer.

(Request for Production 14 corresponded with Interrogatory 6.)

Interrogatory 7: Identify and describe each and every business expectancy or opportunity with which you allege the Employee Defendants interfered. For each, describe the factual basis for your expectation of economic advantage, identify the Employee Defendant whom you contend had knowledge of the business expectancy or opportunity, and describe the way(s) in which the Employee Defendant interfered with the expectancy or opportunity. Identify all documents that relate to your answer

(Request for Production 15 corresponded with Interrogatory 7.)

Interrogatory 11: Describe the actions you allege Bernu took to induce, encourage, or solicit any other Employee Defendants to leave their employment with ONB. Identify all documents that relate to your answer

Interrogatories 12-14 asked the same question as Interrogatory 11 for Defendants Yantes, McConkey, and Vold.

Request for Production 12: The contents of all shred bins, recycling bins, or other receptacles in which printed documents were discarded at ONB's Brainerd and Baxter branches from November 1, [2025][2] through December 8, 2025.

[2] Request for Production 12 contained a scrivener's error identifying 2005, rather than 2025. The Employee Defendants' counsel clarified this in an email on July 9, 2026. Bassett Dec. Ex. N, p. 6.

ONB responded on June 26, 2026, refusing to answer any of these interrogatories because ONB believes them to be premature contention interrogatories that "would require ONB to speculate about facts" in the Employee Defendants' (or Bell Bank's) possession. Bassett Decl. Ex. L. ONB objected to the corresponding requests for production (3, 4, 14, and 15) on the same grounds. *Id.* at Ex. K. ONB also objected that Request for Production 12 is overbroad, unduly burdensome, "impossible to comply with as drafted," and not proportional to the needs of the case and refused to produce responsive documents. *Id.*

ONB confirmed, during a fourth meet and confer call between counsel on July 10, 2026, that it will not identify its trade secrets, solicited customers, or disrupted business contracts and opportunities, maintaining that these are contention interrogatories that need not be answered until after substantial completion of discovery. Bassett Decl. ¶ 24. According to ONB, it cannot identify the trade secrets at the core of this action, but the Employee Defendants can. *Id.* at Ex. N.

## LEGAL STANDARD

Federal Rule of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 "is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks,* Inc., 981 F.2d 377, 380 (8th Cir.1992). "Relevance is defined broadly and encompasses any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case." *Saroya v. CAIR Found., Inc.*, 348 F.R.D. 632, 640 (D. Minn. 2024) (citation modified).

"If a response is made, but some questions not answered or are evasive or incomplete, a motion under Rule 37(a) to compel answers is the proper remedy." *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975). For purposes of such a motion, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). When a party prevails on a motion to compel, the court must award expenses the moving party incurred, unless the moving party failed to meet and confer, the opposing party's conduct was "substantially justified," or it would otherwise be unjust to order expenses. Fed. R. Civ. P. 37(a)(5); *LeMond Cycling, Inc. v. Trek Bicycle Corp.*, No. CV 08-1010 (RHK/JSM), 2009 WL 10678176, at *6 (D. Minn. Nov. 30, 2009) (awarding attorneys' fees where the derelict party "did not make any inquiry whatsoever before responding to the requests" and the moving party made a good faith attempt to receive supplemental discovery before filing the motion).

## ARGUMENT

### I. ONB SHOULD FULLY EXPLAIN ITS INVESTIGATION AND PRODUCE ALL RELEVANT, RESPONSIVE DOCUMENTS.

Interrogatory No. 1 asked ONB to describe its investigation into the Employee Defendants' activities, while Request for Production 2 sought the documents ONB discovered during the investigation. Bassett Decl. Exs. A, B. This information is not available to the Employee Defendants without ONB's cooperation, but it is necessary to

defend against the allegations in the First Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1) (identifying "the parties' relative access to relevant information" as a factor courts consider in analyzing proportionality). ONB's responses suffer at least three infirmities.

First, ONB's objections are boilerplate. It objected that the discovery was vague, overly broad, and disproportionate, but gave no specific reason for refusing to provide core information. *See Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 5087362, at *3 (D. Minn. Jan. 5, 2021) (finding boilerplate objections inconsistent with the Federal Rules of Civil Procedure). ONB knows whom it interviewed, where it searched, what video it reviewed, whether it checked desks, offices, printer areas, shred bins, and other locations, and which documents it identified as supposedly taken. Those facts matter because ONB alleged improper access or printing while the Employee Defendants explained that the same activity reflected ordinary banking practices: mailing customer documents for signature, assisting ONB underwriters, servicing customers, and leaving notes for continuity of service. Without ONB's investigation details, the Employee Defendants are left to guess whether ONB reviewed the very materials that would confirm those explanations.

