**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| OLD NATIONAL BANK,<br><br>Plaintiff,<br>v.<br><br>SARAH ADAMS, KASEY BERNU, YVETTE CAMPBELL, KIMBERLY ELLINGSON, RACHAL JOHNSON, MICHAEL MCCONKEY, SHARON VOLD, DANIEL YANTES, and BELL BANK,<br><br>Defendants. | ) | Case No. 0:25-cv-04636 (PJS/LIB) |

**ONB'S RESPONSE IN OPPOSITION TO THE**
**<u>EMPLOYEE DEFENDANTS' MOTION TO COMPEL</u>**

Plaintiff Old National Bank ("ONB"), by and through its undersigned counsel, responds in opposition to the Employee Defendants' Motion to Compel (Dkt. 99) and their Memorandum of Law in Support of Their Motion to Compel (Dkt. 101, the "Motion").

## PRELIMINARY STATEMENT

The Employee Defendants move to compel additional responses to Interrogatory No. 1 and Requests for Production Nos. 2 and 12, along with immediate answers to nine contention interrogatories. The Court should deny the Motion.

Interrogatory No. 1 asked ONB to describe the actions it took during its investigation and identify related documents. ONB provided a four-page narrative describing its review of electronic records, security footage, physical materials, and other sources, then supplemented its answer with the exact branch locations searched and the names of the employees interviewed. The Motion nevertheless asserts that ONB never

identified the offices, desks, or printer areas it examined, even though the attached supplemental response identifies those locations. The proposed order also seeks email custodians and category-specific Bates-number ranges that Interrogatory No. 1 never requested. A motion to compel cannot add questions after the responding party has answered the interrogatory as written.

Request No. 2 sought materials discovered during or otherwise relating to ONB's investigation. ONB produced the entire electronic folder assembled during that investigation, containing more than 12,800 documents. Its production also included the collected physical materials and every surveillance recording ONB collected or reviewed. Apart from documents identified on its privilege log, ONB withheld no documents collected as part of its investigation. The Employee Defendants identify no responsive investigative material that remains unproduced. Their proposed order instead demands complete footage from every camera at both branches on December 8, 2025, although Request No. 2 does not actually request those documents. Their demand for an explanation of ONB's investigative choices seeks testimony that no document request required.

Request No. 12 seeks the contents of trash, recycling, and shredding receptacles that were emptied through ordinary disposal after the Employee Defendants' departures. ONB's written response explained that it did not preserve those materials. ONB later confirmed that it possesses no responsive documents, and the Employee Defendants' counsel memorialized that confirmation in writing. The Motion asks the Court to compel ONB to repeat a fact the Employee Defendants already knew and acknowledged.

The nine contention interrogatories ask ONB to reconstruct the Employee Defendants' alleged misconduct defendant-by-defendant. They ask ONB to identify the protected information each person retained, transferred, disclosed, or used and to trace the resulting customer solicitations and interference. Other interrogatories ask ONB to describe private conversations through which four Employee Defendants encouraged their coordinated departure. Much of the evidence needed to provide those answers remains exclusively with the Employee Defendants and Bell Bank. Rule 33(a)(2) permits the Court to defer contention interrogatories until ONB receives the evidence needed to prepare them, and the Employee Defendants did not attempt to satisfy their burden of establishing that the contention interrogatories should be answered early in discovery. The Court should defer those interrogatories until near the end of the fact discovery period.

## LEGAL STANDARD

The Employee Defendants bear the burden on their motion to compel, and must show that each request seeks information relevant to a claim or defense and explain why ONB's response is deficient. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021); D. MINN. LR 37.1(b)–(d), (f). Failure to explain the asserted deficiency warrants denial. *Brinkman v. Summit Fire Protection Co.*, No. 19-cv-2981 (KMM/TNL), ECF No. 166, at 62–63 (D. Minn. Feb. 11, 2022).

The burden is different when a party seeks early answers to contention interrogatories. The propounding party must prove how an early response would advance discovery. *Vishay Dale Elecs., Inc. v. Cyntec Co.*, No. 8:07-CV-191, 2008 WL 4868772, at *5 (D. Neb. Nov. 6, 2008). Vague or speculative assertions are insufficient; the movant

must present "specific, plausible grounds" for finding that early answers will materially advance the goals of discovery. *Zubrod v. Hoch*, No. 15-2065, 2016 WL 1752770, at *7 (N.D. Iowa May 2, 2016).

## <u>BACKGROUND FACTS</u>

ONB alleges that Bell Bank and eight senior employees at ONB's Brainerd and Baxter branches planned their move to Bell while the employees still worked for ONB. The employees accepted Bell's offers in mid-November 2025, concealed their plans for nearly three weeks, and retained access to ONB's customer and loan systems during that period. On December 8, 2025, they entered the branches before business hours, removed boxes of materials, resigned together without notice, and immediately began working at Bell. ONB's customers began receiving solicitations to move their business to Bell within minutes of the resignations. (Dkt. 64, First Am. Compl. ¶¶ 1-12, 61-70, 87-99). Based on this conduct, ONB asserts claims for trade-secret misappropriation and breach of confidentiality, breach of fiduciary duty, aiding and abetting and civil conspiracy, tortious interference, and unjust enrichment. (*Id*. ¶¶ 108-168).

The First Amended Complaint identifies the information at issue by category and content. It includes nonpublic customer identities and contact information, account structures and balances, lending histories, loan terms and rates, maturity dates, credit profiles, pricing and profitability data, internal relationship notes and strategies, and compilations such as customer lists, call sheets, and pipeline reports. (Dkt. 64 ¶¶ 37, 110). ONB alleges that this information is unavailable from public sources, took years and

substantial expense to develop, and would allow a competitor to identify customers with particular banking needs, tailor its offers, and undercut ONB's rates. (*Id.* ¶¶ 38-42).

The First Amended Complaint connects those categories to activity reflected in ONB's systems. For example, on the morning of her departure, Campbell printed two copies of a spreadsheet containing thirteen customers' loan numbers, balances, maturity dates, loan status, income and financing needs, requested amounts, and key terms. ONB located one copy. (Dkt. 64 ¶ 74(a)). The complaint also identifies acquisition-financing and loan documents accessed or printed by McConkey, loan and closing files printed by Bernu, customer tax and account records printed by Vold, project-finance records accessed by Ellingson, and a matured-and-maturing-notes report accessed by Yantes. (*Id.* ¶¶ 76-80). Six Employee Defendants admitted in sworn statements that they stored ONB customer information on personal phones and retained it after joining Bell. (*Id.* ¶ 84). The complaint identifies customers whom Defendants admit contacting after their departure and alleges that ten accounts representing more than forty percent of ONB's commercial-loan business in the Brainerd-Baxter market were solicited within one week. (*Id.* ¶¶ 87-93).

Defendants moved to dismiss the First Amended Complaint. Among other arguments, they asserted that ONB had not identified its alleged trade secrets with sufficient specificity. (Dkt. 65-68). The Court denied the motion in full. (Dkt. 91).

The Employee Defendants served the contention interrogatories at issue on May 29, 2026. (*See* Dkt. 101). Those interrogatories seek a complete account of the Employee Defendants' own conduct. (Dkt. 102-12). They ask ONB to identify all information each Employee Defendant retained, took, transferred, used, or disclosed; when, how, and to

whom any disclosure occurred; every customer solicited; every contract or business expectancy affected; and the actions that Bernu, Yantes, McConkey, and Vold took to recruit other employees. (*Id.*).

ONB has sought that information through interrogatories directed to each Employee Defendant's own conduct. For months, the Employee Defendants withheld substantive answers to those interrogatories based on a numerosity objection. They have since withdrawn that objection. ONB has not yet received substantive answers to the interrogatories covered by those withdrawn objections.

## ARGUMENT

### I. THE EMPLOYEE DEFENDANTS CANNOT TURN INTERROGATORY NO. 1 INTO A ROLLING SERIES OF UNSERVED QUESTIONS.

Interrogatory No. 1 asked ONB to "describe all actions" it took to investigate the Employee Defendants' departure from ONB and transition to Bell Bank, and to identify documents relating to its answer. (Dkt. 102-2 at 3). ONB responded with a four-page narrative describing its collection and review of security footage, system-access records, printing logs, email records, web-activity logs, resignation communications, physical branch materials, policy materials, and other electronically stored information. (*Id.* at 9-12). ONB also identified the physical locations searched, the employees with whom it spoke, and the principal categories of documents relating to its investigation. (*Id.* at 10, 12).

