**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| OLD NATIONAL BANK,<br><br>Plaintiff,<br>v.<br><br>SARAH ADAMS, KASEY BERNU, YVETTE CAMPBELL, KIMBERLY ELLINGSON, RACHAL JOHNSON, MICHAEL MCCONKEY, SHARON VOLD, DANIEL YANTES, and BELL BANK,<br><br>Defendants. | ) | Case No. 0:25-cv-04636 (PJS/LIB) |

**ONB'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM THE EMPLOYEE DEFENDANTS**

Plaintiff Old National Bank ("ONB"), by and through its undersigned counsel, submits this memorandum in support of its motion to compel supplemental interrogatory answers from Defendants Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, and Daniel Yantes (the "Employee Defendants" or the "Employees").

## PRELIMINARY STATEMENT

The Employee Defendants finally agreed to provide answers to the interrogatories ONB propounded in April 2026. Unfortunately, they provided only partial answers and limited their responses to what they remember instead of conducting a reasonable investigation. Their answers leave many customer contacts unexplained and omit the dates when customers began banking with Defendant Bell Bank ("Bell"). Those gaps prevent ONB from tracing the movement of customer business at issue in this case.

Seven Employee Defendants acknowledge storing customer telephone numbers without providing the numbers themselves. ONB needs the actual numbers and email addresses used to match customers with communication records and locate omitted exchanges. The Employee Defendants also fail to identify all responsive devices and accounts or determine when customer information was saved. Available phone records and account histories can help supply the missing information. The Court should require complete, verified answers to ONB's Interrogatories Nos. 9-11 after reasonable inquiry, with an explanation of any information the Employee Defendants remain unable to obtain.

## LEGAL STANDARD

Rule 26(b)(1) permits discovery of nonprivileged information relevant to a party's claim or defense and proportional to the needs of the case. The proportionality analysis considers, among other factors, the parties' relative access to information, the discovery's importance in resolving the issues, and whether its likely benefit justifies the burden or expense. FED. R. CIV. P. 26(b)(1).

Each interrogatory must, to the extent it is not objected to, be answered "separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). Rule 26(g)(1) requires counsel to conduct a reasonable inquiry before signing discovery responses and objections. Counsel must make a reasonable effort to ensure that the client has supplied the responsive information and documents available to the client. FED. R. CIV. P. 26 advisory committee's note to 1983 amendment.

Objections must state their grounds with specificity. FED. R. CIV. P. 33(b)(4). A party asserting undue burden must identify facts showing the nature and extent of that

burden. *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512, 515-16 (D. Minn. 1992). As this Court explained, "intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *Id.* at 515.

Rule 37(a)(3)(B)(iii) authorizes an order compelling answers when a party fails to answer an interrogatory. For that purpose, an evasive or incomplete answer must be treated as a failure to answer. FED. R. CIV. P. 37(a)(4).

## BACKGROUND FACTS

### A. ONB'S CLAIMS

ONB alleges that Bell and eight employees of ONB's Brainerd and Baxter branches coordinated the employees' departure and the transfer of ONB customer relationships to Bell. According to the First Amended Complaint, the employees left ONB on December 8, 2025, began working for Bell, and contacted ONB customers about moving their business. ONB identifies particular customer contacts and alleges that Bell encouraged the conduct and then benefited from the resulting transfer of business. (Dkt. 64 ¶¶ 61-70, 87-103). ONB asserts claims based on misappropriation, tortious interference, and unjust enrichment, and seeks relief for lost customer business and benefits Bell obtained. (*Id.* ¶¶ 108-124, 152-168).

### B. ONB'S DISCOVERY REQUESTS AND THE EMPLOYEE DEFENDANTS' RESPONSES

ONB served its First Set of Interrogatories to the Employee Defendants on April 8, 2026. (*See* Mulcrone Declaration, **Exhibit A** at 28). Defendants' original answers are dated May 8, and their Second Supplemental and Amended Answers are dated September 29.

