# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Old National Bank,<br><br>Plaintiff,<br><br>v.<br><br>Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,<br><br>Defendants. | Court File No. 0:25-CV-04636 (PJS/LIB)<br><br>**DEFENDANT YVETTE CAMPBELL'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

---

TO: Plaintiff Old National Bank, and its counsel, Mack H. Reed and Bethany R. Jewison of Lewis Brisbois Bisgaard & Smith, LLP, 90 South 7th Street, Suite 2800, Minneapolis, Minnesota 55402; and Christopher S. Griesmeyer and Zachary Mulcrone of Greiman, Rome & Griesmeyer, LLC, 205 West Randolph Street, Suite 2300, Chicago, Illinois 60606.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Yvette Campbell ("Campbell") hereby serves the following objections and answers to Plaintiff Old National Bank's ("ONB") First Set of Interrogatories. These objections and answers are based on information currently available and known to Campbell.

## GENERAL OBJECTIONS

1. Campbell objects to ONB's definitions to the extent that they impose obligations greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Minnesota, or any orders of this Court.

2. Campbell objects to the scope of ONB's Definitions 1 through 11, as they include "attorneys" in the scope of each referenced person's knowledge and purport to seek information protected by attorney-client privilege. For the avoidance of doubt, Campbell objects to the extent any of ONB's Interrogatories call for information protected by the attorney-client privilege and/or the work product doctrine.

3. Campbell objects to ONB's definition of "Confidential Information" as vague and ambiguous, particularly in its failure to identify the information that a bank "is required to safeguard and protect." For purposes of these answers, "Confidential Information" is understood to mean "that which an employee knew or should have known was confidential" because ONB gave "fair notice" of the material it intended to keep confidential. *Jostens, Inc. v. Nat'l Comput. Sys., Inc.*, 318 N.W.2d 691, 702 (Minn. 1982).

4. Campbell objects to ONB's interrogatories that exceed the maximum of 50 total interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Each of ONB's Interrogatories seeks a separate and independent answer from each of the eight Employee Defendants. Pursuant to Fed. R. Civ. P. 33(a)(1) ONB's discreet subparts result in a total of 112 Interrogatories, not including the Interrogatories ONB served on Defendant Bell Bank.

Campbell incorporates each of these General Objections into her below Answers by reference and without further recitation. Campbell also expressly reserves the right to amend or supplement her objections should ONB revise the meaning of terms or clarify the information sought.

## SPECIFIC OBJECTIONS AND ANSWERS

**INTERROGATORY NO. 1:** Identify each and every person who has knowledge of any facts concerning your resignation or the departure of any Employee Defendant from ONB and, for each person identified in your answer, describe in detail the facts known by such person and set forth the factual basis for their knowledge of those facts.

**ANSWER:** Campbell objects to this Interrogatory as overly broad and disproportionate to the needs of the case, as "each and every person" with knowledge of "any facts" is boundless in temporal and geographic scope. Campbell further objects that this Interrogatory is not relevant to any party's claims or defenses. A family member or out-of-state acquaintance may have knowledge that a person intends to resign or retire, but such knowledge is entirely irrelevant to this case. Campbell further objects to this Interrogatory because it seeks information that is not within her personal knowledge, but instead asks Campbell to speculate as to the factual bases for the presumed knowledge of third-parties, Subject to and without waiving the foregoing objections, Campbell answers as follows:

a. The other Employee Defendants have knowledge of the frustrations I experienced after the transition from Bremer to ONB, my decision to resign, and my decision to go to Bell Bank. We had daily conversations around the toxic work environment, expressing our concerns to leaders and being told often that we will lose some customers and employees, and that's okay.

b. Jenny Blake or Jan Ebersole, ONB employees, may have knowledge of my departure and my efforts to ensure customers had ongoing support at ONB, as I referred a customer [redacted] to them after I resigned. [redacted] from [redacted] called me on December 15th, 2025, to ask a question regarding the interest rate swap. I don't recall what the specific question was. I do recall asking him if he still had Jenny Blake's contact info and he said he did. I told him if Jenny happens to be out of the office, that he could ask for Jan Ebersole to answer his question.

