# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Old National Bank,

Plaintiff,

v.

Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,

Defendants.

Court File No. 0:25-CV-04636 (PJS/LIB)

**DEFENDANT KIM ELLINGSON'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

TO: Plaintiff Old National Bank, and its counsel, Mack H. Reed and Bethany R. Jewison of Lewis Brisbois Bisgaard & Smith, LLP, 90 South 7th Street, Suite 2800, Minneapolis, Minnesota 55402; and Christopher S. Griesmeyer and Zachary Mulcrone of Greiman, Rome & Griesmeyer, LLC, 205 West Randolph Street, Suite 2300, Chicago, Illinois 60606.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Kim Ellingson ("Ellingson") hereby serves the following objections and answers to Plaintiff Old National Bank's ("ONB") First Set of Interrogatories. These objections and answers are based on information currently available and known to Ellingson.

## GENERAL OBJECTIONS

1. Ellingson objects to ONB's definitions to the extent that they impose obligations greater than or different from those imposed by the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Minnesota, or any orders of this Court.

2. Ellingson objects to the scope of ONB's Definitions 1 through 11, as they include "attorneys" in the scope of each referenced person's knowledge and purport to seek information protected by attorney-client privilege. For the avoidance of doubt, Ellingson objects to the extent any of ONB's Interrogatories call for information protected by the attorney-client privilege and/or the work product doctrine.

3. Ellingson objects to ONB's definition of "Confidential Information" as vague and ambiguous, particularly in its failure to identify the information that a bank "is required to safeguard and protect." For purposes of these answers, "Confidential Information" is understood to mean "that which an employee knew or should have known was confidential" because ONB gave "fair notice" of the material it intended to keep confidential. *Jostens, Inc. v. Nat'l Comput. Sys., Inc.*, 318 N.W.2d 691, 702 (Minn. 1982).

4. Ellingson objects to ONB's interrogatories that exceed the maximum of 50 total interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Each of ONB's Interrogatories seeks a separate and independent answer from each of the eight Employee Defendants. Pursuant to Fed. R. Civ. P. 33(a)(1) ONB's discreet subparts result in a total of 112 Interrogatories, not including the Interrogatories ONB served on Defendant Bell Bank.

Ellingson incorporates each of these General Objections into her below Answers by reference and without further recitation. Ellingson also expressly reserves the right to amend or supplement her objections should ONB revise the meaning of terms or clarify the information sought.

## SPECIFIC OBJECTIONS AND ANSWERS

**INTERROGATORY NO. 1:** Identify each and every person who has knowledge of any facts concerning your resignation or the departure of any Employee Defendant from ONB and, for each person identified in your answer, describe in detail the facts known by such person and set forth the factual basis for their knowledge of those facts.

**ANSWER:** Ellingson objects to this Interrogatory as overly broad and disproportionate to the needs of the case, as "each and every person" with knowledge of "any facts" is boundless in temporal and geographic scope. Ellingson further objects that this Interrogatory is not relevant to any party's claims or defenses. A family member or out-of-state acquaintance may have knowledge that a person intends to resign or retire, but such knowledge is entirely irrelevant to this case. Ellingson further objects to this Interrogatory because it seeks information that is not within her personal knowledge, but instead asks Ellingson to speculate as to the factual bases for the presumed knowledge of third-parties, Subject to and without waiving the foregoing objections, Ellingson answers as follows:

a. The other Employee Defendants have knowledge of the struggles I experienced after the transition from Bremer to ONB, my decision to retire, and my decision to go to Bell Bank.

b. My spouse, David Ellingson, has knowledge of my struggles with the role. While I did not share specific work information with my spouse, he recognized my changes in health and my increased stress.

c. Tonya Tepley Rabasco has knowledge of my resignation, as we talked regularly about the challenges we were experiencing. She accepted an offer of employment with American National Bank in Baxter.