Second, ONB's responses show it is withholding information. ONB says it reviewed branch security footage "for relevant locations and time periods," but it could not select excerpts without reviewing more complete footage. It produced only partial surveillance footage and screenshots, then refused to explain why those excerpts were deemed relevant. ONB also referenced "email accounts" without identifying them, failed to identify the "physical materials" reviewed at the branches, did not say whether it examined desks,

printer areas, offices, shred bins, or other available locations, and failed to describe employee or customer communications despite counsel's promise to supplement. These evasive answers do not suffice. Fed. R. Civ. P. 37(A)(4) ("An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). ONB's counsel offered no explanation for producing only portions of the December 8 footage, instead stating that it "sounds like a good deposition question." Bassett Decl., Ex. J. That is not a valid basis to refuse an interrogatory answer. *See, e.g.*, *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 409 (D. Minn. 1995) ("[W]e view discovery, via Interrogatories, to serve a proper function in avoiding unfruitful depositions"); *Glick v. McKesson & Robbins*, 10 F.R.D. 477, 479 (W.D. Mo. 1950) ("[I]t is no valid objection to allege that the information called for in interrogatories is 'best available to plaintiff by deposition.").

Third, ONB improperly limited discovery to what it was "willing" to produce. ONB agreed to produce documents "sufficient to show the factual bases for the allegations in the First Amended Complaint," then admitted it possessed additional investigative materials that were neither provided to counsel nor produced. Later, after repeated requests to identify the documents referenced in the First Amended Complaint, ONB suggested that if those documents were reviewed or compiled during the investigation, they were either already produced or buried in a later production of more than 12,000 documents dating back to 2003. Rule 26 permits discovery relevant to any party's claim *or defense*. Fed. R. Civ. P. 26(b)(1). "Plaintiffs cannot, by their sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the

case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014). ONB cannot pursue these claims while preventing the Employee Defendants from testing them.

ONB's conduct during the discovery process further demonstrates why supplementation is necessary. ONB initially represented that its production in response to Request for Production 2 was complete and consisted of the materials supporting its claims. Bassett Decl. ¶ 11, Ex. F. Yet counsel later acknowledged that ONB maintained a segregated folder of materials assembled and reviewed during the investigation, consisting of more than 12,000 documents, which had not been produced. *Id.* at ¶ 6, Exs. C, F. ONB also repeatedly promised additional productions of investigation materials, physical documents, and comparison materials used to assess whether employee activity was "ordinary," while continuing to refuse to identify the specific materials supporting allegations in the First Amended Complaint. *Id.* at ¶¶ 13-18, Exs. G-I.

An interrogatory answer that omits entire categories of responsive information expressly requested, and that ONB's own counsel has conceded may be incomplete, does not satisfy ONB's discovery obligations. The Employee Defendants respectfully request an order compelling ONB to serve a further supplemental answer addressing each of these specific, identified gaps within a fixed period set by the Court.

## II. ONB'S "PREMATURE CONTENTION INTERROGATORY" OBJECTIONS SHOULD BE OVERRULED.

Interrogatories 3 through 7 ask ONB to identify and describe the confidential information, trade secrets, customers, contracts, and business expectancies at issue, while Interrogatories 11-14 ask ONB to identify facts supporting its allegations that Bernu,

Yantes, McConkey, and Vold solicited others to leave their employment. ONB objected to each as a "premature contention interrogatory" under Fed. R. Civ. P. 33(a)(2), asserting that it cannot answer until it receives complete discovery from the Employee Defendants and Bell Bank.[3] Requests for Production 3, 4, 14, and 15 seek documents corresponding with the interrogatories.

ONB's objections fail because the interrogatories do not ask ONB to marshal every fact, witness, and legal theory. They ask ONB to identify the basic subject matter of the claims it chose to plead: the information allegedly taken or used, the customers allegedly solicited, the contracts and business opportunities allegedly disrupted, and the conduct allegedly undertaken by Bernu, Yantes, McConkey, and Vold to induce others to resign or retire. Those facts should have been known when ONB filed suit, sought emergency injunctive relief based on purported "overwhelming evidence," and amended its pleading to add specific allegations about documents accessed or printed by individual Employee Defendants.

> The term "contention interrogatories" refers to several types of questions. They may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts. *They are distinct from interrogatories that request identification of witnesses or documents that bear on the allegations.*

*In re Grand Casinos, Inc.*, 181 F.R.D. 615, 618 (D. Minn. 1998).

[3] The Employee Defendants originally objected to various of ONB's interrogatories on numerosity, as ONB demanded separate answers from each Employee Defendant. In the interest of full and fair discovery, this objection has since been withdrawn.

Fundamentally, Interrogatory Nos. 3 through 7 and 11 through 14 do not seek a comprehensive narrative account of ONB's entire case. They ask ONB to identify specific facts squarely within its own knowledge as the party that filed suit; the answers do not require ONB to marshal every fact and legal theory supporting its entire case.