The Employee Defendants contend that this answer omitted "entire categories of responsive information," but their motion never clearly identifies what additional answer

they believe Interrogatory No. 1 requires. (Dkt. 101 at 15). Their prayer for relief asks the Court to compel ONB to identify "all responsive investigative activities, locations searched, communications reviewed, persons interviewed, and responsive documents." (*Id*. at 23). The proposed order seeks different and more specific information: email custodians for accounts reviewed or searched, all communications with employees or customers regarding the departures, the scope and location of all physical materials reviewed, and Bates numbers for documents evidencing the investigation or its results. (Dkt. 104 at 1-2).

Interrogatory No. 1 did not seek this information. It asked ONB to "describe" the investigative "actions" it took. The examples included in the interrogatory identified subjects that could fall within that description, not separate accounts of the identities, dates, locations, scope, contents, results, and reasoning associated with each subject; instead, those additional questions emerged through dispute correspondence and meet-and-confer discussions between counsel, and now in their Motion.

Rule 33 requires a party to propound the questions it wants answered. A meet-and-confer discussion may clarify a request or explore a compromise. It does not amend an interrogatory or add subparts that were never served. Instead, courts apply Rule 33 according to the interrogatory's text.[1] In *Berry v. Hennepin County*, for example, the court denied further supplementation because the answer conveyed the information the

[1] In addition, Rule 33 requires an interrogatory to be answered "separately and fully." FED. R. CIV. P. 33(b)(3). Rule 33 counts "all discrete subparts" toward the numerical limit. FED. R. CIV. P. 33(a)(1). Permitting a party to append questions about the identities, dates, locations, scope, contents, results, and reasoning associated with each action after receiving the answer would defeat that limitation.

interrogatory requested, "albeit perhaps not with the level of detail" the movant desired. No. 20-CV-2189, 2023 WL 1777467, at *5 (D. Minn. Feb. 6, 2023). That court also rejected a later demand for the "substance" of activities identified in an answer because the interrogatory had not requested that substance. *Id.* at 17. Similarly, in *Aery v. Nohre*, the court denied several requests for additional incident details, explanations, and reasoning because the information demanded through the motion "was not part of the initial interrogatory." No. 22-CV-491, 2022 WL 17829714, at *6, 8 (D. Minn. Dec. 21, 2022).

ONB answered Interrogatory No. 1 as served. The Employee Defendants now demand information that either ONB already provided or that Interrogatory No. 1 never requested.

**A. ONB identified the physical locations and materials searched.**

The Employee Defendants claim that ONB failed to identify where it conducted its physical investigation. They therefore ask the Court to require ONB to identify "the scope and location of all physical materials reviewed from the Brainerd and Baxter branches." (Dkt. 104 at 1-2).

ONB's original answer stated that ONB assembled and reviewed materials from branch workspaces, "including materials located in offices, desks, printer areas, and other available locations." (Dkt. 102-2 at 5). During a meet-and-confer, the Employee Defendants requested that ONB supplement its answer to identify which desks and physical locations ONB searched. ONB agreed and supplemented accordingly. Nevertheless, the Employee Defendants now assert that "[n]o supplemental answer was provided to identify the desks and other areas ONB investigated." (Dkt. 101 at 9). They claim that ONB did not

say whether it examined "desks, printer areas, [or] offices." (*Id*. at 13-14). These assertions are demonstrably false.

On July 7, 2026—long before the Employee Defendants moved to compel—ONB served a supplemental answer specifying that the scope of its investigation included a review of physical files found in:

- "the Employee Defendants' former offices";
- "the Employee Defendants' former desks"; and
- "the printer areas in the Brainerd and Baxter branches."

(Dkt. 102-2 at 10).[2] Those are the precise locations the Motion says ONB omitted. ONB also described the scope of its physical review. It reviewed "physical files" and other available branch materials, compared them with electronic records, and assessed whether documents appearing in printing logs and other records remained at the branches. *Id*. ONB also produced all of the physical documents (after scanning them) found in its search.[3]

In short, ONB identified the locations searched, the categories of physical materials reviewed, the steps it took, and the purpose of that review. This fully answers Interrogatory No. 1, which asked ONB to "describe" its investigative "actions." A room-by-room or item-by-item inventory was not requested.

---

[2] Given that the Employee Defendants attach this supplemental answer to their motion, it is unclear why they claim ONB never provided it.

[3] ONB produced these documents, Bates labeled ONB00001722 - ONB00002249, on May 26, 2026. ONB confirmed in a May 28, 2026 email to Employee Defendants' counsel that the production "included all the documents found in or on the desks of the Employee Defendants after their departures."

### B. ONB identified the employee interviews.

In Interrogatory No. 1, the Employee Defendants listed "communications with employees" as one type of investigatory "action" they wanted ONB to "describe." (Dkt. 102-2 at 3). During the June 2 meet-and-confer, ONB again agreed to supplement its answer concerning employee communications. (Dkt. 101 at 8). ONB did so on July 7. Its supplemental answer states that ONB spoke with the following employees as part of the investigation: Brent Iserman, Anthony Loosbrock, Thad Olsen, Laura Schagel, Joyce Anderson, and Gary Johnson. (Dkt. 102-2 at 12). Nevertheless, the Employee Defendants' request for relief still asks the Court to compel ONB to identify the "persons interviewed." (Dkt. 101 at 23). As the Employee Defendants acknowledge elsewhere, ONB has already provided that information. (Dkt. 101 at 9).

The Employee Defendants also complain that ONB did not "describe any communications with employees" and, in the Proposed Order, they ask the Court to order ONB to identify "all communications with employees or customers regarding the departures." (Dkt. 101 at 9; Dkt. 104 at 1-2). But Interrogatory No. 1 asked ONB to "describe" its investigatory "actions;" it did not request a communication-by-communication inventory of every conversation ONB had concerning the Employee Defendants' departures. Nor did it ask ONB, for each such conversation, to specify the date, subject matter, participants, contents, information learned, or ONB's assessment of the exchange. ONB described the investigative action it took and supplemented its answer with the names of the employees involved. Employee Defendants' new demand for an accounting of communications adds questions that were never part of Interrogatory No. 1.

**C. ONB answered that it reviewed the Employee Defendants' emails.**

In Interrogatory No. 1, the Employee Defendants listed "searches of the Employee Defendants' email accounts" as one of the investigative "actions" they wanted ONB to describe. Accordingly, in its answer, ONB stated that one of its investigative actions was to review "email records … associated with the Employee Defendants." (Dkt. 102-2 at 9). ONB then explained that it assessed those materials to evaluate activity involving access, printing, retention, assembly, removal, transfer, or use of ONB information. (*Id*. at 9-10).

The Employee Defendants now complain that ONB "referenced 'email accounts' without identifying them." (Dkt. 101 at 13). The prayer for relief asks the Court to order ONB to identify the "communications reviewed" and the Proposed Order would require ONB to identify "email custodians for accounts Plaintiff reviewed or searched." (Dkt. 101 at 23; Dkt. 104 at 1-2). There are several problems with this request.

First, Interrogatory No. 1 did not ask ONB to identify particular email custodians. It asked ONB to "describe" the investigatory "actions" it took, with searches of the Employee Defendants' email accounts being an example of possible investigative activity. (Dkt. 102-2 at 3). Second, even if the interrogatory had asked ONB to identify the custodians, ONB *did so* by stating it reviewed email records "associated with the Employee Defendants." Third, as explained further below, during its investigation ONB assembled an electronic folder of documents to review. It did not review any electronic documents outside of that folder as part of its investigation. ONB has produced that *entire electronic folder*, which included emails from the accounts the Employee Defendants used while

employed at ONB. Accordingly, the Employee Defendants are well-aware of which email accounts ONB reviewed as part of its investigation.