Each Employee's original and supplemental answers are combined in a single exhibit and incorporated herein:[1]

- **Exhibit B**: Sarah Adams
- **Exhibit C:** Kasey Bernu
- **Exhibit D**: Yvette Campbell
- **Exhibit E**: Kimberly Ellingson
- **Exhibit F**: Rachal Johnson
- **Exhibit G**: Michael McConkey
- **Exhibit H**: Sharon Vold
- **Exhibit I**: Daniel Yantes

Interrogatory No. 9 seeks details about customer contacts and resulting Bell relationships. No. 10 identifies the devices and accounts used for the specified communications or to obtain customer contact information. No. 11 asks what customer information defendants retain and when they saved it. (Ex. A at 21-23). The September supplements supply partial answers while preserving objections to the requests. (Exs. B-I, Supp. Ans. Nos. 9-11). ONB seeks further answers to Interrogatory Nos. 9 and 10 from all eight Employee Defendants, and further answers to Interrogatory No. 11 from the Employee Defendants other than Vold.

## C. THE PARTIES MET AND CONFERRED

On May 19, 2026, counsel for ONB (Zach Mulcrone) and the Employee Defendants (Heidi Bassett) participated in a meet-and-confer via Microsoft Teams concerning the Employee Defendants' interrogatory responses, including the responses to Interrogatory Nos. 9-11. Afterwards, counsel exchanged extensive emails concerning the responses over

[1] Citations distinguish the original answers ("Orig. Ans.") from the September 29 supplements ("Supp. Ans.") and use the page numbers printed on each component.

several months, and the Employee Defendants ultimately agreed to withdraw the numerosity objections. On September 11, Mr. Mulcrone and Ms. Bassett again discussed, orally during a remote conference, the Employee Defendants' incomplete interrogatory responses. On October 7, after the Employee Defendants supplemented their responses, ONB emailed their counsel explaining that "the supplements still provide only a subset of the requested information." ONB expressly invited another discussion: "If you would like to meet and confer again, we are happy to do so on October 8 or 9." The Employee Defendants did not accept that invitation. (**Exhibit J**).

## ARGUMENT

### A. THE EMPLOYEE DEFENDANTS MUST ANSWER BASED ON A REASONABLE INQUIRY AND REVIEW OF AVAILABLE RECORDS.

The Employee Defendants expressly rely on their recollection in answering Interrogatory No. 9. Adams, Bernu, Campbell, Ellingson, Johnson, McConkey, and Yantes each state: "I do not recall the specific date and method of every communication I have had with people who are, or used to be, ONB customers." Each then introduces the customer list with "From memory, I recall." (Exs. B-G & I, Supp. Ans. No. 9 at 3). Vold likewise states, "I cannot recall any particular communications I have had with ONB customers."[2] (Ex. H, Supp. Ans. No. 9 at 3).

The Employee Defendants other than Vold also rely on a lack of recollection in answering Interrogatory No. 11. Although they acknowledge retaining customer names and

[2] Vold follows her statement with an assertion that she "did not contact any customers after [she] left ONB," suggesting that customers potentially reached out to her rather than her reaching out to them.

telephone numbers, each states: "I do not recall the dates on which I first saved their names and phone numbers." (Exs. B-C & E-G, Supp. Ans. No. 11 at 5; Exs. D & I, Supp. Ans. No. 11 at 6). Their answers identify no examination of contact histories or other available records that could supply those dates.

Rule 26(g)(1) requires a reasonable inquiry. ONB's Instruction 1 likewise requires defendants to provide available information and explain any inability to answer after exercising due diligence. (Ex. A at 11). In *Murphy by Murphy v. Piper*, the Court affirmed an order requiring an official-capacity defendant to make reasonable efforts to obtain responsive information and, if unable to answer, to "set forth in detail the efforts made to obtain the information" under oath. 2017 WL 5633096, at *2 (D. Minn. Nov. 22, 2017).

The Court applied the same principle to personal-phone communications in *In re Pork Antitrust Litig*. Addressing assurances unsupported by an examination of the phones, the Court granted a motion to compel, observing: "No evidence suggests that anything was done to test their memories." 2022 WL 972401, at *10 (D. Minn. Mar. 31, 2022). Here, the Employee Defendants admit using their phones for responsive communications and retaining customer information on those devices. Reviewing the available records could identify additional communications and supply details omitted from their answers.