c. Laura Schlagel, an ONB employee, may have knowledge of my departure and my efforts to ensure customers had ongoing support at ONB, as I referred a customer (C.L.) to Laura after I resigned. I called [redacted] on the published number for C.L. as we talked a couple times each month to let him know I was no longer at ONB. He commented that he didn't know who to call since I was gone. I do recall stating that someone told me the Brainerd branch was closed for the day so he couldn't contact anyone there, but I did not state the branch was closed indefinitely. I suggested he call and ask for Laura Schlagel at the Aitkin branch to answer his account

questions or make transfers, etc. I stated that she is very knowledgeable and would certainly do her best to help him.

d. Tony Loosbrock, an ONB employee, has knowledge of the detailed printed customer-related notes that I left for him when I resigned to ensure customer needs could be met by ONB. I also printed many emails, highlighted pertinent information regarding status, approvals, timing, etc, for those pending client needs and had several of them organized in folders in my desk drawer. Before leaving the morning of December 8th, I set my Out of Office replies on my email to ask both internal and external contacts to contact Tony and included his name and email address. On December 19, 2025, [redacted] called me and inquired about originating a business vehicle loan. I asked [redacted] if it would be easier to originate the loan with ONB so he could see it in online banking and make additional payments from his checking online. He agreed it would be easier. I suggested he call Tony and gave him Tony's cell phone number (as I did not have Tony's direct phone number at ONB). Between December 8th – 12th, I also contacted [redacted] from [redacted], [redacted] from [redacted], [redacted] from [redacted], and [redacted] from [redacted] to let each of them know that I had left detailed notes for Tony to ensure their pending transactions would be followed up on, and offered Tony's contact info to each one of them.

e. Amy Woods, an ONB employee, has knowledge of my departure, as well as ONB's anticipation that employees and customers would leave. Amy was the commercial ambassador in the Brainerd location the week following the system conversion. On several occasions, she told us that "we will lose employees and customers, and that's okay." While standing in my office, she also stated to Michael, Dan and I that salaried employees at ONB do not enter PTO time in ADP as it's not paid out when you leave.

f. Other ONB employees have knowledge of my departure, including Joyce Anderson who texted me on December 8th but I did not reply; Howard Gilles who messaged me on LinkedIn on January 23rd, 2026; Kerri Metz who texted me on December 10th, 2025; Jason Reid who I called on December 8th, 2025 to let him know I left ONB and wished him well; Zac Swarthout who messaged me on LinkedIn on December 12th, 2025, regarding the ONB Business Banking posting, his concern about proceeding now after learning many of us had left, and I encouraged him to proceed with interviewing with ONB; and Teresa Biss, via Teams at the end of October and when she was in the Brainerd branch on November 13th when I expressed my concerns that I felt unsupported, not trusted or respected by leaders, was exhausted from working in a hostile environment,

and increasingly unsure if I could stay at ONB as their culture was opposite of my values.

g. Bell Bank employees Shara Fischer and Patrick Chaffee have knowledge of my introduction to and conversations with Bell Bank.

Pursuant to Fed. R. Civ. P. 33(d), Campbell further answers by referring ONB to documents produced in discovery that provide additional information responsive to this Interrogatory. Campbell will supplement this answer to the extent necessary to assist ONB in identifying the responsive documents.

**INTERROGATORY NO. 2:** Identify each and every communication, meeting, and discussion that you held or attended (in whole or in part) with any other Defendant concerning any aspect of your actual or potential resignation from ONB or employment with Bell, and describe in detail the matters discussed during each such communication, meeting or discussion.