d. Prior to my retirement, various ONB employees knew of my struggles and challenges in my role, including Tim Kocher, Joyce Anderson, Tonya Tepley Rabasco, Jean Chase, Nicole Runge, Kelsey Dompke, Teresa Biss, Shane Johnson and Sherri Matuke. I had numerous in-depth conversations with Sherri Matuke as we were both of similar age and length of service. We discussed the merits and considerations of retiring or staying in continued roles with ONB that were wrought with stress. These roles produced barriers that were standing in the way of us performing at a level at which we were accustomed and had performed in the past for our organization. I also had dinner with Tim and Yvette Campbell on Tuesday, September 30, 2025, and we told Tim about the challenges we faced.

e. In October of 2025, I had conversations with HR Services at ONB. I attempted to create an HR case online through the employee portal, but my case sat idle for over a week. I finally called HR Services directly and had a conversation with one of the HR reps. My call was over 30 minutes. I asked numerous questions about the process of retirement. I was told that I was not required to give a 2-week notice.

f. Other ONB employees had knowledge of my departure because I sent them a text message communicating that I made the decision to retire the morning of December 8th. These employees included one of my direct reports, Nicole Runge, as well as Shane Johnson, Sherri Matuke, Jessica Thompson, Courtney Walker, Rian Copeland, and Blake Jansick.

g. ONB employees Gary Johnson and Joyce Anderson had knowledge of my retirement because I reached out to them the morning of December 8th via phone.

h. After Tim Kocher shared the news of my retirement with his team at ONB and the news spread within the organization, I received messages from more ONB employees – Jean Chase, Marit Haman, Andrea Hintzman, Mike Job, Thad Olsen, Shaun Coard, Stephanie Stone, and Shane Johnson.

i. Tim Kocher, Nicole Runge and Katie Stegmaier, ONB employees, have knowledge of my job performance, leadership, and integrity, as well as my continued dedication to my work until my resignation.

j. Bell Bank employees Rock Messerschmidt and Patrick Chaffee have knowledge of my introduction to Bell Bank. Amy Wolf, in HR at Bell Bank, has knowledge of my hiring once I accepted my offer.

k. Some ONB customers have knowledge of my retirement. On December 8th I placed a call to [redacted] - ONB customer and a personal acquaintance of our family - communicating that I was no longer with Bremer/ONB. I also received a message from [redacted], so I returned his call. He said he wanted to move all of his personal and business loans and deposits but he was just getting out of the hospital, so he wanted me or Dan Yantes to connect with his CFO directly.

l. My Chamber of Commerce peer group has knowledge of my retirement and my decision to join Bell Bank, because I emailed the group on December 8th.

m. [redacted], and [redacted] of [redacted] have knowledge of the Employee Defendants' meeting with Bell Bank on November 24, 2025, as we met at Johnson Centre.

**INTERROGATORY NO. 2:** Identify each and every communication, meeting, and discussion that you held or attended (in whole or in part) with any other Defendant concerning any aspect of your actual or potential resignation from ONB or employment with Bell, and describe in detail the matters discussed during each such communication, meeting or discussion.

**ANSWER:** Ellingson objects to this Interrogatory as overbroad and disproportionate to the needs of the case, as "each and every" communication concerning "any aspect" of her departure from ONB is boundless in scope and effectively seeks a comprehensive catalog of every conversation even tangentially related to Ellingson's departure. Ellingson further objects to relevance, for the same reasons stated in her objection to Interrogatory No. 1. Subject to and without waiving the foregoing objections, Ellingson answers as follows:

Yvette Campbell and I had numerous conversations about the challenges and setbacks we were having in our roles with ONB. I shared the complications the Commercial Loan Transformation (CLT) (aka the Abrigo) team was having with the project, including but not limited to: resource constraints, contract challenges and the contract procurement processes, loss of team members on the project and the inability to replace those team members that were needed to secure a successful project as large as the Commercial Loan Transformation. Yvette shared with me the concerns she had as the market leader and as a business banking producer. She was very concerned about her team; the stress the conversion had placed on them and how it was straining the long-standing relationships they all had with their clients. She told me she knew the team was actively looking for roles outside of ONB. Upon leaving dinner with Tim Kocher in September 2025, Yvette and I stood in the parking lot and talked about how Tim seemed to pass off our concerns, dismissing them as heartburn associated with large organizations. Yvette and I discussed opportunities that may potentially exist with other institutions in town. We decided we would think about those opportunities.