While ONB is obligated to supplement or amend its responses throughout discovery, it must still answer based on its current knowledge. *See Inline Packaging, LLC v. Graphic Packaging Int'l, Inc., No.* 15-CV-3183(ADM/LIB), 2016 WL 6997113, at *10 (D. Minn. Sept. 6, 2016) (finding interrogatories that sought the present view of a party bearing the burden of proof were not contention interrogatories). And regardless, "[w]hen a complaint contains specific allegations ... the factual basis for those allegations is presumptively discoverable .... That the Interrogatory is possibly a contention interrogatory does not, alone, alter that presumption of discoverability." *Smartmatic USA Corp. v. Lindell*, No. 22-CV-98 (WMW/JFD), 2023 WL 6890929, at *7 (D. Minn. Oct. 19, 2023) (citation modified). ONB's First Amended Complaint contains specific allegations about particular Employee Defendants, particular accessed or printed documents, and alleged customer-related conduct. The factual bases for those allegations are therefore discoverable now, not after ONB has used discovery to search for support it lacked when it filed suit.

ONB bears the burden of proof on all its claims. By alleging that the Employee Defendants "have misappropriated, threaten to misappropriate, or inevitably will misappropriate" trade secrets, (ECF 64 at ¶ 109), ONB assumed the burden to identify its own trade secrets. *See Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329,

335 (8th Cir. 2003) ("In a suit for misappropriation of trade secrets, the plaintiff must specify what information it seeks to protect."). ONB cannot claim harm from theft or misuse of specific trade secrets while saying it does not know what those trade secrets are. See Bassett Decl. ¶ 24 (ONB's counsel asserting ONB "doesn't know which specific trade secrets the Employee Defendants took"); Ex. N. The principle matters here because ONB's allegations concern ordinary banking materials and customer-service activity. ONB accused McConkey of accessing proposal materials and loan-file documents that he explained were used to assist an ONB underwriter or serve customers, and accused Bernu of printing loan-file and closing documents that she explained were mailed for customer signature and documented in notes left at ONB. ONB cannot force the Employee Defendants to infer the alleged trade secrets or confidential information from generalized categories or a voluminous production.

If ONB intends to maintain that the Employee Defendants interfered with "banking contracts and agreements between ONB and its customers" by soliciting customers, (ECF 64 at ¶¶ 154-156), as well as interfered with "valid business expectancies" belonging to their former employer, (¶¶158-159), ONB can surely identify the contracts, customers, and expectancies in question. *See Robertson v. Gov't Pers. Mut. Life Ins. Co.*, No. 21-cv-2236 (SRN/ECW), 2022 WL 3348331, at *9 (D. Minn. Aug. 12, 2022) (dismissing tortious interference with contract claim because plaintiffs failed to "identify the [parties] that are in breach of their contracts with the [plaintiff], the specific conduct that [the defendant] engaged in to cause the breach, and the type of contracts at issue."); *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 881 (D. Minn. 2019) (citation modified) (finding that

"a projection of future business or unidentified customers, without more, is insufficient as a matter of law."). ONB's refusal to identify the customers supposedly solicited is not a timing issue; it prevents the Employee Defendants from determining whether the customers were ONB customers at all, whether any contract existed, whether any customer moved business, and whether any alleged contact involved confidential information rather than ordinary customer relationships.

ONB's refusal to identify the alleged documents, information, customers, contracts, expectancies, and solicitation that support its claims *eight months* into the case prejudices the Employee Defendants, who have already answered ONB's discovery based on recollection and repeatedly asked ONB to identify the materials corresponding to its allegations. Discovery cannot proceed fairly if ONB may accuse individual defendants of misappropriation, solicitation, and interference while withholding the basic facts needed to understand and rebut those accusations.

The Court should therefore order ONB to serve complete supplemental interrogatory answers identifying each alleged trade secret and each item or category of confidential information with reasonable particularity, including the customer, document, data field, compilation, report, system, or communication at issue; the defendant or defendants allegedly involved; the alleged acquisition, disclosure, or use; and the documents supporting each contention. ONB should also be ordered to identify the customers allegedly solicited, the contracts and business opportunities allegedly interfered with, and the alleged conduct by Bernu, Yantes, McConkey, and Vold that supposedly induced, encouraged, or solicited others to resign or retire. Finally, ONB should be ordered to

produce all nonprivileged documents sufficient to show the bases for those allegations and all nonprivileged responsive documents withheld from its investigation production.