### D. The Employee Defendants provide no reason to believe that ONB's answer is incomplete.

Interrogatory No. 1 listed "communications with customers" as another of the investigative "actions" they wanted ONB to describe. In its answer, ONB did not describe any part of its investigative actions as communications with customers. In the Motion, the Employee Defendants argue that ONB "failed to describe … customer communications despite counsel's promise to supplement."[4] (Dkt. 101 at 14). The Employee Defendants appear to presume that one of the "actions" ONB took to investigate the Employee Defendants' activities related to their departure from ONB was to communicate with customers about the issue. Based on that presumption, the Employee Defendants ask the Court to require ONB to identify "all communications with employees or customers regarding the departures." (Dkt. 104 at 1-2). But the interrogatory does *not* ask for the identification of all customer communications writ large; it asks only for customer communications that were part of ONB's investigation. Moreover, the Employee Defendants identify no such communications that formed part of ONB's investigation but were omitted from its answer. ONB described the investigative actions it took. There is no reason for the Employee Defendants to believe ONB's answer is incomplete.

[4] Exhibit J to the Motion shows that ONB's counsel agreed to ask ONB to supplement or amend its answer concerning employee and customer communications. (Dkt. 102-10 at 3). The Employee Defendants later recast that statement as "counsel's promise to supplement." (Dkt. 101 at 14). ONB never suggested that any such communications, in fact, existed.

### E. The interrogatory did not request a category-by-category Bates-number index.

The Employee Defendants' Bates-number demands illustrate their effort to expand Interrogatory No. 1 after ONB answered it. Their motion variously seeks identification of "which documents [ONB] identified as supposedly taken," the "specific materials supporting allegations in the First Amended Complaint," and the documents corresponding to particular allegations. (Dkt. 101 at 7, 13, 15). The Employee Defendants also complain that responsive documents were "buried" within ONB's production and they ultimately ask the Court to compel identification of all "responsive documents." (*Id*. at 8, 14, 23). The proposed order introduces another formulation. It would require ONB, "[t]o the extent" it identifies documents that "evidence its investigation or the results thereof," to provide Bates numbers allowing the Employee Defendants to locate them as readily as ONB, "consistent with the requirements of Fed. R. Civ. P. 33(d)." (Dkt. 104 at 2).

Interrogatory No. 1 asked ONB to describe the actions taken during its investigation and "identify all documents relating to [its] answer." (Dkt. 102-2 at 3). It did not divide that document request into subparts or ask ONB to provide separate Bates-number lists for each investigative action. Nor did it request lists organized by documents allegedly taken, by ONB's investigative conclusions, or by the allegations in the First Amended Complaint. Documents relating to investigative actions, documents supporting pleading allegations, and documents evidencing the investigation's "results" are different categories. The interrogatory asked only for the first category.

ONB answered Interrogatory No. 1 by identifying the principal document categories relating to its investigation. Those categories included branch security footage and security records; system-access records; printing, email, and web-activity records; documents referenced in those records; resignation communications; ONB policies and acknowledgment records; cease-and-desist correspondence; and other nonprivileged materials on which ONB may rely. (Dkt. 102-2 at 12).

The Employee Defendants did not request Bates number identification of responsive documents in Interrogatory No. 1. But if they had, the breadth of the interrogatory would make a single Bates-number identification largely unhelpful. Request for Production No. 2 sought every document discovered during or otherwise relating to the same investigation. ONB ultimately produced every nonprivileged document collected during that investigation, including the electronic investigative folder containing more than 12,800 documents. It also produced the physical materials found during its branch searches, relevant electronic records, and the surveillance footage it reviewed. A Bates-number response covering the documents "relating to" ONB's answer would therefore encompass the vast majority of everything ONB has produced.

Nevertheless, ONB offered during the meet-and-confer process to supplement Interrogatory No. 1 with the Bates range of the documents ONB produced in response to Request for Production No. 2.[5] The Employee Defendants stated that they instead wanted narrower ranges identifying particular groups of documents, including documents used to

[5] ONB00000001 to ONB00062824.

assess specific conduct and documents corresponding to individual allegations in the First Amended Complaint. Because Interrogatory No. 1 never asked for such an index, ONB refused to provide it; but even if the interrogatory had requested such an index, courts have rejected similar attempts to require a responding party to identify "all documents that exist" and itemize its production according to the requesting party's preferred categories. *See Berry v. Hennepin Cnty*., No. 20-CV-2189, 2023 WL 1777467, at *5 (D. Minn. Feb. 6, 2023).

The proposed order's reliance on Rule 33(d) is also misplaced. (Dkt. 104 at 2). That rule permits a responding party to answer an interrogatory by specifying business records from which the answer may be derived. ONB did not elect that option. It provided a narrative answer and identified the associated document categories. Rule 33(d) does not impose a Bates-number requirement whenever a narrative answer mentions documents, and it does not add subparts absent from the interrogatory served.

Accordingly, there is no basis for the Court to order ONB to provide the category-by-category Bates-number index that the Employee Defendants request.

**F. The Employee Defendants do not actually ask the Court to compel ONB to provide locations of and time periods of security footage.**

As part of "describing" its investigatory "actions," ONB stated in its interrogatory answer that "ONB assembled and reviewed branch security footage … for relevant locations and time periods." (Dkt. 102-2 at 9). The Employee Defendants now complain that ONB did not identify the relevant locations and time periods for the security footage

it reviewed.[6] (Dkt. 101 at 4). But Interrogatory No. 1 did not ask for the relevant locations and time periods for any surveillance footage. In any event, it does not appear that the Employee Defendants seek a supplemental interrogatory answer providing that information. Neither the prayer for relief nor the Proposed Order seek to require the disclosure of such information in response to Interrogatory No. 1.

Because ONB answered Interrogatory No. 1 as served, the Court should deny that portion of the Motion.

## II. ONB HAS FULLY RESPONDED TO REQUEST FOR PRODUCTION NO. 2.

The Employee Defendants' treatment of Request for Production No. 2 follows the same pattern as their treatment of Interrogatory No. 1. They served one broadly worded request seeking materials related to ONB's investigation. After ONB responded, the Employee Defendants used correspondence and meet-and-confer discussions to make additional, and increasingly specific, demands.

Request No. 2 seeks "[a]ll documents, communications, security camera footage, and any other tangible items discovered during or otherwise relating to [ONB's] investigation of the Employee Defendants' activities before and after their departure from ONB." (Dkt. 102-1 at 10). ONB ultimately produced every nonprivileged item it collected during that investigation, including the entire electronic investigative folder, all collected physical materials, and all surveillance footage ONB collected or reviewed as part of the

[6] The Employee Defendants make this argument even though the surveillance footage ONB produced has date, time, and location stamps.

investigation. The motion identifies no nonprivileged investigative material that remains unproduced.

Nevertheless, the Employee Defendants seek complete footage from every camera at the Brainerd and Baxter branches, whether or not ONB collected or reviewed it as part of the investigation. They also fault ONB for declining to answer questions posed during a meet and confer about why particular footage was obtained or reviewed. Request No. 2 sought materials connected to the investigation ONB conducted. It did not seek every source ONB *could have* investigated and it did not require a narrative explanation of ONB's investigative decisions.

### A. ONB has produced *every* nonprivileged document responsive to Request No. 2.

Request No. 2 asks for documents "discovered during or otherwise relating to your investigation"—a phrase that is susceptible to three possible interpretations. It could mean: (a) the documents ONB *collected* during its investigation; (b) the subset of collected documents that ONB actually *reviewed*; or (c) the smaller subset of reviewed documents on which ONB *based its claims*. ONB's production is complete under all three interpretations.

ONB initially lodged objections to the relevance of investigative documents other than those relied upon, and therefore initially produced only the investigative documents upon which it relied when filing this lawsuit. That construction reflected both the request's

ambiguity and ONB's objection that a document does not become relevant to a claim or defense merely because an ONB employee encountered it during an investigation.[7]

The Employee Defendants accuse ONB of "self-select[ing]" the documents it deemed sufficient in its initial production and limiting that production to what it was "willing" to produce. (*See* Dkt. 101 at 5, 14-15). In reality, ONB disclosed the scope of its response and the grounds for it in writing. Indeed, ONB expressly objected that Request No. 2 assumed every document "reviewed, collected, preserved, assembled, or otherwise encountered" during an investigation was relevant and discoverable. (Dkt. 102-1 at 10-11). ONB explained that an investigation may encompass materials bearing no connection to a claim or defense, and that disclosure of counsel-directed selections and compilations could reveal attorney work product. (*Id*. at 11). Subject to those objections, ONB agreed to produce nonprivileged documents sufficient to show the factual bases for its claims. (*Id*. at 11-12).