That inquiry should include reviewing phone histories and obtaining available carrier records. In *Clark v. Hickory Treatment Ctr.*, the court ordered a party to supplement an interrogatory identifying communications with "accurate information including the text messages and phone call logs/records." 2026 WL 1328527, at *3 (N.D. Ind. May 13, 2026). Similarly, the court in *Stolz v. Travelers Commercial Ins. Co.* required a party and his

counsel to obtain and review cell phone billing statements, among other records, before supplementing interrogatory answers. 2019 WL 4392446, at *7 (E.D. Cal. Sept. 13, 2019). Defendants can compare those records with saved contacts and messages to identify omitted communications and supply the missing dates.

The Employees' boilerplate burden objections supply no factual basis for dispensing with that inquiry. (Exs. B-I, Supp. Ans. Nos. 9-11). An objecting party must identify facts demonstrating the nature and extent of the asserted burden. *Mead*, 145 F.R.D. at 515-16.

For these reasons, the Court should require the Employee Defendants to review reasonably available sources, provide the responsive information they obtain, and explain under oath any remaining inability to answer.

### B. THE EMPLOYEE DEFENDANTS SHOULD BE REQUIRED TO ANSWER INTERROGATORY NO. 9 IN FULL.

ONB seeks complete answers to Interrogatory No. 9, which provides:

> For the time period from the date of your resignation from ONB, through the present, identify each and every ONB client who you (directly or indirectly) contacted or attempted to contact, or with whom you communicated or attempted to communicate. For each client identified in your answer:
>
> (a) Identify the date(s) and method (e.g., via email, text message, correspondence, announcement, telephone, videoconference, social media posting, in-person meeting, etc.) of each such contact, attempted contact, communication, or attempted communication;
>
> (b) Describe in detail how you obtained the contact information (and any other Confidential Information) utilized to contact, attempt to contact, communicate with, or attempt to communicate with the client; and
>
> (c) Identify whether the client has a customer relationship with

> Bell and, if so, identify the date their customer relationship with Bell began.

(Ex. A at 21). In response, the Employee Defendants (other than Vold) identify customers and provide some information about communications and Bell relationships.[3] Their answers, however, leave the requested identifying information, dates, methods, sources of contact information, and Bell relationship dates incomplete. Each maintains boilerplate burden objections, raises additional objections to the request's scope, and conditions a complete answer on ONB identifying customers relevant to its claims.[4] The Court should require each of the Employee Defendants to provide a full answer.

**1. The Employee Defendants' objections should be overruled.**

Each of the Employee Defendants' objections to Interrogatory No. 9 should be overruled. Each Employee Defendant objects that Interrogatory No. 9 is "overbroad, unduly burdensome, and disproportionate to the needs of the case," asserting that they "cannot know whether ONB considers any particular individual or business to be a 'client.'" (Exs. B-I, Supp. Ans. No. 9 at 2). These boilerplate assertions of burden do not state valid objections. As this Court explained, "intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection." *Mead*, 145 F.R.D. at 515. The objection must state facts demonstrating the nature and extent of the burden.

---

[3] Vold claims not to remember any customer communications but, as explained above, she should be required to consult her records.

[4] Supp. Ans. No. 9: Ex. B (Adams) at 3; Ex. C (Bernu) at 3; Ex. D (Campbell) at 3-4; Ex. E (Ellingson) at 3-4; Ex. F (Johnson) at 3-4; Ex. G (McConkey) at 3-4; Ex. I (Yantes) at 3-5. Each Employees' objections appear at pages 2-3 of his or her supplemental answers.

*Id*. at 515-16. The Eighth Circuit likewise requires grounds that are "specific and factual." *Vallejo v. Amgen, Inc*., 903 F.3d 733, 743 (8th Cir. 2018) (quotations omitted).

The Employee Defendants object that answering would require them to reconstruct every interaction with an ONB customer over more than nine months, including passing greetings, and determine whether and when each customer began banking with Bell. (Exs. B-I, Supp. Ans. No. 9 at 2-3). They do not, however, explain how long it would take to review their records for that information or what the review would cost. Those concerns also fail to explain why their answers omit available details about communications they have otherwise identified.