**ANSWER:** Campbell objects to this Interrogatory as overbroad and disproportionate to the needs of the case, as "each and every" communication concerning "any aspect" of her departure from ONB is boundless in scope and effectively seeks a comprehensive catalog of every conversation even tangentially related to Campbell's departure. Campbell further objects to relevance, for the same reasons stated in her objection to Interrogatory No. 1. Subject to and without waiving the foregoing objections, Campbell answers as follows:

I had conversations with Kim Ellingson expressing my concern about my team being unhappy and potentially looking for employment elsewhere. I expressed my feelings of being set up to fail at ONB and concern that if I lost my team, my employment may not be secure. I communicated that each time I raised my concerns with leaders including Brent Iserman, Tony Loosbrock, and Scott Dykhoff, that I was made to feel like I was just a whiner.

I recall when Dan Yantes told me he was contemplating an offer from National Bank of Commerce, he hadn't yet decided if he was going to accept because he would miss working with our team, but he knew he could not stay at ONB. I agreed with Dan that it would be great if we could all continue working together, but he needed to make the decision based on what was best for him and his family.

I also recall standing in Michael McConkey's office, talking with Michael, Dan, Rachal Johnson, and Kim Ellingson about how awful it was at ONB. Dan had the offer from National Bank of Commerce, Rachal had an offer from Deerwood Bank, and Michael had a conversation with Frandsen Bank about possibly going there. I commented that perhaps I'd have to leave banking to find another employment opportunity. At one point during the conversation, we joked about going to "First National Bank of Kim Ellingson"

because we all agreed Kim was an exceptional manager and work was fun when she led our team at Bremer. At some point, someone asked "seriously, where could we all go together?" We talked about approaching National Bank of Commerce with Dan, or Deerwood Bank with Rachal, or Gate City (where Julie Whitney and Eric Reisinger had recently gone when they left ONB), but we weren't excited about those possibilities.

We started brainstorming about where we would go if we could pick who we wanted to work for, and Bell Bank came up. We discussed that Bell was a fierce competitor, had all the digital solutions that business clients want, and clearly had a great culture because we had been unsuccessful in recruiting employees away from Bell. We had a few conversations like this. Sometimes Sharon Vold was present, but not always. I decided to email Shara Fischer, who I knew from serving on a nonprofit board. She introduced me to Patrick Chaffee on or about October 31, 2025.

I met with Sarah Adams for coffee on November 11, 2025 (Veterans Day) because I was concerned about her – I could tell she was totally fried, as she had called in sick several days in a row. Sarah was one of the most positive employees I've ever worked with, so I knew her stress level was serious. When I met with her, I told her I cared for her well-being and asked how she was doing. She immediately said that she was looking and applying for jobs elsewhere, because she could not stay at ONB. That's when I shared with her that I had reached out to Shara to inquire about opportunities at Bell Bank, and Patrick Chaffee wanted to meet. I asked Sarah if she cared to join us, and she said "yes."

On November 14, 2025, I attended a meeting in Fargo, North Dakota with Bell Bank and some of the other Employee Defendants. I met with Bell Bank again on November 24 and received my offer.

Pursuant to Fed. R. Civ. P. 33(d), Campbell further answers by referring ONB to documents produced in discovery that provide additional information responsive to this Interrogatory. Campbell will supplement this answer to the extent necessary to assist ONB in identifying the responsive documents.

**INTERROGATORY NO. 3:** Identify each and every person involved in negotiating the terms and conditions (including compensation) of your employment at Bell Bank and, for each person identified in your answer, describe in detail the nature and extent of their involvement.

**ANSWER:** Campbell objects to this Interrogatory because compensation, benefits, and other terms and conditions of her employment at Bell Bank are not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Campbell answers as follows:

I gave my compensation information to Kim Ellingson, who passed it along to Bell Bank. My offer came from Patrick Chaffee at Bell Bank, and I discussed it with him. No

one else was involved in negotiating the terms and conditions of my employment at Bell Bank. Kim only gathered all the info (including resumes) and put it in an envelope to leave with Patrick after we met.

**INTERROGATORY NO. 4:** Identify each and every person involved in, or with whom you discussed or consulted regarding, the timing, preparation, content, or delivery of your notice of resignation from ONB and, for each person identified in your answer, describe in detail the nature and extent of their involvement or consultation.