Rachal Johnson and I had numerous conversations about her business clients' hardships created by the Bremer to ONB conversion that was wrought with problems. Rachal took these hard as she had built professional and personal relationships with clients. She felt that she had been sold a story of how conversion would play out. Based on prior conversions, ONB prepared information on the conversion and Rachal spent hours with these clients communicating how conversion would go. With all the post-conversion problems, she felt set up to fail and it had tarnished her image of trust and responsibility with these clients. She communicated that these problems (which included the antiquated ONB online portal and critical payroll funding emergencies) threatened the success of clients' business operations.

Sharon Vold told me about the challenges she had experienced with the changes to her role once Bremer was sold to ONB. She was concerned about the differences in delivery of the commercial loan process, her inability to adequately serve the bankers she supported, and ultimately their clients. Sharon and I had multiple conversations on the topic of retirement and why it may be the best decision. She shared with me that she had conversations with ONB HR on the process and protocols for retirement.

During the summer months of 2025, I began to hear challenges from all the Employee Defendants, as well as Joyce Anderson and Tonya Tepley Rabasco, about the issues they were experiencing with ONB. Shortly after the Bremer/ONB conversion (which took place over the weekend of October 18-19, 2025), Yvette Campbell told me that Dan Yantes had an offer to leave ONB to go to National Bank of Commerce. She also heard that Rachal Johnson had an offer from another financial institution in town and that Michael McConkey was in discussions with another.

Conversations continued about issues our clients were experiencing because of the conversion. We were embarrassed and frustrated because we felt ONB made false promises to us and our customers about post conversion operations. We were all in Michael McConkey's office one afternoon, talking about the ongoing issues and that Dan Yantes and Rachal Johnson planned to accept offers from other banks. We agreed it would be sad if we were not working together in the future because we made a great team. Someone asked, "where are we all going?" but I don't recall who asked the question. We discussed which financial institutions were in town, and which ones were not yet in town. We talked about West Bank, Bell Bank, First National Bank of Deerwood, Frandsen, US Bank and Wells Fargo. We asked Rachal which of these options provided the best solutions for treasury management services and she said Bell most closely matched that of the "old Bremer".

I waited to connect with anyone at Bell until the week of October 27, 2025, when Yvette Campbell and I talked again. I had received a text message from one of my husband's friends, who was also a customer. He'd made a deposit, but it wasn't in his account and ONB couldn't locate it. It had been 11 days since he made the deposit, and no one was able to assist in finding the deposit. That, coupled with a list of challenges I was discussing with Yvette, was the final straw. I told Yvette that I would reach out to someone at Bell Bank. I contacted Rock Messerschmidt via LinkedIn on October 29, and asked him to give me a call as I was looking for some advice related to career opportunities in financial services. He called me that afternoon. I told Rock the ONB conversion was not going well and that I was very unhappy in my ONB role with the CLT project. I asked him if Bell Bank had ever considered coming to the Brainerd area, as a number of us were interested in leaving ONB. He connected me with Patrick Chaffee at Bell Bank.

I talked with Patrick Chaffee in early November and coordinated a meeting in Fargo, North Dakota. In preparation for that meeting, I asked each of the employees who were interested in considering a move to send me their resume, a headshot and a brief bio of

themselves. The reason I asked all of them to send their information to me was because it was easier to compile all the information with one person and to also share the information in a combined package to Bell. We met on November 14, 2025. It was at this meeting we learned that Bell was interested in considering a location in the Brainerd Lakes area. With this confirmation, I asked each of the Employee Defendants to send their salary and bonus expectations so we could submit the combined information to Patrick Chaffee, and they did.