## III. IF ONB HAS NO DOCUMENTS RESPONSIVE TO REQUEST FOR PRODUCTION 12, IT SHOULD STATE AS MUCH.

Request for Production 12 sought production of the contents of shred bins, recycling bins, or other receptacles in which printed documents were discarded at the Brainerd and Baxter branches from November 1, [2025] through December 8, 2025. This is the period during which ONB alleges that the Employee Defendants printed documents that ONB later could not locate. ONB's own theory of the case rests in significant part on the premise that documents accessed or printed by Employee Defendants must have been removed from the branches because ONB could not subsequently find them.

ONB refused to answer on the grounds that the request purportedly sought twenty years of records based on a typographical error referring to "November 1, 2005." Bassett Decl. Ex. K. The request obviously concerns the period immediately preceding the resignations alleged in the Complaint. ONB itself understood the relevant period to be November and December 2025, as evidenced by its lengthy response discussing events beginning "in or around November 2025." Bassett Decl. Ex. K.

More importantly, ONB's response never states whether responsive materials exist or ever existed. A party may object to a request, but Rule 34 still requires disclosure when responsive materials are being withheld on the basis of an objection and requires a party to indicate whether responsive materials are being withheld. See Fed. R. Civ. P. 34(b)(2)(C).

If ONB collected, reviewed, or preserved materials from shred bins, recycling bins, or similar receptacles during its investigation, those materials are plainly discoverable because they directly bear on ONB's allegation that printed documents disappeared from the branches. If no responsive materials were preserved or exist, ONB should simply state that fact. The Employee Defendants are entitled to a complete answer one way or the other.

## IV. ONB'S CONDUCT WARRANTS AN AWARD OF EXPENSES AND ATTORNEYS' FEES UNDER RULE 37(A)(5).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to compel is granted, or if the requested discovery is produced only after the motion is filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless one of the rule's limited exceptions applies. No such exception applies here.

The Employee Defendants repeatedly attempted to resolve these disputes without court intervention. Counsel met and conferred on at least four occasions regarding the deficiencies in ONB's discovery responses and productions. Bassett Decl. ¶¶ 5, 13, 18, 24. Counsel also exchanged extensive correspondence identifying the specific defects in ONB's responses and proposing practical solutions. *Id.* at Exs. C, F-J, M, N.

Despite those efforts, ONB continued to provide evasive and incomplete responses. ONB agreed to produce documents responsive to Request for Production 2, then limited its production to documents it considered "sufficient" to support its claims. Bassett Decl. ¶ 6; Ex. A; Ex. F. ONB later acknowledged the existence of a segregated repository of

more than 12,000 documents assembled during its investigation that had not been produced. *Id.* at ¶ 6; Exs. C, F. And ONB has repeatedly refused to identify the documents referenced in its First Amended Complaint, even after the Employee Defendants expended substantial effort attempting to locate those materials themselves and provided ONB with a specific list of documents that could not be identified. *Id.* at Exs. H, I, J.

Most significantly, ONB has refused to answer Interrogatories 3 through 7 and 11 through 14 based on the blanket assertion that the requests are "premature contention interrogatories," notwithstanding that ONB bears the burden of proof on those claims and already alleged specific facts in its First Amended Complaint. *Id.* at ¶ 24; Exs. K, L.

ONB's positions were not substantially justified, but the Employee Defendants acted reasonably and in good faith throughout the discovery process. Counsel identified specific deficiencies, proposed compromises, provided ONB multiple opportunities to supplement its responses voluntarily, and delayed motion practice while awaiting promised supplemental productions and answers. Bassett Decl. ¶¶ 5-6, 13, 18, 24. Only after months of unsuccessful efforts did the Employee Defendants seek judicial intervention.

Because ONB's incomplete responses and unjustified objections required this motion, Rule 37(a)(5)(A) mandates an award of reasonable expenses and attorneys' fees.

## **CONCLUSION**

For the foregoing reasons, the Employee Defendants respectfully request that the Court enter an Order:

1. Compelling ONB to serve a complete supplemental answer to Interrogatory No. 1 identifying all responsive investigative activities, locations searched, communications reviewed, persons interviewed, and responsive documents;
2. Compelling ONB to produce all nonprivileged documents responsive to Request for Production No. 2, including responsive materials assembled, collected, or reviewed during its investigation;
3. Compelling ONB to provide complete answers to Interrogatories 3 through 7 and 11 through 14 and to produce responsive nonprivileged documents corresponding to Requests for Production 3, 4, 14, and 15;
4. Compelling ONB to amend its response to Request for Production 12 to state whether responsive materials exist, and, if they do, to produce them;
5. Awarding the Employee Defendants their reasonable expenses, including attorneys' fees, incurred in bringing this Motion pursuant to Rule 37(a)(5); and
6. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 19, 2026

**SPENCER FANE LLP**

*<u>/s/ Heidi J. Bassett</u>*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

*Counsel for Employee-Defendants*