Later, ONB made a substantial concession that went far beyond producing the materials ONB reviewed or relied upon. ONB's counsel learned that ONB had compiled an electronic folder of over 12,800 documents as part of the investigation. ONB did not keep records of which documents within this folder had actually been reviewed as part of the investigation. Nevertheless, ONB agreed (without waiving its relevancy objections) to

---

[7] ONB's investigation is not itself a claim or defense. Materials ONB relied upon may be relevant, and other investigative materials may be relevant for independent reasons. But a document does not become relevant merely because ONB collected or reviewed it during the investigation. Relevance depends, instead, on the document's substance and connection to a claim or defense.

produce the entire folder because it was compiled as part of the investigation and therefore responsive to Request No. 2. Reviewing those documents for privilege and confidentiality consumed substantial time and expense. ONB undertook that burden to eliminate the parties' disagreement over which investigative materials fell within Request No. 2.

ONB completed the production on June 29, 2026, more than seven weeks before Employee Defendants filed their motion. (Dkt. 101 at 9). The production included *every* nonprivileged electronic document ONB collected as part of its investigation and, therefore, necessarily included every document it reviewed and every document on which it relied. ONB also produced all of the physical materials collected during the investigation. The only materials ONB withheld are several dozen privileged documents identified on ONB's privilege log.

Because ONB has produced every non-privileged document ONB collected, reviewed, or relied on as part of its investigation, there is nothing left for ONB to produce in response to Request No. 2.

### B. The additional surveillance footage now requested is not responsive to Request No. 2.

The Employee Defendants' surveillance-footage demand follows the same pattern as their other requests concerning ONB's investigation. Request No. 2 sought "security camera footage" that was "discovered during or otherwise relating to" ONB's investigation. (Dkt. 102-1 at 10). ONB has already produced all of the footage it reviewed or collected as part of its investigation. ONB's counsel confirmed this via email, explaining to the Employee Defendants that, "[f]or video, ONB reviewed what it produced." (Dkt.

102-10 at 2). The Employee Defendants now demand production of "complete, unedited surveillance footage from all [ONB] security cameras at the Brainerd and Baxter branches on December 8, 2025." (Dkt. 104 at 2).

The Employee Defendants are improperly attempting to expand the scope of Request No. 2. The request seeks only "security camera footage" that was "discovered during or otherwise relating to" ONB's investigation. (Dkt. 102-1 at 10). The words "complete," "unedited," "all security cameras," and "December 8, 2025" appear nowhere in that request. A motion to compel cannot supply terms omitted from a request. *See Jackson v. Minnesota Dep't of Hum. Servs.*, No. 20-CV-749, 2022 WL 1261690, at *10 (D. Minn. Apr. 28, 2022) (denying relief where the production sought through the motion was "considerably different in kind than the request Plaintiff in fact propounded.").

The Employee Defendants contend that ONB must have reviewed additional footage because it "could not select excerpts without reviewing more complete footage."[8] (Dkt. 101 at 13). Producing a clip does not establish that ONB reviewed all footage preceding or following it. The Employee Defendants offer no evidence for that inference, and their reasoning has no limiting principle. Every surveillance recording forms part of a larger archive. Under the Employee Defendants' theory, production of an excerpt would require production of the surrounding recording; production of that recording would then require still more footage, continuing until ONB produced the entire archive from every

[8] In reality, the "select[ed] excerpts" were the screenshots of surveillance footage that ONB attached to its TRO motion. By producing the surrounding footage, ONB already has produced the "more complete footage."

camera. Their speculation cannot expand Request No. 2 to footage ONB never collected or reviewed.

The Motion leaves unclear whether Employee Defendants seek footage ONB never collected or reviewed, or if they instead rely on speculation that ONB reviewed more than it produced. The first theory cannot be reconciled with Request No. 2. The phrase "otherwise relating to your investigation" refers to the investigation ONB conducted; it does not sweep in every item ONB *could have* investigated. Such a reading would erase the request's only boundary and encompass every document or recording that might in any way pertain to the Baxter and Brainerd branches. Rule 34 requires a request to "describe with reasonable particularity each item or category of items" sought. FED. R. CIV. P. 34(b)(1)(A). The test is whether the request gives reasonable notice of "what is called for and what is not." *Braun v. Hanson*, No. 18-CV-3355, 2020 WL 6042399, at *3 (D. Minn. Oct. 13, 2020) (quotations omitted); *see also Core & Main, LP v. McCabe*, No. 21-CV-1512, 2023 WL 5815840, at *4 (D. Minn. Sept. 8, 2023) (rejecting catchall requests that force a responding party to intuit what "pertains" to the subject matter of the case). Reading "otherwise relating to your investigation" to include materials that never entered the investigation would not give reasonable notice of what is called for.

Finally, even if it were proper to expand the scope of a discovery request through a motion to compel, surveillance footage no longer bears on any disputed issue. In support of its TRO motion, ONB submitted still images from branch surveillance footage to show that Employee Defendants entered before business hours and removed boxes or other containers before ONB could inspect them. (Dkt. 10 ¶¶ 52-54; Dkt. 10-1 at 23-27). Their

later sworn declarations acknowledge that each Employee Defendant gathered, packed, collected, or took belongings at a branch in connection with the departures. (Adams Decl. ¶¶ 13-15, Dkt. 23; Bernu Decl. ¶¶ 13-16, Dkt. 24; Campbell Decl. ¶¶ 33-34, Dkt. 25; Ellingson Decl. ¶¶ 38-40, Dkt. 26; Johnson Decl. ¶¶ 26, 30-32, Dkt. 27; McConkey Decl. ¶¶ 32, 34-36, Dkt. 28; Vold Decl. ¶¶ 19-23, Dkt. 29; Yantes Decl. ¶¶ 29-31, Dkt. 30). Their declarations eliminate any dispute over the act of removal. The footage shows only that act, and the Employee Defendants offer no explanation of any remaining issue it would help resolve.

In sum, ONB has already produced every nonprivileged item that it collected, reviewed, or relied upon as part of its investigation. Request No. 2 provides no basis to compel production of additional footage that remained outside the investigation.

**C. Request No. 2 did not require ONB to explain its decisions about which surveillance footage to review.**

The Employee Defendants accuse ONB of refusing to explain how the produced surveillance excerpts "were deemed relevant" and why the December 8 footage contained perceived gaps. (Dkt. 101 at 13-14). They support that accusation with ONB's counsel's statement during a meet-and-confer discussion that one of their inquiries "sounds like a good deposition question." (*Id*. at 14). Their argument improperly treats Request No. 2 as requiring both the production of footage and a narrative account of ONB's investigative decisions.

Request No. 2 sought surveillance footage and other tangible materials relating to ONB's investigation. (Dkt. 102-1 at 6). During the meet and confer, the Employee

Defendants' counsel first identified footage she believed was missing. She then asked why ONB had obtained and reviewed particular footage and why the footage contained perceived gaps. But Request No. 2 never asked ONB to explain those investigative decisions.[9] The meet-and-confer was addressing whether ONB had completed the production of *documents* called for by Request No. 2; questions concerning the reasons for ONB's investigative choices went beyond that issue. ONB's counsel correctly observed that such an inquiry was a deposition question, not a question counsel must answer during a discovery conference about a document production. (Dkt. 102-10 at 2).

The Employee Defendants nevertheless characterize counsel's statement during that discovery conference as a refusal to provide "an interrogatory answer." (Dkt. 101 at 14). They even cite *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 409 (D. Minn. 1995) and *Glick v. McKesson & Robbins*, 10 F.R.D. 477, 479 (W.D. Mo. 1950), for the proposition that a party cannot object to an interrogatory by saying that it is better suited for a deposition. But neither decision holds that a party must provide a narrative response to a ***request for production*** or that a question posed to counsel during a meet-and-confer somehow transforms into an interrogatory that the party must answer in writing.

Rule 34 authorizes requests for documents, electronically stored information, and tangible things. FED. R. CIV. P. 34(a)(1). It requires a written response stating whether

---

9 Nevertheless, as the Employee Defendants' own declaration confirms, ONB's counsel provided the information available to him. Counsel explained that ONB had provided the video files, that he had not reviewed them before production, and that he did not know the reason for the perceived gaps. (Dkt. 102 ¶ 13 at 5). The June 2 correspondence records ONB's answer concerning the scope of its review: "For video, ONB reviewed what it produced." (Dkt. 102-10 at 2).

production will occur and setting forth any objections. FED. R. CIV. P. 34(b)(2)(B). It imposes no duty to provide a narrative explaining why particular materials were collected, reviewed, or produced. A question first posed orally to counsel during a meet-and-confer is not an unanswered discovery request subject to a motion to compel.