As to their objection that they do not know which contacts are ONB customers, defendants can review their contact records and identify the people and businesses they recognize as customers. Definition 15 ties customer status to relationships known to the responding defendant or another Employee Defendant as of the responding defendant's departure, subject to the stated former-customer exception. (Ex. A at 4). Consulting one another can resolve uncertainty about particular entries. If that review and inquiry provides no basis to identify a contact as an ONB customer, defendants need not list that contact.

With respect to the objection that this interrogatory "is not relevant to any party's claims or defenses, as 'contact' with a purported ONB client is not prohibited by the law," the timing and circumstances of those contacts bear directly on ONB's allegations that defendants used its information to solicit customers and transfer their business to Bell. (Exs. B-I, Supp. Ans. No. 9 at 2). The requested information also permits ONB to test defendants' explanations that the contacts arose from personal relationships.

All eight Employee Defendants object that "Confidential Information" is "vague, ambiguous," and broader than what they understood ONB to consider confidential during their employment. (Exs. B-I, Supp. Ans. No. 9 at 2). The original answers specifically challenge the reference to information a bank "is required to safeguard and protect." (Exs. B–I, Orig. Ans., Gen. Obj. No. 3 at 2). ONB has instructed defendants, during a meet-and-confer, to disregard that language and answer ONB's interrogatories using the specific categories of information listed in the definition of Confidential Information. Those categories describe in detail the information covered, including customer contact information and specified financial and banking information. (Ex. A at 4-5). The Employee Defendants can apply those categories and explain where they obtained the information they used without deciding whether ONB was legally required to protect it or conceding that they understood it to be confidential during their employment.

**2. The Employee Defendants must provide complete customer identities and the contact information used.**

Interrogatory No. 9 requires the Employees to "identify each and every ONB client" they contacted or attempted to contact, or with whom they communicated or attempted to communicate, after leaving ONB. Definition 25 calls for identifying details, including full names when known, business affiliations, and telephone numbers and email addresses. (Ex. A at 8, 21).

The answers do not provide the telephone numbers or email addresses used to contact the customers identified. (Exs. B & C, Supp. Ans. No. 9 at 3; Exs. D-G, Supp. Ans. No. 9 at 3-4; Ex. I, Supp. Ans. No. 9 at 3-5). Moreover, some individual contacts are

identified only by first name and affiliation.[5] The Employee Defendants should supply full names available from their records, along with the omitted contact information, so ONB can identify and locate the customers and potential witnesses.

ONB needs the actual telephone numbers and email addresses used for each contact or attempted contact, including any different numbers or addresses used in later exchanges. Those details permit ONB to match customers to call logs and email headers and locate communications. ONB can then test the Employees' descriptions of the contacts and investigate whether they solicited business for Bell. The Employee Defendants should review their saved contacts and communication records to supply the missing information and explain what remains unavailable after that review.

**3. The Employee Defendants must identify the date and method of each responsive communication.**

Subpart (a) requires "the date(s) and method" of "each such contact, attempted contact, communication, or attempted communication." (Ex. A at 21). Although the Employee Defendants provide dates and methods for some contacts, they do not identify when and how each responsive communication occurred. (Exs. B & C, Supp. Ans. No. 9 at 3; Exs. D-G & I, Supp. Ans. No. 9 at 3-4).

The dates permit ONB to compare the timing of customer contacts with defendants' departures and the transfer of business to Bell. Identifying how each communication occurred helps ONB locate corroborating records and determine who initiated the

[5] For example, McConkey identifies "Matt and Eric" at a particular plumbing company and "Shane" at a particular organization. (*See* Ex. G, Supp. Ans. No. 9 at 3-4). But he provides no surnames or contact information.

exchange. Customer-initiated communications and unsuccessful contact attempts also fall within the request. Those details bear on defendants' explanations that customers approached them independently or that their contacts arose from personal relationships.

Defendants should review their call records and written communications to identify the missing dates and methods. Where an exact date remains unavailable, Definition 22 permits "the best approximation," including a description of its relationship to other events, identified as an approximation. (Ex. A at 8).

**4. The Employee Defendants must explain how they obtained the information used to contact each customer.**

Subpart (b) requires the Employee Defendants to "[d]escribe in detail how [they] obtained the contact information" used for each customer. (Ex. A at 21). Although defendants describe their relationships with customers, their answers do not identify where they obtained the particular telephone numbers and email addresses used for each customer. (Exs. B & C, Supp. Ans. No. 9 at 3; Exs. D-G, Supp. Ans. No. 9 at 3-4; Ex. I, Supp. Ans. No. 9 at 3-5).