**ANSWER:** I discussed my resignation with the other Employee Defendants and Patrick Chaffee from Bell Bank. We wanted to leave as soon as possible. Once we received our final offers and accepted them, the next step was the normal background checks, which take some time. It was also around the Thanksgiving holiday, so some folks had vacation time scheduled.

It was such a horrific stressful environment that none of us wanted to be left there without the others. From conversion on October 20th until the day we left, someone was in tears each day, customers were berating us each day, and CPA firms were hanging up on us because we couldn't help them in submitting payroll batches. We weren't sleeping or eating, our senior leaders didn't care, and they were obviously tired of hearing my concerns. It was a deeply toxic environment, so we found comfort in sticking together and trying to support one another.

We all agreed that Monday December 8th would be our day to leave. We knew from decades of experience in banking that when a salesperson gives two weeks' notice and is going to a competing bank, they are immediately walked to the door. So we decided not to give advance notice. I wrote my own resignation letter and sent it to Tony Loosbrock. As a courtesy, I also told Tony where he could find our key fobs and credit cards because the security officer was not in the Brainerd branch that day.

**INTERROGATORY NO. 5:** Identify each and every person at Old National who was directly responsible for (or charged with) managing or overseeing your work for ONB during the time period from November 1, 2025, through the date of your resignation from ONB. For each person identified in your answer, identify the date that you informed the person that you had accepted an offer of employment from Bell Bank.

**ANSWER:** I reported directly to Tony Loosbrock, ONB's Region President. I gave Tony my resignation letter on December 8, 2025. I had received resignation and retirement letters from Dan Yantes and Michael McConkey, since they reported directly to me and it was proper protocol for them to send their letters to me, so I included those with my letter when I emailed it to Tony. I also copied HR on the email so they could take the necessary steps to remove our access to ONB's systems.

**INTERROGATORY NO. 6:** Identify each and every person at Old National who authorized your access to, or permitted your continued access to, documents and computer systems containing ONB Confidential Information during the time period from November 1, 2025, through the date of your resignation from ONB. For each person identified in your answer, identify the date that you informed the person that you had accepted an offer of employment from Bell Bank.

**ANSWER:** Campbell objects to this Interrogatory as vague and ambiguous, given that it suggests ONB employees had a need for authorization or permission to continue doing their jobs while employed. Campbell further objects because this Interrogatory also seeks information already within ONB's exclusive possession, custody, or control. Campbell also objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Campbell understood ONB to consider as confidential while Campbell was employed by ONB. Subject to and without waiving the foregoing objections, Campbell answers as follows:

My access to documents and computer systems did not change during this time, so whoever authorized my initial access would have been the one to authorize my continued access. I continued working hard for ONB's customers until I resigned, and I went above and beyond to ensure as much as possible was completed before I left.

**INTERROGATORY NO. 7:** Identify all instances in which you utilized Old National Bank's computer systems to access (including whether to read, review, print, download, copy, forward, or delete) any item of ONB Confidential Information after you had accepted an offer of employment from Bell Bank and, for each such instance, identify the date and purpose of your access to such information.

**ANSWER:** Campbell objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case because other forms of discovery (such as depositions) are available and preferable over an exhaustive narrative answer. Campbell also objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Campbell understood ONB to consider as confidential while Campbell was employed by ONB. Campbell further objects to responding to Interrogatory No. 7 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Notwithstanding the foregoing objections, Campbell will answer ONB's Interrogatory No. 7 in case the Court disagrees with the Employee Defendants' counting of ONB's interrogatories, which now totals 56 (not including ONB's interrogatories to Bell Bank). Campbell answers as follows:

I continued to do my job until my last day, so I do not remember every time I accessed the things ONB defined as "Confidential Documents."

I printed two copies of my pending items and left one in my desk. I gave the other copy to Sharon Vold to leave in her desk. I left detailed notes for Tony Loosbrock and Penny Stender so they would have everything they need to continue serving clients.