On November 24, 2025, we all met with a team from Bell Bank at the Johnson Centre in Brainerd. The Bell team consisted of Todd Zabel, Lynn Peterson, Patrick Chaffee and Amy Wolf. We had general discussions about our resignations and asked basic HR questions.

**INTERROGATORY NO. 3:** Identify each and every person involved in negotiating the terms and conditions (including compensation) of your employment at Bell Bank and, for each person identified in your answer, describe in detail the nature and extent of their involvement.

**ANSWER:** Ellingson objects to this Interrogatory because compensation, benefits, and other terms and conditions of her employment at Bell Bank are not relevant to any party's claims or defenses and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Ellingson answers as follows:

I negotiated the terms of my employment directly with Patrick Chaffee. I received an email from Amy Wolf directing me to a link so I could input my information for a background check, and I accepted my offer via email directly to Patrick Chaffee and Amy Wolf.

**INTERROGATORY NO. 4:** Identify each and every person involved in, or with whom you discussed or consulted regarding, the timing, preparation, content, or delivery of your notice of resignation from ONB and, for each person identified in your answer, describe in detail the nature and extent of their involvement or consultation.

**ANSWER:** In October, I spoke with an HR representative with ONB and asked them several questions about the process for my retirement. They said I was not required to give 2 weeks' notice and that I should wait to give my notice until after the payment of my retention bonus (to be sure that it was paid in full). I received my retention bonus on Friday, December 5, 2025, and turned in my retirement notice on Monday, December 8. I told the other Employee Defendants that this was the day I was going to give my notice. Since ONB's HR representative told me I did not have to give 2 weeks' notice, I chose to conclude my role. The negative impact to my health and the detrimental environment that ONB created caused me to want to leave as soon as I was paid my retention.

I communicated my intention to retire from ONB with the Bell Bank team (Todd Zabel, Lynn Peterson, Patrick Chaffee and Amy Wolf) on November 21st. We discussed the potential start date and coordinated when we would onboard at Bell Bank.

**INTERROGATORY NO. 5:** Identify each and every person at Old National who was directly responsible for (or charged with) managing or overseeing your work for ONB during the time period from November 1, 2025, through the date of your resignation from ONB. For each person identified in your answer, identify the date that you informed the person that you had accepted an offer of employment from Bell Bank.

**ANSWER:** I reported directly to Tim Kocher. As directed by the information I received from HR Services in a prior conversation, I sent my notice of retirement via email to Tim Kocher and HR Services on the morning of December 8th. I attached my formal notice of retirement and a detail of the accurate calculation of my accrued PTO balance.

**INTERROGATORY NO. 6:** Identify each and every person at Old National who authorized your access to, or permitted your continued access to, documents and computer systems containing ONB Confidential Information during the time period from November 1, 2025, through the date of your resignation from ONB. For each person identified in your answer, identify the date that you informed the person that you had accepted an offer of employment from Bell Bank.

**ANSWER:** Ellingson objects to this Interrogatory as vague and ambiguous, given that it suggests ONB employees had a need for authorization or permission to continue doing their jobs while employed. Ellingson further objects because this Interrogatory also seeks information already within ONB's exclusive possession, custody, or control. Ellingson also objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Ellingson understood ONB to consider as confidential while Ellingson was employed by ONB. Subject to and without waiving the foregoing objections, Ellingson answers as follows:

Tim Kocher authorized my access and permitted my continued access from November 1st to December 8th. My duties and performance continued through my last day at ONB, so I did not have or need additional authorization or access. I continued using my Bremer laptop, ONB laptop, headset, badge, and purchasing card, and I left all of these items in Joyce Anderson's office after tendering my retirement letter on December 8th.

**INTERROGATORY NO. 7:** Identify all instances in which you utilized Old National Bank's computer systems to access (including whether to read, review, print, download, copy, forward, or delete) any item of ONB Confidential Information after you had accepted an offer of employment from Bell Bank and, for each such instance, identify the date and purpose of your access to such information.