## III. ONB ALREADY INFORMED THE EMPLOYEE DEFENDANTS IN WRITING THAT IT HAS NO DOCUMENTS TO PRODUCE IN RESPONSE TO REQUEST NO. 12.

Request for Production No. 12 seeks the contents of all shred bins, recycling bins, and other receptacles at ONB's Brainerd and Baxter branches from November 1 through December 8, 2025. (Dkt. 101 at 20; Dkt. 102-11 at 13). The Employee Defendants consider those materials important because ONB alleges that they printed documents shortly before their departures that ONB could not later locate. They contend that the documents remained at the branches and were discarded during ordinary business operations. For example, Campbell states that she placed certain customer documents in a shred bin, while McConkey states that he shredded a proposal after using it to assist an ONB underwriter. (Dkt. 94 ¶¶ 74(d)-(e), 76(a)). On their theory, the shred-bin contents might have supported their claim that the missing documents never left ONB.

ONB's response to RFP No. 12 explained why those materials no longer exist. Shred bins and garbage cans are designed to be emptied, and ONB does not preserve their contents as business records. The response expressly states that ONB "does not" preserve ordinary trash, recycling, or shredding-receptacle contents indefinitely. (Dkt. 102-11 at 13). It further explains that the Employee Defendants' coordinated departures without advance notice deprived ONB of any opportunity to secure or inspect the bins before their

contents were removed through routine disposal.[10] (*Id*. at 13-14). ONB therefore has nothing to produce in response to Request for Production No. 12.

The Employee Defendants knew before filing their Motion that ONB had no responsive documents. ONB confirmed that fact during the parties' meet-and-confer. Indeed, the Employee Defendants' counsel memorialized the confirmation in her July 16 email, included as an exhibit to the Employee Defendants' motion: "you confirmed that ONB has none of the requested documents." (Dkt. 102-14 at 4). She asked ONB to amend its response to repeat that fact. ONB reviewed its response and replied in writing that the response "already say[s] that ONB did not preserve the trash, recycling, or shred-bin contents." (*Id*. at 3). The Employee Defendants never replied that they still considered ONB's response unclear, and they never asked ONB to add any additional language. Instead, they proceeded to file a motion seeking an order that ONB state what they already knew and had acknowledged in writing.

In their Motion, the Employee Defendants invoke Rule 34(b)(2)(C), but that Rule requires an objection to "state whether any responsive materials are being withheld on the basis of that objection." (Dkt. 101 at 20) (citing FED. R. CIV. P. 34(b)(2)(C)). That rule does not require a responding party to state whether responsive materials "exist or ever existed," as the Employee Defendants now contend. ONB is withholding nothing in response to

---

[10] The Employee Defendants' decision to highlight this issue is surprising because their own account establishes that *they* destroyed the documents they now characterize as potentially exculpatory, and did so after they had accepted employment with Bell Bank and coordinated their mass exodus from ONB. (Dkt. 94 ¶¶ 61-63).

Request for Production No. 12, so Rule 34(b)(2)(C) is inapposite. ONB's written response, oral confirmation, and follow-up email communicated that fact.

Rule 26(e)(1)(A) likewise forecloses the Employee Defendants' demand for a formal amendment. Supplementation is required only when additional or corrective information "has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). ONB made the information known during the meet-and-confer and again by email. The Employee Defendants' own email confirms that they understood no responsive documents exist. There is nothing for the Court to compel.

## IV. THE COURT SHOULD DEFER INTERROGATORY NOS. 3-7 AND 11-14 UNTIL NEAR THE CLOSE OF FACT DISCOVERY.

Interrogatory Nos. 3-7 and 11-14 require ONB to state what each Employee Defendant allegedly did and identify the evidence supporting each allegation. ONB must identify what protected information each Employee Defendant acquired, retained, transferred, used, or disclosed; which customers each allegedly solicited; which contracts or business expectancies each allegedly interfered with; and how Bernu, Yantes, McConkey, and Vold allegedly encouraged the others to leave ONB and join Bell. The interrogatories also demand the method, date, recipient, factual basis, and supporting documents associated with each contention. (Dkt. 101 at 9-10).[11]

---

[11] The Proposed Order also would require ONB to "fully respond" to Requests for Production Nos. 3, 4, 14, and 15 or state that no responsive documents exist. (Dkt. 104 at 2). Those requests seek documents relating to the same contentions addressed by Interrogatory Nos. 3-7 and 11-14. Although the Motion refers to Requests Nos. 3 and 4 in

*– Footnote Cont'd Next Page…*

The information requested of ONB largely depends on evidence within the exclusive control and possession of the Defendants. Several Employee Defendants admit that they retained ONB customer names or contact information on their personal phones; yet, they have failed to identify those customers. Their devices and communications will show what information they retained, transferred, disclosed, or used. Bell Bank's records will show what information it received, how it used that information, and which ONB customers moved their business. Those productions remain incomplete, and ONB has not yet obtained the deposition testimony needed to explain the documents produced. Fact discovery remains open until September 30, 2027. (Dkt. 86 at 1).

Rule 33(a)(2) permits the Court to defer contention interrogatories until the discovery needed to answer them has been completed. Courts in this District regularly exercise that authority, and the Employee Defendants bear the burden of showing that earlier answers would materially advance discovery. Their motion identifies no deposition, deadline, or discovery task that depends on immediate answers. ONB's complaint survived their challenge to the specificity of its trade-secret allegations, and Defendants retain sole possession of evidence needed to determine the full scope of their alleged conduct. Requiring answers now would produce an incomplete account followed by repeated

---

connection with its demand for complete contention answers, it identifies no responsive document that ONB has withheld and develops no separate Rule 34 dispute. Requests Nos. 14 and 15 receive no discussion at all. The Proposed Order appears to treat these requests as requiring ONB to identify every document supporting its complete contentions. That is the same premature marshalling exercise required by their interrogatories. To the extent the Employee Defendants assert some independent deficiency in ONB's document production, they have not explained it or carried their burden under Local Rule 37.1(d) and (f).

supplementation as Defendants disclose the missing information. The Court should deny the motion and defer answers to the contention interrogatories until after substantial completion of fact discovery.

### A. Courts ordinarily defer contention interrogatories until later in discovery.

Rule 33(a)(2) provides that the Court may order a contention interrogatory "need not be answered until designated discovery is complete, or until a pretrial conference or some other time." FED. R. CIV. P. 33(a)(2). The Advisory Committee likewise recognized that mixed questions of law and fact may be "best resolved after much or all of the other discovery has been completed." *See* FED. R. CIV. P. 33 advisory committee's note to 1970 amendment.

Interrogatory Nos. 3-7 and 11-14 fall squarely within that rule. Interrogatories 3 and 4 ask ONB to identify "all" information it "contend[s]" was taken or used and, for each item, classify it, identify the responsible defendant, describe the means of acquisition or use, identify dates and recipients, and identify all related documents. (Dkt. 101 at 9). Interrogatories 5-7 demand "each and every" customer, contract, and business expectancy at issue, together with the actors, dates, manner, complete factual basis, and supporting documents. (*Id*. at 9-10). Interrogatories 11 through 14 ask ONB to describe the conduct it "allege[s]" constitutes inducement or solicitation and identify every related document. (*Id*. at 10). These are paradigmatic contention interrogatories.