The source of that information bears directly on ONB's misappropriation claims. ONB needs to know whether the Employee Defendants possessed the information before joining Bremer, acquired it through their work at Bremer/ONB, received it from family members, or found it on the internet. The Employees emphasize their personal relationships with many customers. Identifying the source for each customer will allow ONB to test that explanation and determine whether the Employee Defendants used information obtained through their employment and retained after departure.

**5. The Employee Defendants must identify Bell relationships and the dates they began.**

Subpart (c) asks whether each customer "has a customer relationship with Bell" and, if so, "the date their customer relationship with Bell began." (Ex. A at 21). The Employee Defendants identify certain customers who now bank with Bell without providing the dates those relationships began. (Exs. B & C, Supp. Ans. No. 9 at 3; Exs. D-G, Supp. Ans. No. 9 at 3-4; Ex. I, Supp. Ans. No. 9 at 3-5).

Each Employee Defendant objects that answering would require them to "separately investigate and report whether that person has since opened an account at Bell Bank and when," calling this "not a proportional discovery request." (Exs. B-G & I, Supp. Ans. No. 9 at 3; Ex. H, Supp. Ans. No. 9 at 2). Their answers do not describe any request to Bell for that information, identify any restriction preventing them from obtaining it, or provide facts showing the burden of obtaining the account-opening information from Bell. The Employees should review available onboarding correspondence and ask Bell, their employer and codefendant, to confirm whether each customer opened an account and when.

ONB needs this information to determine which business moved and compare the timing with defendants' communications, matters that bear directly on causation and damages. The answers should distinguish an individual's relationship from an associated business's relationship wherever that remains unclear. Any information that remains unavailable after inquiry should be identified and explained.

### C. THE EMPLOYEE DEFENDANTS SHOULD BE REQUIRED TO ANSWER INTERROGATORY NO. 10 IN FULL.

ONB seeks complete answers to Interrogatory No. 10, which provides:

> Identify each and every electronic device, account, and information service that you have utilized to:
>
> (a) Communicate with any ONB client or Employee Defendant concerning your (or their) actual or potential departure from ONB and/or employment at Bell; or
>
> (b) Obtain or access the contact information for any ONB client that you contacted or attempted to contact on or after the date of your resignation.

(Ex. A at 22).

Each Employee Defendant identifies a cell phone, and all except Vold also identify a Bell email account. Their answers omit the details needed to identify those devices and accounts and do not address the devices, accounts, or services used to obtain customer contact information. (Exs. B, C & E, Supp. Ans. No. 10 at 4; Exs. D, F, G & I at 5; Ex. H at 3).

#### 1. The Employee Defendants' objections should be overruled.

The Employee Defendants object that Interrogatory No. 10 is "overbroad, unduly burdensome, and disproportionate to the needs of the case." (Exs. B, C & E, Supp. Ans. No. 10 at 4; Exs. D & I at 5; Exs. F & G at 4-5; Ex. H at 3). As explained above in Section B.1, those assertions require factual support. The request concerns devices, accounts, and services defendants themselves used for the specified purposes. The Employee Defendants do not identify any difficulty accessing the entries or explain what burden supplying their

contents would impose. They also provide no estimate of the work or expense involved in identifying any additional responsive devices, accounts, or services.

The Employees further object that they "cannot know whether ONB considers any individual or business to be a 'client.'" (*Id*.). As explained above, Definition 15 permits the Employee Defendants to identify customers through their own knowledge and reasonable inquiries of the other Employees. Subpart (a) also expressly reaches communications with other Employee Defendants about their departures and employment at Bell. Uncertainty about customer status supplies no reason to omit the devices and accounts used for those communications.

Finally, the Employee Defendants object that the interrogatory "is not relevant to any party's claims or defenses, as 'communicat[ion]' with purported ONB clients is not prohibited by the law." (*Id*.). Identifying the devices and accounts used will direct ONB to records concerning the coordinated departures and the acquisition and use of customer information. Those records bear on ONB's claims for the reasons explained above in Section B.1, regardless of defendants' position that their communications were lawful.