I understand ONB has alleged that on December 4, 2025, I printed four copies of a "Consent and Joinder of Mortgage" document, but I do not know what that is. It is possibly a parity agreement or first lien CREM between ONB and the SBA for a customer (A.P.T.), which was one of the pending items I was working on. The customer was making a stock sale/transfer of ownership prior to the end of the year, and I was working to get as much done as possible before I left. This customer was listed on my pending items worksheet, and I left the file with detailed notes for Tony.

ONB also alleged that on December 5, 2025, I printed documents from a customer's loan file, but ONB did not identify the customer. I believe it was L.R., and if so, I printed the documents, signed them, and the customer [redacted] picked them up. The customer needed the originals to be recorded with a new corrected plat. Sharon Vold submitted copies to be scanned and saved to the customer's digital credit file.

ONB also alleged that on November 25, 2025, I printed a list of "residential lots" and "residential lot numbers tied. I printed this while working on a partial release for customer L.R. in order to properly identify a lot. Sharon Vold and I prepared a sheet of all the lots to help Penny Stender identify which ones were collateral, which ones had already been released, and which ones were scheduled to be released in December. Sharon then saved the sheet to the customer folder and the printed copy went to the shred bin.

Next, ONB alleged that I printed documents from a customer's loan file on November 24, 2025. I can't be certain, because ONB did not provide the customer's name, but my best guess is it was A.S. If so, I put the printed documents in the shred bin. I was reviewing them as I called Tony Loosbrock to request his approval to have ONB pay a portion of the customer's appraisal fee, since ONB's policy forced customers to pay for a new appraisal even though they completed a Bremer internal evaluation earlier in the year. Tony approved the request, so I shredded the documents when I no longer needed them. This is also documented in my pending items worksheet.

Finally, I understand ONB claims I printed a call list spreadsheet on November 10, 2025. I do not know what this is, as ONB did not offer a description.

All of the files or documents I accessed leading up to my departure from ONB were in the course of my regular duties, and I took NONE of them with me.

**INTERROGATORY NO. 8:** For the time period from November 1, 2025 through December 7, 2025, identify each and every ONB client and Old National employee with whom you communicated about your dissatisfaction with ONB, your actual or

potential departure from ONB, or your actual or potential future employment with Bell, and identify the date and method of each such communication.

**ANSWER:** Campbell objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case because other forms of discovery (such as depositions) are available and preferable over an exhaustive narrative answer. Campbell further objects to responding to Interrogatory No. 8 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Notwithstanding the foregoing objections, Adams will answer ONB's Interrogatory No. 8 in case the Court disagrees with the Employee Defendants' counting of ONB's interrogatories, which now totals 64 (not including ONB's interrogatories to Bell Bank). Campbell answers as follows:

I communicated with the other Employee Defendants about my decision to leave. In or around late October of 2025, I had several conversations with ONB leadership, including Tony Loosbrock, Brent Iserman, Thad Olsen, Teresa Biss, Tom Rickers, Sheila Dowling, and Scott Dykhoff, in which I expressed my frustration and exhaustion. I told them the continual threat of losing customers and employees was not sustainable, and it was causing a substantial negative impact on my physical and mental health. ONB didn't assure me that anything would change, and I felt the only options were to get on board or leave. Tony had even told me that when we discussed Rachal's frustration (that perhaps she should just leave).

On Thursday, November 13th, 2025, Teresa Biss and Tom Rickers facilitated a meeting in the Brainerd branch. I remember Tom Rickers explaining that this was a change (referring to ONB), and not all customers or employees like change. If the customer or employee is unwilling to change with us (ONB), then perhaps they should move on. He stated it was likely we would lose 10% of our clients. I remember leaving that meeting in tears, realizing that the leadership team at ONB was not concerned about retaining long tenured, high performing employees – in fact, quite the contrary. If employees couldn't 'get onboard' they should leave. It was clear that ONB was never going to be close to what Bremer was, and I was resolved that I could not be successful at ONB.