**ANSWER:** Ellingson objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case because other forms of discovery (such as depositions) are available and preferable over an exhaustive narrative answer. Ellingson also objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Ellingson understood ONB to consider as confidential while Ellingson was employed by ONB. Ellingson further objects to responding to Interrogatory No. 7 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Notwithstanding the foregoing objections, Adams will answer ONB's Interrogatory No. 7 in case the Court disagrees with the Employee Defendants' counting of ONB's interrogatories, which now totals 56 (not including ONB's interrogatories to Bell Bank). Ellingson answers as follows:

I continued to use the ONB system as I had for days, months and years prior to my retirement. I understand ONB has alleged that I accessed the CLT (Commercial Loan Transformation) project finance spreadsheets during the week before my retirement. This is true, because I continued to do my job until my last day, and ONB had assigned the CLT project to me. I was on numerous teams calls with Tim Kocher, Katie Stegmier, other project team members, and leaders from the ONB finance as a part of the project. We were working on amending the Abrigo budget that was included in the CLT spreadsheet. As a part of my role on the CLT team – I was working on a power point presentation that was to be presented to senior leaders in the following days/weeks after my retirement notice. I did not copy the spreadsheet to take out of ONB; at most, I may have copied and pasted sections of the spreadsheet into the power point presentation that I was working on.

Prior to my retirement, I emailed my personal performance review documents to my home email address. My work (meeting notes and conversations with vendors, contractors, and my team) was logged in the Notes section in Teams. I do not remember every time I accessed the things ONB defined as "Confidential Documents" because I did not log every computer system or document accessed throughout my career. Anything I accessed was in the course of my responsibilities at ONB.

**INTERROGATORY NO. 8:** For the time period from November 1, 2025 through December 7, 2025, identify each and every ONB client and Old National employee with whom you communicated about your dissatisfaction with ONB, your actual or potential departure from ONB, or your actual or potential future employment with Bell, and identify the date and method of each such communication.

**ANSWER:** Ellingson objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case because other forms of discovery (such as depositions) are available and preferable over an exhaustive narrative answer. Ellingson further objects to responding to Interrogatory No. 8 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Notwithstanding the foregoing objections, Ellingson will answer ONB's

Interrogatory No. 8 in case the Court disagrees with the Employee Defendants' counting of ONB's interrogatories, which now totals 64 (not including ONB's interrogatories to Bell Bank). Ellingson answers as follows:

I talked about my retirement with ONB HR Services representatives. I called the HR line directly and was placed in a queue, so I don't recall the name of the person I spoke with. I also had a conversation with Sherri Matuke about the fact that I was considering retiring.

Tom Rickers and Teresa Biss came to Brainerd to meet with the Employee Defendants, Joyce Anderson, Tonya Tepley Rabasco, and Gary Johnson to discuss how things were going post conversion. Each attendee at the meeting had the opportunity to discuss in detail the challenges we were having. We gave customer-specific examples of routing numbers that didn't convert correctly, customer check deposits that weren't showing up in accounts (causing overdrafts and returned checks), and ACH payroll files not going through (so employees of our clients were not paid). We also discussed ONB's communications to customers about expectations following the conversion, and identified that those communications were not true. Tom Rickers said that ONB expected to lose employees and clients, so we should recognize that ONB operates differently than Bremer and get used to it. I/We never received any response or solutioning from either Tom Rickers nor Teresa Biss in the time between this meeting and my notice of retirement. It was one of the reasons I recognized that nothing was going to change.

I had numerous conversations with Tonya Tepley Rabasco about my dissatisfaction with ONB, but I do not recall the specific dates. I talked with ONB employees Shane Johnson, Sherri Matuke, and Teresa Biss about my concern that the CLT project objectives would not be achievable without adequate resources or collaboration across ONB. I told them I was unhappy, felt unsupported, and was dissatisfied in my role at ONB.

I repeatedly shared my concerns with Tim Kocher during our one-on-one meetings, and he agreed, admitting that he was experiencing some of the same issues. I had various ongoing conversations with the other Employee Defendants, as described in my other interrogatory answers.