Courts in this district regularly defer contention interrogatories until later in discovery. Indeed, deferral "until the end of fact discovery" is considered "the norm in civil

cases in this District." *Toyota Motor Sales, U.S.A., Inc. v. Allen Interchange LLC*, No. 22-CV-1681, 2025 WL 1006051, at *14 (D. Minn. Feb. 11, 2025), aff'd, 2025 WL 1520310 (D. Minn. May 28, 2025) (holding that an interrogatory asking why three specified terms in one Amazon listing constituted false advertising should be deferred until the end of fact discovery); *see also Smartmatic USA Corp. v. Lindell*, No. 22-cv-98, 2023 WL 6890929, at *7-8 (D. Minn. Oct. 19, 2023) (deferring ten contention interrogatories until the close of fact discovery "to minimize speculation and its attendant inefficiencies," while compelling only two discrete witness-and-factual-basis inquiries concerning specific historical allegations); *Bakambia v. Schnell*, No. 20-CV-1434, 2021 WL 4622250, at *10 (D. Minn. Oct. 7, 2021) ("[I]t is often appropriate for the answering party to wait until the end of discovery to provide a substantive answer to a contention interrogatory that is complete."); *Murphy v. Piper*, No. 16-2623, 2017 WL 11885690, at *2 (D. Minn. Aug. 21, 2017), aff'd 2017 WL 5633096 (D. Minn. Nov. 22, 2017) ("Given the nature of contention interrogatories, district courts have determined that contention interrogatories need not be answered until discovery is complete or nearing completion."); *In re Pemstar, Inc.*, No. 02-1821, 2004 WL 7400883, at *10 (D. Minn. Apr. 23, 2004) ("It is preferable that the parties agree to a time, much later in the course of discovery, when contention interrogatories must be answered, but that time is not now.").

Deferring contention interrogatories until the end of discovery is also the norm outside this district. *See, e.g., Eberline Oilfield Serv., Inc. v. Chad Eberline & All in One Oil Field Serv., Inc.*, No. 1:18-CV-245, 2023 WL 157404, at *9 (D.N.D. Jan. 11, 2023) (deferring contention interrogatories until the end of discovery in a former-employee and

trade-secret action); *Atwood v. Union Pac. R.R. Co.*, No. 8:21CV394, 2022 WL 17585893, at *6 (D. Neb. Dec. 12, 2022) (describing deferral of contention interrogatories until near the end of discovery as the "'wisest general policy'" and collecting cases); *Zubrod*, 2016 WL 1752770, at *7 (deferring contentions concerning particular complaint allegations because defendants controlled substantial evidence and offered no "specific, plausible grounds" showing that answers before depositions would materially advance the case); *Vishay*, 2008 WL 4868772, at *2 (denying early contention discovery where little discovery had occurred and holding that the requesting party must show how early answers will advance discovery).

### B. The Employee Defendants bear the burden of justifying early answers, and they have not carried that burden.

The ordinary burdens governing relevance do not resolve the timing question under Rule 33(a)(2). "[T]he burden is different for contention interrogatories." *Vishay*, 2008 WL 4868772, at *5. "'The party serving contention interrogatories bears the burden of proving how an earlier response assists the goals of discovery.'" *Id.* (quoting *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994)); *Zubrod*, 2016 WL 1752770, at *7 (same). *Zubrod* described the burden of the party serving contention interrogatories as follows:

> "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered. Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure. In the case where a defendant seeks responses to early contention interrogatories

> from a plaintiff, courts should be especially vigilant in evaluating the proffered justifications when the plaintiff's complaint is not facially infirm and the defendant appears to have control or adequate access to much of the evidence relevant to its alleged misconduct."

2016 WL 1752770, at *7 (quoting *Amgen Inc. v. Sandoz Inc.*, No. 14-CV-04741, 2016 WL 1039029 (N.D. Cal. Mar. 15, 2016), cleaned up).

Each consideration identified in *Zubrod* favors deferral here.[12] The Employee Defendants offer only general reasons why ONB's contention-answers will eventually matter, not why they need those answers *now*. ONB's complaint survived a motion to dismiss directed to the specificity of its trade-secret allegations. And much of the information needed to complete the answers concerns conduct undertaken by the Employee Defendants through their personal devices, communications, and Bell Bank's systems – sources within their control, which they have thus far denied to ONB.

1. *The Employee Defendants offer only vague or speculative reasons for requiring contention-answers now.*

None of the reasons offered by the Employee Defendants identifies a specific need for complete contention answers at this stage of discovery. Instead they merely explain why the requested information will *eventually* be relevant, or rely on a premise contradicted by the interrogatories and the existing record.

First, the Employee Defendants argue against deferral because the interrogatories seek only the "basic subject matter" of ONB's claims, rather than a "comprehensive

---

[12] While *Zubrod* is not binding on this Court, we have found no precedential appellate decisions regarding these issues. *Zubrod*'s logic is sound, so we would ask the Court to apply the same reasoning here.

narrative" marshaling every fact and legal theory. (Dkt. 101 at 16-17). That argument does not satisfy *Zubrod* because it does not explain why the Employee Defendants need answers "now." The Employee Defendants identify no deposition, deadline, or other discovery event that complete answers at this stage would materially advance.

Their argument also rests on a misreading of *In re Grand Casinos, Inc*. (Dkt. 101 at 16). The passage quoted in their Motion explains that "contention interrogatories" encompass "several types of questions." 181 F.R.D. 615, 618 (D. Minn. 1998). One type asks a party "to indicate what it contends." *Id*. Another asks a party "to state all the facts on which it bases its contentions." *Id*. The decision treats those as separate categories. An interrogatory may qualify as a contention interrogatory because it asks ONB to state what it contends, even if it does not demand every supporting *fact* and legal theory.[13]

The text of these interrogatories also belies the Employee Defendants' "basic subject matter" characterization. Interrogatories 3 and 4 seek "all" information allegedly retained, taken, transferred, used, or disclosed and require ONB to map each piece of information to an Employee Defendant, means of acquisition, use, disclosure, date, recipient, and supporting document. Interrogatories 5 through 7 demand "each and every" customer, contract, and business expectancy, together with the supporting factual and documentary chain. (Dkt. 101 at 9-10). Many of the requested facts also are outside ONB's knowledge. The interrogatories ask what the Employee Defendants retained, transferred,

---

13 Courts routinely defer contentions even narrower than the requests here. For example, *Toyota Motor Sales* deferred one contention about three terms in a single advertisement. 2025 WL 1006051, at *14.

used, disclosed, communicated, and did after leaving ONB – information solely within the possession of the Defendants, which they have not yet produced in discovery.

Second, the Employee Defendants argue against deferral because ONB supposedly should have known the requested facts when it filed suit, sought emergency relief, and amended its complaint. (Dkt. 101 at 16). Again, that assertion does not explain why they need complete answers "now." Moreover, their argument is simply wrong. The evidence necessary to support filing a claim is not the same as the evidence necessary to provide an exhaustive defendant-by-defendant account after discovery. ONB possessed evidence supporting its allegations, including unusual access and printing activity shortly before the coordinated departures, known retention of ONB information, and identified customer-related conduct. (Dkt. 64 ¶¶ 71-84). But ONB lacks access to the Employee Defendants' conversations, personal phones, their post-departure communications, Bell's systems, and Bell's customer records. The evidence available when ONB filed suit supported an inference of misappropriation, but it cannot reveal every item the Defendants retained or otherwise misappropriated.

Third, the Employee Defendants argue against deferral because ONB must answer from its "current knowledge" and supplement its answers as discovery proceeds. (Dkt. 101 at 17). Yet again, that general proposition does not explain why they need complete answers *now* or how provisional answers would materially advance discovery. The Employee Defendants' reliance on *Inline Packaging* does not support a different result. Although the *Inline Packaging* court denied a request to defer a contention interrogatory until the end of discovery, that case – unlike here – involved an interrogatory the party then

had the capacity to answer fully, without any discovery from the opposing party. *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183, 2016 WL 6997113 (D. Minn. Sept. 6, 2016) (ordering answer about the products the party contended were substitutes for particular food packaging). Here, by contrast, ONB lacks the information necessary to fully answer any of the Employee Defendants' contention interrogatories. Requiring repeated interim answers would force ONB to redo the same defendant-by-defendant analysis after each defense production and risk omitting conduct that remains concealed in Defendants' records.

Fourth, the Employee Defendants argue against deferral because the factual bases for specific complaint allegations are "presumptively discoverable." (Dkt. 101 at 17). That proposition addresses discoverability, not timing. ONB does not contend that the factual bases for its claims are immune from discovery, only that it should defer answering the contention interrogatories until later in discovery when it can provide complete answers. Moreover, the Employee Defendants' own authority contradicts their position. *Smartmatic* treated the requested information as discoverable but nevertheless deferred ten contention interrogatories until discovery had progressed. The only two interrogatories the court required to be answered earlier sought the identification of persons with knowledge.[14] *Smartmatic USA Corp. v. Lindell*, No. 22-CV-98, 2023 WL 6890929, at *8 (D. Minn. Oct. 19, 2023). Here, none of the contention interrogatories are limited to witness identification.