**2. The Employee Defendants must provide the requested identifying details for each device and account.**

Interrogatory No. 10 requires defendants to "identify each and every electronic device, account, and information service" used for the specified purposes. Definition 28 requires the device's "manufacturer, model name/number, and serial number," the account or service provider, and the associated "account number, telephone number, or username." (Ex. A at 9, 22). The answers omit those identifying details. References to "my cell phone" and "my Bell Bank email account" leave the particular phone number and email address

unspecified. (Exs. B, C & E, Supp. Ans. No. 10 at 4; Exs. D, F, G & I at 5; Ex. H at 3). If the Employee Defendants used a desktop or laptop computer for the specified communications or to obtain or access the customer contact information covered by the request, they must also identify that computer and provide the required details.

ONB needs this information to connect communications to particular devices and accounts and identify where responsive records may be found. The Employee Defendants can consult their device and account settings and billing records. They should also ask Bell for identifying information about any computers or other devices and accounts it provided that they used for the specified purposes.

**3. The Employee Defendants must identify the devices, accounts, and services used to obtain customer contact information.**

Subpart (b) separately requires defendants to identify what they used to "[o]btain or access the contact information" for customers whom defendants contacted or attempted to contact on or after the date of resignation. (Ex. A at 22). The seven Employees who identify customer contacts describe how they communicated, but without identifying the devices, accounts, or services used to obtain or retrieve the information needed to make those contacts. (Exs. B, C & E, Supp. Ans. No. 10 at 4; Exs. D, F, G & I at 5).

This information will help ONB trace how the Employee Defendants obtained customer information and identify records bearing on its misappropriation claims. The Employees should review where their customer contacts are stored and how they retrieved the numbers and addresses they used. That review should include any personal account or online service used for those purposes. They should identify any additional responsive

devices, accounts, or services and clarify whether the devices and accounts already disclosed were also used to obtain or access customer contact information.[6]

### D. THE EMPLOYEE DEFENDANTS SHOULD BE REQUIRED TO ANSWER INTERROGATORY NO. 11 IN FULL.

ONB seeks complete answers to Interrogatory No. 11, which provides:

> Identify any and all ONB clients whose name and/or contact information is stored in any of your personal electronic device(s), account(s), or information service(s), and for each ONB client identified in your answer, identify the information that is stored and the date that such information was first added/inputted/saved to the device, account, or information service.

(Ex. A at 23). The Employee Defendants other than Vold acknowledge retaining customer names and telephone numbers. They provide lists of names without the actual numbers or the dates the information was first saved. (Exs. B & C, Supp. Ans. No. 11 at 4-5; Exs. E-G at 5; Exs. D & I at 6). ONB seeks further answers from those seven Employee Defendants.

#### 1. The Employee Defendants' objections should be overruled.

The Employee Defendants object that Interrogatory No. 11 is "unduly burdensome, and disproportionate to the needs of the case." Each (other than Vold) nevertheless acknowledges that customer names and telephone numbers remain saved in a personal phone. (Exs. B & C, Supp. Ans. No. 11 at 4-5; Ex. D at 5-6; Exs. E-G at 5; Ex. I at 6). Providing the actual numbers requires reviewing those existing entries. The Employee

[6] If Vold's inquiry identifies responsive customer contacts, she must also identify the devices, accounts, and services used to obtain or access those customers' contact information.

Defendants identify no difficulty accessing them or explain what burden supplying their contents would impose. As to the dates, the Employees rely on a lack of recollection without describing any effort to determine whether their devices or accounts preserve that information. They identify no technical obstacle or estimated expense associated with that inquiry. These unsupported burden objections should be overruled for the reasons explained above in Section B.1.

The Employee Defendants also object that they "cannot know whether ONB considers any individual or business to be a 'client.'" (*Id.*). Their answers already identify people they recognize as ONB customers, allowing them to provide the information stored for those customers. They can review the remaining entries using Definition 15 and make the inquiries described above in Section B.1 to resolve uncertainty about other contacts.