My closest friends knew I was extremely stressed and hated my work environment, but I didn't tell them I was leaving because many of my closest friends are/were ONB customers. I made comments like "we'll see how long I can last" or "this job is going to be the death of me" but I was guarded in my conversations with friends. At the Brainerd Chamber of Commerce's annual dinner on November 20, 2025, a senior employee in the accounting department at CTC approached me and commented that if I ever left ONB, to please let her know (implying that CTC may have a spot for me).

Pursuant to Fed. R. Civ. P. 33(d), Campbell further answers by referring ONB to documents produced in discovery that provide additional information responsive to this

Interrogatory. Campbell will supplement this Interrogatory response to the extent necessary to assist ONB in identifying the responsive documents.

**INTERROGATORY NO. 9:** For the time period from the date of your resignation from ONB, through the present, identify each and every ONB client who you (directly or indirectly) contacted or attempted to contact, or with whom you communicated or attempted to communicate. For each client identified in your answer:

a. Identify the date(s) and method (e.g., via email, text message, correspondence, announcement, telephone, videoconference, social media posting, in-person meeting, etc.) of each such contact, attempted contact, communication, or attempted communication;

b. Describe in detail how you obtained the contact information (and any other Confidential Information) utilized to contact, attempt to contact, communicate with, or attempt to communicate with the client; and

c. Identify whether the client has a customer relationship with Bell and, if so, identify the date their customer relationship with Bell began.

**ANSWER:** Campbell objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Campbell understood ONB to consider as confidential while Campbell was employed by ONB. Campbell objects to responding to Interrogatory No. 9 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Campbell further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, since Campbell cannot know whether ONB considers any particular individual or business to be a "client." Campbell also objects that this Interrogatory is not relevant to any party's claims or defenses, as "contact" with a purported ONB client is not prohibited by the law. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 9 as propounded.

**INTERROGATORY NO. 10:** Identify each and every electronic device, account, and information service that you have utilized to:

a. Communicate with any ONB client or Employee Defendant concerning your (or their) actual or potential departure from ONB and/or employment at Bell; or

b. Obtain or access the contact information for any ONB client that you contacted or attempted to contact on or after the date of your resignation.

**ANSWER:** Campbell objects to responding to Interrogatory No. 10 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's

Pretrial Scheduling Order. Campbell further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, particularly since Campbell cannot know whether ONB considers any individual or business to be a "client." Campbell also objects that this Interrogatory is not relevant to any party's claims or defenses, as "communicat[ion]" with purported ONB clients is not prohibited by the law. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 10 as propounded.

**INTERROGATORY NO. 11:** Identify any and all ONB clients whose name and/or contact information is stored in any of your personal electronic device(s), account(s), or information service(s), and for each ONB client identified in your answer, identify the information that is stored and the date that such information was first added/inputted/saved to the device, account, or information service.

**ANSWER:** Campbell objects to responding to Interrogatory No. 11 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Campbell further objects to this Interrogatory as unduly burdensome, and disproportionate to the needs of the case, particularly since Campbell cannot know whether ONB considers any individual or business to be a "client." Campbell also objects that this Interrogatory is not relevant to any party's claims or defenses, as the date on which a contact was saved does not determine the date or form of any relationship with the contact. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 11 as propounded.

**INTERROGATORY NO. 12:** During the time period from the date of your acceptance of an offer of employment from Bell through the present, describe in detail all steps you have taken to return to ONB, safeguard, and protect from disclosure to Bell any ONB Confidential Information within your possession or knowledge.

**ANSWER:** Campbell objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Campbell understood ONB to consider as confidential while Campbell was employed by ONB. Campbell objects to responding to Interrogatory No. 12 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 12 as propounded.

**INTERROGATORY NO. 13:** Describe in detail your employment application and pre-hire interview process with Bell, including the identity of each person at Bell who interviewed you connection with your employment application, the date and location of each such interview, and the person(s) who communicated Bell's offer of employment to you.

**ANSWER:** Campbell objects to responding to Interrogatory No. 13 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 13 as propounded.