**INTERROGATORY NO. 9:** For the time period from the date of your resignation from ONB, through the present, identify each and every ONB client who you (directly or indirectly) contacted or attempted to contact, or with whom you communicated or attempted to communicate. For each client identified in your answer:

a. Identify the date(s) and method (e.g., via email, text message, correspondence, announcement, telephone, videoconference, social media posting, in-person meeting, etc.) of each such contact, attempted contact, communication, or attempted communication;

b. Describe in detail how you obtained the contact information (and any other Confidential Information) utilized to contact, attempt to contact, communicate with, or attempt to communicate with the client; and

c. Identify whether the client has a customer relationship with Bell and, if so, identify the date their customer relationship with Bell began.

**ANSWER:** Ellingson objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Ellingson understood ONB to consider as confidential while Ellingson was employed by ONB. Ellingson objects to responding to Interrogatory No. 9 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Ellingson further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, since Ellingson cannot know whether ONB considers any particular individual or business to be a "client." Ellingson also objects that this Interrogatory is not relevant to any party's claims or defenses, as "contact" with a purported ONB client is not prohibited by the law. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 9 as propounded.

**INTERROGATORY NO. 10:** Identify each and every electronic device, account, and information service that you have utilized to:

a. Communicate with any ONB client or Employee Defendant concerning your (or their) actual or potential departure from ONB and/or employment at Bell; or

b. Obtain or access the contact information for any ONB client that you contacted or attempted to contact on or after the date of your resignation.

**ANSWER:** Ellingson objects to responding to Interrogatory No. 10 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Ellingson further objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case, particularly since Ellingson cannot know whether ONB considers any individual or business to be a "client." Ellingson also objects that this Interrogatory is not relevant to any party's claims or defenses, as "communicat[ion]" with purported ONB clients is not prohibited by the law. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 10 as propounded.

**INTERROGATORY NO. 11:** Identify any and all ONB clients whose name and/or contact information is stored in any of your personal electronic device(s), account(s), or information service(s), and for each ONB client identified in your answer,

identify the information that is stored and the date that such information was first added/inputted/saved to the device, account, or information service.

**ANSWER:** Ellingson objects to responding to Interrogatory No. 11 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Ellingson further objects to this Interrogatory as unduly burdensome, and disproportionate to the needs of the case, particularly since Ellingson cannot know whether ONB considers any individual or business to be a "client." Ellingson also objects that this Interrogatory is not relevant to any party's claims or defenses, as the date on which a contact was saved does not determine the date or form of any relationship with the contact. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 11 as propounded.

**INTERROGATORY NO. 12:** During the time period from the date of your acceptance of an offer of employment from Bell through the present, describe in detail all steps you have taken to return to ONB, safeguard, and protect from disclosure to Bell any ONB Confidential Information within your possession or knowledge.

**ANSWER:** Ellingson objects to ONB's definition of "Confidential Information" as vague, ambiguous, and much broader than the information Ellingson understood ONB to consider as confidential while Ellingson was employed by ONB. Ellingson objects to responding to Interrogatory No. 12 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 12 as propounded.

**INTERROGATORY NO. 13:** Describe in detail your employment application and pre-hire interview process with Bell, including the identity of each person at Bell who interviewed you connection with your employment application, the date and location of each such interview, and the person(s) who communicated Bell's offer of employment to you.

**ANSWER:** Ellingson objects to responding to Interrogatory No. 13 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's Pretrial Scheduling Order. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 13 as propounded.

**INTERROGATORY NO. 14:** Identify all employers to which you have applied for employment since November 25, 2024 (the date that Old National's merger with Bremer Bank was announced), and provide the Employer Contact Information for each such employer.

**ANSWER:** Ellingson objects to responding to Interrogatory No. 14 because ONB has exceeded the maximum of 50 interrogatories permitted by section V of the Court's

Pretrial Scheduling Order. Ellingson further objects to this Interrogatory as seeking information that is not relevant to any party's claims or defenses. Based upon the foregoing objection, Ellingson will not agree to answer Interrogatory No. 14 as propounded.