---

[14] ONB has already served extensive initial disclosures that included 37 pages identifying persons with knowledge and the subjects of their knowledge.

Fifth, the Employee Defendants argue against deferral because ONB bears the ultimate burden of proving its claims. (Dkt. 101 at 17-18). ONB's burden at summary judgment or trial does not explain why the Employee Defendants need complete contention answers *now*. Moreover, the Employee Defendants have it backwards. When the responding party bears the ultimate burden on the subject of the interrogatory, that circumstance *favors deferral* because the responding party bears the risk that its evidence will ultimately prove insufficient. In *Frank v. Gold'n Plump Poultry, Inc.*, the court permitted a defendant to defer contention answers in part because the interrogatories concerned "matters as to which the Defendant bears the burden of proof" and there was no realistic prospect that the plaintiffs would be "blind-sided" by waiting until after depositions. No. CV 04-1018, 2006 WL 8444696, at *3 (D. Minn. Aug. 16, 2006). The same reasoning applies here. ONB bears the consequences if, after discovery, it cannot identify and prove the trade secrets, customers, contracts, and expectancies supporting its claims. That burden supplies a reason to permit ONB to obtain the evidence necessary to formulate its contentions, not a reason to require incomplete answers before that evidence is produced.

The Employee Defendants' remaining burden-of-proof authorities likewise address what ONB must eventually plead or prove, not when contention interrogatories must be answered. (*See* Dkt. 101 at 17-18) (citing *Fox Sports Net N., L.L.C. v. Minnesota Twins P'ship*, 319 F.3d 329 (8th Cir. 2003) (motion for summary judgment); *Robertson v. Gov't Pers. Mut. Life Ins. Co.*, No. 21-CV-2236, 2022 WL 3348331, at *11 (D. Minn. Aug. 12, 2022) (motion to dismiss); *Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869 (D.

Minn. 2019) (motion to dismiss)). None addresses discovery sequencing under Rule 33(a)(2).

Sixth, the Employee Defendants argue against deferral because they supposedly need the information to distinguish alleged misconduct from ordinary banking and customer-service activity and to "understand and rebut" ONB's allegations. (Dkt. 101 at 18-19). That general desire to defend the case does not explain why they need complete answers *now*. The motion identifies no deposition, production, or other discovery event that cannot proceed without them. Moreover, the argument rings hollow because the Employee Defendants already know what constitutes protected information. The First Amended Complaint identifies ONB's nonpublic customer-identifying and contact data, customer financial and loan information, and the documents and compilations containing that information. (Dkt. 64 ¶¶ 37-48). It also identifies particular employees, documents they accessed or printed, and customer-related conduct.[15] (*Id.* ¶¶ 71-84).

Seventh, the Employee Defendants argue against deferral because ONB's current answers allegedly prevent them from determining whether contacted persons were ONB customers, whether contracts existed, whether business moved to Bell, and whether confidential information was used. (Dkt. 101 at 18-19). Those considerations do not

---

[15] The Employee Defendants' detailed merits responses further demonstrate their understanding. Their Motion explains why McConkey says he accessed proposal and loan-file materials and why Bernu says she printed loan-file and closing documents. (Dkt. 101 at 5-6, 18). Their declarations similarly describe materials they retained, customers they contacted, and their asserted reasons for those contacts. (*See* Dkts. 23-30). Their contention that those records were ordinary banking materials or that their conduct had an innocent explanation presents an ultimate dispute on the merits; it does not establish a need for complete contention answers now.

explain why the information must be supplied before discovery into the underlying contacts and transactions. Moreover, the Employee Defendants and Bell possess much of the information sought in the contention interrogatories. The Employee Defendants made the calls, sent the messages, and met with the people at issue. They know whether those people were customers they served while employed by ONB. Indeed, their principal defense is that they contacted these customers because of personal friendships and relationships, rather than through the use of ONB's confidential information. ONB cannot identify every contact or determine what information was used until the Employee Defendants and Bell produce their communications and customer records.

Eighth, the Employee Defendants argue against deferral because eight months have elapsed since ONB filed suit. (Dkt. 101 at 1-2, 19). Elapsed time alone does not provide the "specific, plausible grounds" required by *Zubrod*. The relevant question is whether a concrete discovery need or case deadline requires complete answers now. Moreover, the eight-month refrain obscures the actual timing of these requests. The Employee Defendants served Interrogatory Nos. 3-7 and 11-14 on May 29, 2026; ONB responded on June 26; and the Employee Defendants moved to compel on August 19. Fact discovery remains open until September 30, 2027. (Dkt. 86 at 1). The Motion identifies no scheduled deposition that cannot proceed, impending discovery cutoff, evidentiary risk, or other event affected by deferral.

Finally, the Employee Defendants argue against deferral because discovery supposedly "cannot proceed fairly" without complete answers. That generalized appeal to fairness does not identify any concrete discovery activity that depends on an immediate

answer. Moreover, the Employee Defendants and Bell can produce the relevant devices, communications, customer records, and account information, and the parties can take depositions concerning those materials. Allowing ONB to formulate complete contention-answers after that evidence is produced will avoid repeated revisions of incomplete responses.

In short, the Employee Defendants offer reasons why the requested information may *ultimately* matter, but no specific, plausible reason why complete answers *now* will materially advance discovery. Their assertions of elapsed time, prejudice, reciprocity, and fairness are precisely the "vague or speculative statements" that *Zubrod* holds insufficient.

2. *ONB's complaint is not facially infirm.*

*Zubrod* directs courts to be "especially vigilant" when a defendant seeks early contentions from a plaintiff whose complaint is not facially infirm. 2016 WL 1752770, at *7. That consideration has unusual force here because the Employee Defendants already litigated the sufficiency of ONB's trade-secret allegations. Their motion to dismiss devoted an entire section to the contention that ONB had failed to "adequately describe trade secrets or to plead facts showing use or disclosure." (Dkt. 67 at 9-17). They argued that ONB's categories were "so broad as to be meaningless," that the alleged secrets lacked adequate specificity, and that the pleading failed to give the Employee Defendants notice of what they had to defend. (*Id*. at 11-16). The Court rejected that challenge and denied the motion to dismiss. (Dkt. 91 at 2).

3. *The Employee Defendants and Bell control much of the evidence needed to complete the answers.*

Even if early answers to contention interrogatories may be appropriate in some cases, the circumstances here call for deferral. The interrogatories seek information about the Employee Defendants' own alleged misconduct. Complete answers will require evidence showing what each Employee Defendant carried away, whom each contacted, what each communicated, and how Bell Bank used the information. Discovery has already uncovered evidence supporting ONB's claims, but each disclosure has also raised factual questions that require further discovery before ONB can determine the full scope of the misappropriation. Any response served now would capture only part of the record and require substantial supplementation as the Employee Defendants and Bell Bank provide the missing information.

For example, Interrogatory Nos. 3 and 4 ask ONB to identify every item each Employee Defendant acquired, retained, transferred, used, or disclosed; assign the item to a particular defendant; and state the means, date, recipient, and supporting documents.[16] (Dkt. 101 at 9). In its pleading, ONB identifies the customer, contact, financial, and loan information it protects. To answer these interrogatories completely, ONB must determine which specific items within those categories each Employee Defendant took or retained, to

---

[16] The Employee Defendants claim that ONB's counsel admitted ONB "does not know what [its] trade secrets are." (Dkt. 101 at 18). In reality, plaintiff's counsel explained in a July 17 email that ONB "does not yet have a complete picture of all the trade secrets that the Employee Defendants misappropriated," which is why "the contention interrogatories regarding trade secrets are premature." (Dkt. 102-14). ONB's need for discovery to determine the full scope of Defendants' misappropriation says nothing about whether ONB can identify its trade secrets. Interrogatory Nos. 3 and 4 illustrate that.

whom any information was disclosed, and how it was used. The Employee Defendants have direct (and exclusive) knowledge of those facts, and their devices and communications will show what they transferred or used. And Bell Bank possesses the records showing which customers moved their business there.