**2. The Employee Defendants must provide the customer information they acknowledge retaining.**

Interrogatory No. 11 requires defendants to "identify the information that is stored" for each customer. (Ex. A at 23). Each Employee Defendant other than Vold acknowledges retaining telephone numbers but omits the numbers themselves. Their answers must supply those numbers and any other responsive information stored with the customer entries, including email addresses.

ONB needs the retained numbers and addresses to match customers with communication records and compare the information defendants kept with information maintained by ONB. The Employee Defendants can obtain the missing information by reviewing the entries they acknowledge retaining. Because the interrogatory also reaches

personal accounts and information services, their inquiry should cover responsive information stored in those locations.

**3. The Employee Defendants must identify when the customer information was first saved.**

The interrogatory asks for "the date that such information was first added/inputted/saved to the device, account, or information service." (Ex. A at 23). Each Employee Defendant other than Vold states: "I do not recall the dates on which I first saved their names and phone numbers." (Exs. B, C & E-G, Supp. Ans. No. 11 at 5; Exs. D & I at 6).

As explained in Section A, the Employee Defendants must examine reasonably available records that could supply the missing dates. Built-in tools can display recorded contact-creation dates, and backups may preserve additional information.[7] If defendants have difficulty retrieving or interpreting those records, an e-discovery vendor can help identify the available date information and determine what it represents. The Employees should also review communications through which they received the contact information. If an exact date remains unavailable, Definition 22 permits "the best approximation," identified as an approximation. (Ex. A at 8). Their answers should explain what they reviewed and any remaining inability to determine when the information was first saved.

[7] Apple's Shortcuts app can display a contact's stored "Creation Date." *See* TheTechMentor.com, *How to Find Recently Added Contacts on iPhone* (providing instructions and screenshots). For Android contacts synchronized with Google, users can select a contact in Google Contacts and review its "History" for recorded additions and edits. *See* Google, *Add or move contacts*.

The Employee Defendants object that "the date on which a contact was saved does not determine the date or form of any relationship with the contact." (Exs. B & C, Supp. Ans. No. 11 at 4; Exs. D-G at 5; Ex. I at 6). The requested dates bear on whether the Employees acquired and retained customer information through their employment at Bremer/ONB and whether they collected it while preparing to leave for Bell. That chronology will help ONB investigate its misappropriation claims and test the Employee Defendants' explanation that they possess customer contact information because of personal relationships.

## **CONCLUSION**

For these reasons, ONB respectfully requests that the Court grant its motion to compel and enter an order requiring the following:

A. Within fourteen days after the Court's order, all eight Employee Defendants shall serve complete, verified supplemental answers to Interrogatory No. 9, identifying each responsive customer contact or attempted contact and providing the requested customer identities and contact information, the dates and methods of communication, the sources of the information used, and whether and when each customer began a relationship with Bell.

B. Within fourteen days after the Court's order, all eight Employee Defendants shall serve complete, verified supplemental answers to Interrogatory No. 10, identifying every device, account, and information service used for either purpose specified in the interrogatory and supplying the identifying details required by Definition 28, including for any responsive desktop or laptop computers.

C. Within fourteen days after the Court's order, the Employee Defendants other than Vold shall serve complete, verified supplemental answers to Interrogatory No. 11, providing the customer information stored in their personal devices, accounts, and information services, including the actual telephone numbers and email addresses, and the dates that information was first saved. Any approximate dates shall be identified as approximations under Definition 22.

D. Before serving those answers, each Employee Defendant shall conduct a reasonable inquiry, including reviewing reasonably available records and seeking responsive information from Bell. For any requested information that remains unavailable, the supplemental answer shall explain under oath the efforts made to obtain it and the remaining inability to answer.

Dated: October 14, 2026

Respectfully submitted,

**OLD NATIONAL BANK, Plaintiff**

By: *Mack H. Reed*
One of Its Attorneys

Mack H. Reed (MN No. 398703)
JACKSON LEWIS P.C.
150 South Fifth Street, Suite 3500
Minneapolis, Minnesota 55402
Phone: (612) 341-8131
mack.reed@jacksonlewis.com

and

Christopher S. Griesmeyer (IL No. 6269851, *pro hac vice*)
Zachary Mulcrone (IL No. 6300387, *pro hac vice*)
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
Phone: (312) 428-2750
cgriesmeyer@grglegal.com
zmulcrone@grglegal.com