**INTERROGATORY NO. 14:** Identify all employers to which you have applied for employment since November 25, 2024 (the date that Old National's merger with Bremer Bank was announced), and provide the Employer Contact Information for each such employer.

**ANSWER:** Campbell objects to responding to Interrogatory No. 14 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Campbell further objects to this Interrogatory as seeking information that is not relevant to any party's claims or defenses. Based upon the foregoing objection, Campbell will not agree to answer Interrogatory No. 14 as propounded.

**AS TO ANSWERS:**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my recollection, knowledge, and belief.

Dated: 05/08/2026

Yvette Campbell

By: Yvette Campbell

**AS TO OBJECTIONS:**

Dated: May 8, 2026

**SPENCER FANE LLP**
*/s/ Heidi J. Bassett*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

***Counsel for Employee Defendants***

Progress | RightSignature

# SIGNATURE CERTIFICATE

**REFERENCE NUMBER**
2886E1AB-711C-447A-80A7-FFA5EEDBA330

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number**<br>2886E1AB-711C-447A-80A7-FFA5EEDBA330 | **Document Name**<br>Defendant Yvette Campbell Answers to Plaintiffs Interrogatories |
| **Transaction Type**<br>Signature Request | **Filename**<br>Defendant_Yvette_Campbell_Answers_to_Plaintiffs_Interrogatories.pdf |
| **Sent At**<br>05/08/2026 11:03:35 AM EDT | **Pages**<br>13 pages |
| **Executed At**<br>05/08/2026 11:20:16 AM EDT | **Content Type**<br>application/pdf |
| **Identity Method**<br>email | **File Size**<br>52.6 KB |
| **Distribution Method**<br>email | **Original Checksum**<br>b17f3ae01b6edeec8ba06838c520d3f3c8f5f8ada0599bbcacd2ee8fdd6a2915 |
| **Signed Checksum**<br>001c5bd6d652d4a0b4405feb1d0c194f389347a52629e0472b7695e10287a821 | |
| **Signer Sequencing**<br>Disabled | |
| **Document Passcode**<br>Disabled | |
| **eIDAS Authentication**<br>Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Yvette Campbell | **Status**<br>signed | **Viewed At**<br>05/08/2026 11:07:28 AM EDT |
| **Email**<br>ycampbell@bell.bank | **Multi-factor Digital Fingerprint Checksum**<br>4f53cda18c2baa0c0354bb5f9a3ecbe5ed12ab4d8e11ba873c2f11161202b945 | **Identity Authenticated At**<br>05/08/2026 11:20:16 AM EDT |
| **Components**<br>2 | **IP Address**<br>107.190.182.2 | **Signed At**<br>05/08/2026 11:20:16 AM EDT |
| | **Device**<br>Microsoft Edge via Windows | |
| | **Typed Signature**  | |
| | **Signature Reference ID**<br>4D1093EE | |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 05/08/2026 11:03:35 AM EDT | Melissa Solberg (msolberg@spencerfane.com) created document 'Defendant_Yvette_Campbell_Answers_to_Plaintiffs_Interrogatories.pdf' on Chrome via Windows from 66.41.47.163. |
| 05/08/2026 11:03:35 AM EDT | Yvette Campbell (ycampbell@bell.bank) was emailed a link to sign. |
| 05/08/2026 11:06:29 AM EDT | Yvette Campbell (ycampbell@bell.bank) viewed the document on Microsoft Edge via Windows from 107.190.182.2. |
| 05/08/2026 11:07:28 AM EDT | Yvette Campbell (ycampbell@bell.bank) viewed the document on Microsoft Edge via Windows from 52.70.248.201. |
| 05/08/2026 11:20:16 AM EDT | Yvette Campbell (ycampbell@bell.bank) authenticated via email on Microsoft Edge via Windows from 107.190.182.2. |
| 05/08/2026 11:20:16 AM EDT | Yvette Campbell (ycampbell@bell.bank) signed the document on Microsoft Edge via Windows from 107.190.182.2. |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Old National Bank,<br><br>Plaintiff,<br><br>v.<br><br>Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,<br><br>Defendants. | Court File No. 0:25-CV-04636 (PJS/LIB)<br><br>**DEFENDANT YVETTE CAMPBELL'S SECOND SUPPLEMENTAL AND AMENDED ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