**AS TO ANSWERS:**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my recollection, knowledge, and belief.

Dated: 05/08/2026

Kim Ellingson
By: Kim Ellingson

**AS TO OBJECTIONS:**

Dated: May 8, 2026

**SPENCER FANE LLP**

*/s/ Heidi J. Bassett*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

***Counsel for Employee Defendants***

Progress | RightSignature

# SIGNATURE CERTIFICATE

**REFERENCE NUMBER**
6335AD9F-B147-4C96-B2BE-70B9D78997AC

## TRANSACTION DETAILS

**Reference Number**
6335AD9F-B147-4C96-B2BE-70B9D78997AC

**Transaction Type**
Signature Request

**Sent At**
05/08/2026 11:01:37 AM EDT

**Executed At**
05/08/2026 11:50:38 AM EDT

**Identity Method**
email

**Distribution Method**
email

**Signed Checksum**
27bdc996ea99c7d13b10c4ee19b7b5da202e9e43d868cb9a8e91626037bec181

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

**eIDAS Authentication**
Disabled

## DOCUMENT DETAILS

**Document Name**
Defendant Kim Ellingson Answers to Plaintiffs Interrogatories

**Filename**
Defendant_Kim_Ellingson_Answers_to_Plaintiffs_Interrogatories.pdf

**Pages**
13 pages

**Content Type**
application/pdf

**File Size**
51.1 KB

**Original Checksum**
2770a5dc21497a8d2d1ab2bbd344d09dc192db26457ac2f718e3619d5c01e698

# SIGNERS

## SIGNER

**Name**
Kim Ellingson

**Email**
kellingson@bell.bank

**Components**
2

## E-SIGNATURE

**Status**
signed

**Multi-factor Digital Fingerprint Checksum**
4f53cda18c2baa0c0354bb5f9a3ecbe5ed12ab4d8e11ba873c2f11161202b945

**IP Address**
76.17.126.137

**Device**
Microsoft Edge via iOS

**Typed Signature**




**Signature Reference ID**
BF35ECC7

## EVENTS

**Viewed At**
05/08/2026 11:41:15 AM EDT

**Identity Authenticated At**
05/08/2026 11:50:38 AM EDT

**Signed At**
05/08/2026 11:50:38 AM EDT

# AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 05/08/2026 11:01:37 AM EDT | Melissa Solberg (msolberg@spencerfane.com) created document 'Defendant_Kim_Ellingson_Answers_to_Plaintiffs_Interrogatories.pdf' on Chrome via Windows from 66.41.47.163. |
| 05/08/2026 11:01:38 AM EDT | Kim Ellingson (kellingson@bell.bank) was emailed a link to sign. |
| 05/08/2026 11:40:59 AM EDT | Kim Ellingson (kellingson@bell.bank) viewed the document on Microsoft Edge via iOS from 76.17.126.137. |
| 05/08/2026 11:40:59 AM EDT | Kim Ellingson (kellingson@bell.bank) viewed the document on Microsoft Edge via iOS from 76.17.126.137. |
| 05/08/2026 11:41:15 AM EDT | Kim Ellingson (kellingson@bell.bank) viewed the document on Microsoft Edge via iOS from 35.169.141.227. |
| 05/08/2026 11:50:38 AM EDT | Kim Ellingson (kellingson@bell.bank) authenticated via email on Microsoft Edge via iOS from 76.17.126.137. |
| 05/08/2026 11:50:38 AM EDT | Kim Ellingson (kellingson@bell.bank) signed the document on Microsoft Edge via iOS from 76.17.126.137. |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Old National Bank,<br><br>Plaintiff,<br><br>v.<br><br>Sarah Adams, Kasey Bernu, Yvette Campbell, Kimberly Ellingson, Rachal Johnson, Michael McConkey, Sharon Vold, Daniel Yantes, and Bell Bank,<br><br>Defendants. | Court File No. 0:25-CV-04636 (PJS/LIB)<br><br>**DEFENDANT KIM ELLINGSON'S SECOND SUPPLEMENTAL AND AMENDED ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