As another example, the Employee Defendants produced emails in which Johnson and Ellingson, while still employed by ONB, circulated lists of ONB customers whom they expressly planned to call on their first day at Bell Bank. Those lists included customers they described as "centers of influence," meaning customers who could generate referrals. Because the Employee Defendants have yet to complete their production, ONB cannot determine whether their co-conspirators created or circulated comparable lists. The Employee Defendants also have not identified which ONB customers they called after joining Bell Bank. Any interrogatory answer served now would necessarily omit comparable lists that remain unproduced and solicitations that the Employee Defendants have not disclosed.

The notebooks produced by Campbell and McConkey raise related questions. Campbell's notebook contains a list of loans maturing in December, a "Top Hit List" of businesses, business names accompanied by loan amounts, interest rates and maturity dates, contacts at several businesses, and a "prospect list." McConkey produced a notebook page listing ONB customers and their contact information. The nature of these entries strongly suggests that the information was compiled while Campbell and McConkey worked at ONB. Their written discovery responses and deposition testimony will allow ONB to confirm when and how the information was compiled and determine whether it

was later used at Bell Bank. Without the forthcoming context to be provided by Campbell and McConkey, ONB cannot assess whether the content of their notebooks constitute ONB information that was retained or used by them, or any other Defendant.

Other emails identify another potential disclosure of ONB's competitive information. Before the resignations, Bell Bank asked the Employee Defendants how many online-banking relationships they had established for ONB commercial clients involving treasury-management services. Bell Bank also requested information about whether those ONB clients used cash-vault services or had unique arrangements, along with an estimate of how many customers the Employee Defendants expected to move to Bell during their first week. The Employee Defendants agreed to compile the requested information. The production has not yet disclosed a written transmission of their response.[17] It does show that Bell Bank scheduled a December 2, 2025, call with some Employee Defendants (during ONB work hours and while they remained employed by ONB) to discuss "Commercial Accounts." Completion of Defendants' document production and the relevant depositions are needed to determine what ONB competitive information the Employee Defendants conveyed during that call.

Johnson's separate "top 20" project presents the same need for further discovery from Bell Bank. Documents produced by the Employee Defendants reveal that, while still employed by ONB, Johnson assembled a list of the "top 20" ONB customers in the Baxter-

---

[17] ONB bases this statement on the first portion of the Employee Defendants' rolling production. The Employee Defendants recently produced additional documents, but ONB has not yet had an opportunity to review them.

Brainerd area, searched ONB's systems to determine which services those customers used, and emailed the resulting compilation to Bell Bank. That email establishes what Johnson disclosed to Bell Bank. However, ONB needs Bell Bank's remaining document production and testimony to determine how Bell used the compilation, including whether it circulated the information internally or used it in connection with customer solicitations or onboarding.

Other missing information remains within the Employee Defendants' possession. Several Employee Defendants admit that they retained ONB customer names or contact information on their personal phones after leaving. (Dkt. 23 ¶ 18; Dkt. 25 ¶ 37; Dkt. 26 ¶ 43; Dkt. 28 ¶ 39; Dkt. 30 ¶ 33). Their declarations do not, however, identify every ONB customer whose information remained on those phones. Only the Employee Defendants know what they retained, and ONB awaits the interrogatory answers and documents they agreed to provide after withdrawing their numerosity objections. Those responses concern the ONB information they retained and the customers they solicited, subjects that bear directly on Interrogatory Nos. 3-5.

The same allocation of information prevents ONB from completing the remaining contention answers. Interrogatory No. 5 asks ONB to identify every ONB customer solicited, the responsible Employee Defendant, the date, and the confidential information used. (Dkt. 101 at 9-10). The Employee Defendants know whom they called, texted, emailed, or met after leaving. They know which relationships arose from their ONB portfolios. Bell's onboarding and account records identify the customers whose business moved and when. Once Defendants identify the contacts, ONB can confirm customer status

and locate the corresponding agreements. ONB cannot discover every contact by searching its own records.

Interrogatory Nos. 6 and 7 ask ONB to identify each affected contract or expectancy and explain which Employee Defendant procured a breach or interfered with the relationship. (Dkt. 101 at 10). The evidence showing whom the Employee Defendants targeted, what they said, which relationships moved to Bell, and whether ONB information was used resides in Defendants' communications and Bell's records. Bell already knows whose business it received; ONB does not (yet).

Similarly, Interrogatory Nos. 11-14 concern actions allegedly taken by Bernu, Yantes, McConkey, and Vold to encourage the other departures. The relevant conversations occurred among the Employee Defendants and Bell. Their messages, calls, meetings, and testimony will establish who said what. ONB cannot provide a complete account of those private communications before the participants produce them and testify about them.

Requiring ONB to answer now and supplement after each new disclosure would impose a substantial recurring burden on ONB without conferring a meaningful benefit on the Employee Defendants. ONB has identified the relevant categories of information in its pleadings. The Employee Defendants already know what information they retained and disclosed, and Bell Bank knows what it did with the information it received. A provisional response would largely repeat what Defendants already know from the First Amended Complaint and then require ONB to prepare and verify additional answers as the Defendants disclose the missing details. Without deferral, ONB would have to revise its

answers continually as it reviews documents and obtains testimony. Each new production or deposition could require another amendment, turning ONB's response into a running report of ongoing discovery. And if past is prologue, the intervals between supplements would give Employee Defendants an opportunity to manufacture collateral disputes over whether a newly identified fact should have appeared earlier.

*Zubrod* directs heightened scrutiny where defendants control or have adequate access to much of the evidence concerning their alleged misconduct. 2016 WL 1752770, at *7. That is the situation here. The Employee Defendants seek exhaustive answers about information *they* retained, communications *they* sent, people *they* contacted, and conduct carried out through *their* devices and systems unavailable to ONB. Their motion offers no specific, plausible ground for requiring ONB to provide contention-answers before Defendants produce the evidence required for ONB to competently answer. The Court should defer ONB's further answers to the contention interrogatories until after more substantial discovery has been completed.

**C. ONB's remaining objections are not before the Court.**

In addition to prematurity, ONB asserted other objections to Interrogatory Nos. 3-7 and 11-14. (Dkt. 102-12). The Employee Defendants ask for "complete answers," but their motion challenges (and their memorandum addresses) only ONB's request for deferral. (Dkt. 101 at 15-19). The Employee Defendants do not identify ONB's remaining objections as issues for decision or explain why they are improper. Local Rule 37.1 requires the movant to state why each disputed objection is insufficient and why the requested remedy is justified. D. MINN. LR 37.1(d), (f). The parties also did not confer about ONB's

remaining objections. Rule 37 requires a genuine effort to resolve each discovery dispute presented to the Court. FED. R. CIV. P. 37(a)(1); D. MINN. LR 37.1(a).

Accordingly, any decision overruling ONB's prematurity objections should extend only to those objections. The present record does not support an order compelling complete answers because such an order would ignore objections the Employee Defendants never briefed or discussed with ONB.

## V. THE COURT SHOULD DENY THE EMPLOYEE DEFENDANTS' FEE REQUEST AND AWARD ONB ITS EXPENSES.

ONB's positions were substantially justified because Rule 33(a)(2) authorizes deferral of contention interrogatories and its other responses accurately described its productions and responsive materials. The Employee Defendants therefore cannot recover expenses. FED. R. CIV. P. 37(a)(5)(A)(ii). If the Court denies the motion, Rule 37 requires an award of ONB's reasonable expenses, including attorney's fees, unless the motion was substantially justified or other circumstances would make an award unjust. FED. R. CIV. P. 37(a)(5)(B). The motion was not substantially justified and ONB knows of no circumstances that would make an award unjust.

## CONCLUSION

For these reasons, ONB respectfully requests that the Court deny the Employee Defendants' Motion in full and award ONB its reasonable expenses incurred in opposing the Motion under Rule 37(a)(5)(B).

Dated: August 26, 2026

Respectfully submitted,

**OLD NATIONAL BANK, Plaintiff**

By: *<u>/s/ Mack H. Reed</u>*

One of Its Attorneys

Mack H. Reed (398703)
JACKSON LEWIS P.C.
150 South Fifth Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 341-8131
mack.reed@jacksonlewis.com

and

Christopher S. Griesmeyer (IL No. 6269851, *pro hac vice*)
Zachary Mulcrone (IL No. 6300387, *pro hac vice*)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Phone: (312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com