---

TO: Plaintiff Old National Bank, and its counsel, Mack H. Reed of Jackson Lewis P.C., 150 South Fifth Street, Suite 3500; Bethany R. Jewison of Lewis Brisbois Bisgaard & Smith, LLP, 90 South 7th Street, Suite 2800, Minneapolis, Minnesota 55402; and Christopher S. Griesmeyer and Zachary Mulcrone of Greiman, Rome & Griesmeyer, LLC, 205 West Randolph Street, Suite 2300, Chicago, Illinois 60606.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Yvette Campbell ("Campbell") hereby serves the following second supplemental and amended answers to certain interrogatories propounded by Plaintiff Old National Bank ("ONB"). Campbell incorporates by reference all of her previously asserted general objections to the interrogatories as though fully stated herein.

**THE FOLLOWING SUPPLEMENTAL AND AMENDED ANSWERS ARE DESIGNATED "CONFIDENTIAL" PURSUANT TO THE COURT'S PROTECTIVE ORDER. (DOC 84.)**

## SUPPLEMENTAL AND AMENDED ANSWERS

**INTERROGATORY NO. 9:** For the time period from the date of your resignation from ONB, through the present, identify each and every ONB client who you (directly or indirectly) contacted or attempted to contact, or with whom you communicated or attempted to communicate. For each client identified in your answer:

a. Identify the date(s) and method (e.g., via email, text message, correspondence, announcement, telephone, videoconference, social media posting, in-person meeting, etc.) of each such contact, attempted contact, communication, or attempted communication;

b. Describe in detail how you obtained the contact information (and any other Confidential Information) utilized to contact, attempt to contact, communicate with, or attempt to communicate with the client; and

c. Identify whether the client has a customer relationship with Bell and, if so, identify the date their customer relationship with Bell began.

[redacted]

[redacted]



**CONFIDENTIAL**

[redacted]

[redacted]

**INTERROGATORY NO. 10:** Identify each and every electronic device, account, and information service that you have utilized to:

a. Communicate with any ONB client or Employee Defendant concerning your (or their) actual or potential departure from ONB and/or employment at Bell; or

b. Obtain or access the contact information for any ONB client that you contacted or attempted to contact on or after the date of your resignation.

[redacted]

[redacted]

**INTERROGATORY NO. 11:** Identify any and all ONB clients whose name and/or contact information is stored in any of your personal electronic device(s), account(s), or information service(s), and for each ONB client identified in your answer, identify the information that is stored and the date that such information was first added/inputted/saved to the device, account, or information service.

[redacted]

[redacted]

**<u>INTERROGATORY NO. 12:</u>** During the time period from the date of your acceptance of an offer of employment from Bell through the present, describe in detail all steps you have taken to return to ONB, safeguard, and protect from disclosure to Bell any ONB Confidential Information within your possession or knowledge.

[redacted]

**INTERROGATORY NO. 13:** Describe in detail your employment application and pre-hire interview process with Bell, including the identity of each person at Bell who interviewed you connection with your employment application, the date and location of each such interview, and the person(s) who communicated Bell's offer of employment to you.

[redacted]

**INTERROGATORY NO. 14:** Identify all employers to which you have applied for employment since November 25, 2024 (the date that Old National's merger with Bremer Bank was announced), and provide the Employer Contact Information for each such employer.

[redacted]

**AS TO SUPPLEMENTAL AND AMENDED ANSWERS:**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my recollection, knowledge, and belief.

Dated: Sep 29, 2026

Yvette Campbell
By: Yvette Campbell

**AS TO OBJECTIONS:**

Dated: September 29, 2026

**SPENCER FANE LLP**

*/s/ Heidi J. Bassett*

Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

***Counsel for Employee Defendants***