TO: Plaintiff Old National Bank, and its counsel, Mack H. Reed of Jackson Lewis P.C., 150 South Fifth Street, Suite 3500; Bethany R. Jewison of Lewis Brisbois Bisgaard & Smith, LLP, 90 South 7th Street, Suite 2800, Minneapolis, Minnesota 55402; and Christopher S. Griesmeyer and Zachary Mulcrone of Greiman, Rome & Griesmeyer, LLC, 205 West Randolph Street, Suite 2300, Chicago, Illinois 60606.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Kim Ellingson ("Ellingson") hereby serves the following second supplemental and amended answers to certain interrogatories propounded by Plaintiff Old National Bank ("ONB"). Ellingson incorporates by reference all of her previously asserted general objections to the interrogatories as though fully stated herein.

**THE FOLLOWING SUPPLEMENTAL AND AMENDED ANSWERS ARE DESIGNATED "CONFIDENTIAL" PURSUANT TO THE COURT'S PROTECTIVE ORDER. (DOC 84.)**

## SUPPLEMENTAL AND AMENDED ANSWERS

**INTERROGATORY NO. 9:** For the time period from the date of your resignation from ONB, through the present, identify each and every ONB client who you (directly or indirectly) contacted or attempted to contact, or with whom you communicated or attempted to communicate. For each client identified in your answer:

a. Identify the date(s) and method (e.g., via email, text message, correspondence, announcement, telephone, videoconference, social media posting, in-person meeting, etc.) of each such contact, attempted contact, communication, or attempted communication;

b. Describe in detail how you obtained the contact information (and any other Confidential Information) utilized to contact, attempt to contact, communicate with, or attempt to communicate with the client; and

c. Identify whether the client has a customer relationship with Bell and, if so, identify the date their customer relationship with Bell began.

[redacted]



CONFIDENTIAL

[redacted]

[redacted]

**INTERROGATORY NO. 10:** Identify each and every electronic device, account, and information service that you have utilized to:

a. Communicate with any ONB client or Employee Defendant concerning your (or their) actual or potential departure from ONB and/or employment at Bell; or

b. Obtain or access the contact information for any ONB client that you contacted or attempted to contact on or after the date of your resignation.

[redacted]

**INTERROGATORY NO. 11:** Identify any and all ONB clients whose name and/or contact information is stored in any of your personal electronic device(s), account(s), or information service(s), and for each ONB client identified in your answer, identify the information that is stored and the date that such information was first added/inputted/saved to the device, account, or information service.

[redacted]

**INTERROGATORY NO. 12:** During the time period from the date of your acceptance of an offer of employment from Bell through the present, describe in detail all steps you have taken to return to ONB, safeguard, and protect from disclosure to Bell any ONB Confidential Information within your possession or knowledge.

[redacted]

[redacted]

**<u>INTERROGATORY NO. 13:</u>** Describe in detail your employment application and pre-hire interview process with Bell, including the identity of each person at Bell who interviewed you in connection with your employment application, the date and location of each such interview, and the person(s) who communicated Bell's offer of employment to you.

[redacted]

**<u>INTERROGATORY NO. 14:</u>** Identify all employers to which you have applied for employment since November 25, 2024 (the date that Old National's merger with Bremer Bank was announced), and provide the Employer Contact Information for each such employer.

[redacted]

[redacted]

[redacted]

**AS TO SUPPLEMENTAL AND AMENDED ANSWERS:**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my recollection, knowledge, and belief.

Dated: Sep 29, 2026

Kim L Ellingson
By: Kim Ellingson

**AS TO OBJECTIONS:**

Dated: September 29, 2026

**SPENCER FANE LLP**

*/s/ Heidi J. Bassett*
Randi J. Winter, #391354
Heidi J. Bassett, #386386
Ariel K. Lierz, #397355
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Phone: (612) 268-7007
rwinter@spencerfane.com
hbassett@spencerfane.com
alierz@spencerfane.com

***Counsel for Employee Defendants***